UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| BUFFALO XEROGRAPHIX INC., for itself and on behalf of a class of similarly situated policyholders, <br><br>           Plaintiffs, <br><br> - v - <br><br> SENTINEL INSURANCE COMPANY, LTD.; THE HARTFORD INSURANCE GROUP a/k/a THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HARTFORD CASUALTY INSURANCE COMPANY; HARTFORD INSURANCE COMPANY OF ILLINOIS; HARTFORD INSURANCE COMPANY OF THE MIDWEST; HARTFORD UNDERWRITERS INSURANCE COMPANY; NEW ENGLAND INSURANCE COMPANY; NEW ENGLAND REINSURANCE CORPORATION; PACIFIC INSURANCE COMPANY, LIMITED; PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD; TRUMBULL INSURANCE COMPANY; and TWIN CITY FIRE INSURANCE COMPANY <br><br>           Defendants. | <u>COMPLAINT</u> <br><br> Civ. Action No.: <br><br> _____ <br><br> JURY TRIAL DEMANDED |

---

Plaintiff Buffalo Xerographix Inc. ("Plaintiff" or "BXI" or the "Insured"), for itself and as

a representative of a proposed class of plaintiff policy holders, by and through its attorneys, Duke

Holzman Photiadis & Gresens LLP, as and for its Complaint against Defendants Sentinel

Insurance Company, Ltd. ("Sentinel"), The Hartford Insurance Group a/k/a The Hartford Financial

Services Group, Inc.("HIG"), Hartford Fire Insurance Company ("Hartford Fire"), Hartford Accident and Indemnity Company ("Hartford Accident"), Hartford Casualty Insurance Company ("Hartford Casualty"), Hartford Insurance Company of Illinois ("Hartford Illinois"), Hartford Insurance Company of the Midwest ("Hartford Midwest"), Hartford Underwriters Insurance Company ("Hartford Underwriters"), New England Insurance Company ("New England"), New England Reinsurance Corporation ("New England Reinsurance"), Pacific Insurance Company, Limited ("Pacific"), Property and Casualty Insurance Company of Hartford ("Hartford Property"), Trumbull Insurance Company ("Trumbull"), and Twin City Fire Insurance Company ("Twin City") (each of the foregoing being a "Defendant" and collectively the "Defendants"), states and alleges as follows:

INTRODUCTION

1.      The instant matter arises from contracts of insurance entered into between (a) Plaintiff and other Class members, and (b) Defendants.

2.      The Policies issued by Defendants to Plaintiff and the Class members are generally known as commercial property insurance, and include, without limitation: (a) policies identified by Defendants as "Spectrum Business Owner's Policy"; and (b) Special Property Coverage Form SS 00 07 07 05 (the "Policy").

3.      The Policy issued by Defendants to Plaintiff and the other Class members is "all risk" and, as such, provides coverage for physical loss of property resulting from any cause unless the loss is "Excluded" or "Limited."

4.      The Policy issued by Defendants to Plaintiff and Class members do not contain an exclusion or limitation expressly addressing losses caused by or related to a virus.

5.      Defendants have stated that the Policy does not provide Plaintiff and other Class members with insurance coverage benefits for losses due to and/or relating to the novel coronavirus (the "Virus"), the disease caused by the Virus–COVID-19 ("CV-19"), and/or the actions of various civil authorities in response to the Virus and/or CV-19 that prohibit, limit or restrict access and/or use, directly or indirectly, of the premises ("CA Orders"), including that there is no coverage for business interruption, the loss of business income, extended business income, loss based on the actions of civil authorities to limit access to property, property loss, extra expense loss, and dependent property loss (collectively "BI Losses").

6.      The Special Property Coverage Form, under "Duties in the Event of Loss," directed and required:

> You [Plaintiff and other Class members] must see that the following are done in the event of loss of or damage to Covered Property:
> . . .
> **d.**     Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

Commonly referred to as a "Sue and Labor" provision, policyholders are entitled to coverage for reimbursement of costs and expenses incurred as a result of complying with such provision. ("SL Losses").

7.      Defendants have denied coverage to Plaintiff and other Class members for BI Losses, SL Losses, and other damages arising from and related to the Virus, CV-19 and the CA Orders.

8.      Defendants breached their insurance contracts with Plaintiff and other Class members by failing to provide the coverage and benefits as identified herein.

PARTIES

9.     Plaintiff BXI is a New York business corporation with its principal place of business located in the State of New York, County of Erie, at 33 Peuquet Parkway, Tonawanda, New York 14150 (the "Premises").

10.     Upon information and belief, Defendant HIG is an insurance company organized under the laws of the State of Delaware and registered and duly authorized to transact insurance business in the State of New York.

11.     Upon information and belief, Defendant Sentinel is a stock insurance company of Defendant HIG, organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York.

12.     Upon information and belief, each of the following Defendants is a stock insurance company of HIG:

      a.     Hartford Fire Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

      b.     Hartford Accident and Indemnity Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

      c.     Hartford Casualty Insurance Company, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York;

      d.     Hartford Insurance Company of Illinois, an insurance company organized under the laws of the State of Illinois and registered and duly authorized to transact insurance business in the State of New York;

      e.     Hartford Insurance Company of the Midwest, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York;

f.   Hartford Underwriters Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

g.   New England Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

h.   New England Reinsurance Corporation, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

i.   Pacific Insurance Company, Limited, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

j.   Property and Casualty Insurance Company of Hartford, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York;

k.   Trumbull Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York; and

l.   Twin City Fire Insurance Company, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York.

The foregoing affiliated stock insurance companies of HIG, other than Defendant Sentinel, are hereinafter the "Affiliates."

13.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

14.   Venue is proper in this district under 28 U.S.C. §1391.

15.   A substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiff's purchase of the insurance policy, Plaintiff's business operations, the property that is the subject of insurance policy is in the State of New York, County of Erie, and

the loss events impacting Plaintiff's business and property for which coverage was denied took place in the district.

FACTS

A.    The Policy

16.    Defendants HIG and/or Sentinel issued and delivered to Plaintiff an insurance policy bearing the policy number 01 SBA RG9986 SB (the "BXI Policy").   A copy of the BXI Policy is attached hereto as *Exhibit A*.

17.    The BXI Policy is the same or substantially similar to each Policy issued by Defendants to Class members.

18.    Form SS 00 01 03 14 of the BXI Policy provides "**Spectrum Business Owner's Policy**" issued by the "**THE HARTFORD**."

19.    Each Policy, including the BXI Policy, was issued in consideration of a premium which was paid to, received, and retained by Defendants.

20.    The BXI Policy covered certain losses occurring between February 1, 2020, and February 1, 2021, including losses occurring at the Premises.

21.    The BXI Policy states:

This **Spectrum Policy** consists of Declaration, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of the Hartford Insurance Group shown below.

**INSURER**:    SENTINEL INSURANCE COMPANY, LIMITED
               One Hartford Plaza, Hartford, CT 06155

22.    Plaintiff is identified in the BXI Policy as the "Named Insured."

23.    Each Policy, including the BXI Policy, provides coverage on an "all risk" rather than specified peril basis.

24.     "All risk" insurance policies cover all risks of loss except for risks that are expressly and specifically excluded.

25.     Under paragraph "A. Coverage" at subparagraph 3 "Covered Causes of Loss" of the Special Property Coverage Form, the Policy provides coverage for all "RISKS OF DIRECT PHYSICAL LOSS unless the loss is:  **a.** Excluded in Section **B., EXCLUSIONS**, or **b.** Limited in Paragraph **A.4**. Limitations . . . ." (emphasis in original).

26.     Under paragraph "**A. COVERAGE**" at subparagraph "**5.  Additional Coverages**" of the Special Property Coverage Form, the Policy provides coverage for, among other things: "o. Business Income"; "p. Extra Expense"; "q. Civil Authority"; "r. Extended Business Income"; and "s. Business Income from Dependent Properties."

27.     Plaintiff and other Class members have suffered BI Losses that are expressly covered under **"5. Additional Coverages"** and other provisions of the Policy.

28.     Under paragraph "**E. PROPERTY LOSS CONDITIONS**" at subparagraph "**3. Duties in the Event of Loss or Damage**" of the Special Property Coverage Form, the Policy provides "in the event of loss of or damage to Covered Property" insureds must "[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

29.     Plaintiff BXI, and upon information and belief Class members, complied with the insureds' obligations under Duties in Event of Loss or Damage and incurred SL Losses.

30.     The "Exclusions" do not reference, restrict, limit or preclude coverage for losses resulting directly or indirectly from a virus.

31.     The "Limitations" do not restrict, limit or preclude coverage for losses resulting directly or indirectly from a virus.

B.     Absence of "Exclusion of Loss due to Virus or Bacteria" Endorsement

32.     Since in or before 2006, the insurance industry, including Defendants, have been aware of the risks of damage to property, physical loss of property, and damage to business operations associated with viruses and bacteria.

33.     In or about 2006, the insurance industry adopted a standard form policy endorsement for commercial property policies commonly known as "Exclusion of Loss Due to Virus or Bacteria." This has otherwise been referred to as Multistate Form Filing CF-2006-OVBEF and/or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06 (collectively, the "Virus Exclusion").

34.     The intended purpose of the Virus Exclusion is to eliminate virus and bacteria related losses from coverage under all risk insurance policies.

35.     The Policy does not contain the Virus Exclusion.

36.     The Policy does not contain an exclusion substantially the same or similar to the Virus Exclusion.

37.     The Policy does not exclude or limit coverage for losses experienced by Plaintiff BXI directly or indirectly from the Virus, CV-19 or the CA Orders.

C.     Plaintiff's Covered Loss

38.     Plaintiff's employees, customers, and/or vendors: (a) were exposed to the Virus, (b) tested positive for the Virus and/or CV-19, (c) were otherwise diagnosed as infected with the Virus and/or having CV-19, (d) exhibited symptoms consistent with infection by the Virus and/or

having CV-19, and/or (e) were instructed by civil authorities and/or their medical providers to self-isolate, quarantine, and/or suspend normal business operations.

39.     Plaintiff's Premises, personal property, and dependent property:  (a) were exposed to the Virus, (b) had the Virus or persons with CV-19 present at their respective locations, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

40.     Property in the immediate area of the Premises: (a) were exposed to the Virus, (b) had the Virus on surfaces therein, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

41.     The presence of the Virus and persons with CV-19 caused direct physical loss of or damage to the covered property under the Policy and the policies of other Class members, as well as to property in the immediate area of such covered property.

42.     The presence of the Virus and persons with CV-19 caused civil authorities throughout New York to issue orders requiring the suspension of business and/or use of commercial property, including the property of Plaintiff and other class members as well as property in the immediate area of such covered property.

43.     The CA Orders include, but are not limited to, the following Executive Orders of New York State Governor Cuomo:

    a.    On March 7, 2020, by Executive Order 202, Governor Cuomo declared a Disaster Emergency for all of New York State because of CV-19;

    b.    On March 18, 2020, by Executive Order 202.6, Governor Cuomo reduced all non-essential businesses' on-site workers by 50%, effective at 8:00 p.m. on March 20, 2020;

    c.     On March 19, 2020, by Executive Order 202.7, Governor Cuomo reduced all non-essential businesses' on-site workers by 75%, effective at 8:00 p.m. on March 21, 2020; and

    d.     On March 20, 2020, by Executive Order 202.8, Governor Cuomo reduced all non-essential businesses' on-site workers by 100%, effective at 8:00 p.m. on March 22, 2020.

44.    Plaintiff substantially ceased business operations on March 20, 2020, as a result of the Virus, CV-19, and the CA Orders.

45.    Plaintiff has suffered a direct physical loss of or physical damage to Covered Property, including the BI Losses, as a result of the Virus, CV-19, and the CA Orders ("Loss").

46.    The Loss constitutes an occurrence under the Policy.

47.    Plaintiff is entitled to be covered and indemnified under the Policy for the Loss.

D.    <u>Loss Reporting to BI Losses to Defendants</u>

48.    Defendant HIG controlled, directed, and/or participated in the preparation of the Policy, the underwriting relating to the issuance of the Policy, and the claims intake, investigation, and administration under the Policy, including handling of claims arising out of or related to the Virus.

49.    Defendant HIG, together with Sentinel, operates an (800) phone line, including 1-800-327-3636, to report claims and/or losses under the Policy (the "800 Number").

50.    The Affiliates participate with Defendants HIG and Sentinel in the operation of the 800 Number for the reporting of claims and/or losses with respect to Spectrum Business Owner's Policies and similar commercial property insurance issued by the Affiliates.

51.    Defendant HIG, together with Sentinel and the Affiliates, developed and operated a website for reporting business income related claims related to the Virus: www.thehartford.com/businessincomeclaim (the "HIG Website").

52.    The HIG Website requires policyholders to answer multiple-choice questions about COVID-19 rather than provide an opportunity for a narrative explanation of their claim.

53.    Beginning in or around March 2020, policyholders that called the 800 Number were instructed to report business interruption losses related to the Virus via the HIG Website.

54.    Plaintiff reported the Loss to Defendant via the HIG Website.  A copy of the "The Hartford Report of Commercial Property Business Interruption Claim" submitted by Plaintiff to Defendants via the HIG Website is attached hereto as *Exhibit B*.

E.    <u>Uniform Practice to Deny Coverage for Losses related to the Virus</u>

55.    Defendants HIG and Sentinel arbitrarily and wrongfully disclaimed coverage for Plaintiff's Loss.

56.    Defendants contend that the commercial property policies issued by HIG, Sentinel and/or the Affiliates in New York do not provide coverage for losses resulting from or related to the Virus, CV-19, or the CA Orders.

57.    Defendants' denial of coverage for losses related to or arising out of the Virus, CV-19, and the CA Orders was pre-determined and without regard to the individual circumstances of Plaintiff or other insureds, including the presence of the Virus at the insured premises.

58.    By letter dated March 10, 2020, the New York State Department of Financial Services directed all insurers that had issued commercial property insurance in New York to provide details on the business interruption coverage provided under such policies ("DFS Directive").  A copy of the DFS Directive is attached hereto as *Exhibit C*.

59.    The DFS Directive explained that the purpose of this requirement was to ensure that insurance companies "explain to policyholders the benefits under their policies and the

protections provided in connection with COVID-19" and required "each Insurer examine the policies it has issued and explain the coverage each policy offers in regard to COVID-19."

60.   Defendants HIG, Sentinel, and/or the Affiliates collectively prepared a template response to the DFS Directive ("DFS Response").  A copy of the DFS Response is attached hereto as *Exhibit D*.

61.   Plaintiff, and upon information and belief other members of the proposed class of policyholders, were the intended recipients of the DFS Response letter.

62.   In the DFS Response, Defendants state the position that the Policy, and other similar commercial property policies they have issued in New York, including Spectrum Business Owner's Policies, do not cover losses arising from or relating to the Virus, CV-19, or the CA Orders.

63.   The DFS Response states: "Generally, <u>the presence of a virus does not constitute direct physical loss or damage to property</u>.  By way of example, closing or limiting a business to prevent the spread of the virus <u>is not physical loss</u> or damage to property." (Emphasis added).

64.   Defendant HIG prepared a written memorandum to its insurance agents and representatives on or before March 23, 2020, regarding coverage under the commercial property policies issued by Sentinel and the Affiliates (the "CV-19 Memo").  A copy of the CV-19 Memo is attached as *Exhibit E*.

65.   In the CV-19 Memo, HIG reiterated to is agents and representatives that its commercial property policies do not provide business interruption, civil authority, dependent property, or other coverage for losses related to the Virus:  "This coverage is generally designed to cover losses that result from direct physical loss or damage to property and <u>is not designed to apply in the case of a virus</u>." (Emphasis added).

66.     Before Plaintiff and other members of the proposed class of policyholders submitted notice of and information about their claims related to the Virus, CV-19, and the CA Orders, Defendants had determined not to afford coverage for any such claims.

67.     When circulating the DFS Response and/or the CV-19 Memo to insurance agents and adjusters, Defendants had actual knowledge that they had thousands of impacted policyholders in New York.

68.     Defendants mailed the DFS Response letters in batches due to the large number of policyholders.

F.     <u>Coverage Denial for Losses related to Virus, CV-19 and CA Orders</u>

69.     Consistent with the statements in the DFS Response and the CV-19 Memo, Defendants have denied coverage to Plaintiff and other policyholders for losses related to the Virus, CV-19 and/or the CA Orders.

70.     By letter dated April 22, 2020 (received via email on April 28, 2020), Defendants HIG and Sentinel issued a written coverage denial to Plaintiff, noting: "We have completed a review of your loss and determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, the loss is not covered" ("Coverage Denial"). A copy of the Coverage Denial is attached hereto as *Exhibit F*.

71.     The Coverage Denial received by Plaintiff includes an attachment "Coverage Decision Details" which sets forth Defendants' analysis of why the Spectrum Business Owner's Policies and/or Special Property Coverage Form (SS 00 07 07 05) issued in New York do not afford coverage for losses related to the Virus, CV-19, or the CA Orders.

72.     The Coverage Denial does not reference any of the facts of Plaintiff's loss.

73.     Defendant Sentinel, upon information and belief at the direction of Defendant HIG, has refused to make payment to Plaintiff for damages resulting from the Loss which constitutes a breach of the Policy.

74.     Defendant Sentinel's refusal to cover the Loss is erroneous and unsupported by the plain language of the Policy.

75.     As such, Defendant Sentinel owes Plaintiff insurance coverage and benefits under the Policy for the Loss, and there is no valid basis for its refusal to issue the same.

76.     Plaintiff continues to be damaged by Defendant Sentinel's refusal to issue the full amounts due and owing under the Policy.

77.     Defendants have denied coverage to Plaintiff and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders based on their policy interpretation as set forth in the DFS Response, CV-19 Memo, and the "Coverage Decision Details.

78.     Upon information and belief, Defendants made coverage decisions concerning policyholder claims related to the Virus, CV-19, and the CA Orders without consideration of the unique facts or circumstances of each loss and, rather, adopted a pattern and/or practice to deny such claims.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action pursuant Federal Rules of Civil Procedure 23 on behalf itself and a class consisting of

a.      all policyholders of all-risk commercial property insurance policies issued by any named Defendant, including policyholders of a Spectrum Business Owner's Policy or a policy that includes or is comprised of Special Property Coverage Form (SS 00 07 07 05);

b.      whose policies were in effect for any period of time on or after February 15, 2020, and through the end of the (i) declared emergency period or (2) prohibits, limitations or restrictions of

business property use under the CA Orders;

    c.    whose policies do not contain the Virus Exclusion or a substantially similar exclusion for a virus as an endorsement; and

    d.    who suffered BI Losses or SL Losses as a result of the Virus, CV-19 or the CA Orders, including policyholders that suspended or reduced business operations at the premises covered by their policy (the "Class").

80.    Excluded from the Class are Defendants and their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities as well as counsel and court staff assigned to this case and/or their immediate family members. Plaintiff reserves the right to amend or modify the Class definition.

81.    <u>FRCP 23(a)(1)- Numerosity</u>. The Class members are so numerous that joinder of all members is impracticable.  Upon information and belief, Defendants have issued thousands of commercial property insurance policies in New York that contain provisions for business interruption and related coverage, including the Spectrum Business Owner's Policy and policies that include Special Property Coverage Form (SS 00 07 07 05).

82.    <u>FRCP 23(a)(2)- Commonality and Predominance</u>.  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

    a.    Defendants issued all risk policies to Class members in exchange for premiums paid and received;

    b.    Plaintiff and members of Class had the use of/access to their property and/or the operation of their business impacted by the CA Orders;

    c.    Defendants' position that the presence of a virus or the reduction of a business relating thereto does not constitute direct physical loss of or damage to property;

    d.    Defendants' interpretation of coverage for losses related to the Virus, CV-19, and the CA Orders as set forth in the DFS Response;

e.   Defendants' "Coverage Decision Details" was uniformly adopted and applied to all policyholder Class members;

f.   Defendants' knowledge of and failure to adopt the Virus Exclusion in the policies issued to Class members;

g.   whether the policies issued by Defendants were ambiguous as to coverage for losses arising from the presence of a virus or the limiting or closing of a business to prevent the spread of a virus;

h.   whether the presence of a person infected with CV-19 at or in the immediate area of an insured premises constitutes a physical loss of or physical damage to property under the policies issued by Defendants;

i.   whether the closing or limiting of a business to prevent the spread of a virus constitutes a physical loss of or physical damage to property under the policies issued by Defendants;

j.   Whether New York state laws were violated by the Defendants' acts and/or omissions as alleged herein;

83.   <u>FRCP 23(a)(3)- Typicality</u>.   The claims of the proposed Class representative Plaintiff BXI are typical of the claims of the Class members as all Class members were issued the same or substantially similar commercial property insurance policies by Defendants, including Spectrum Business Owner's Policy or a policy that includes or is comprised of Special Property Coverage Form (SS 00 07 07 05), and Plaintiff BXI and members of the proposed class have been similarly affected by Defendants' wrongful acts complained of herein, including Defendants' position that the presence of a virus and/or the closing or limiting of a business to prevent the spread of a virus are "not physical loss or damage to property."

84.   <u>Fed.R.Civ.P 23(a)(4)- Adequacy of Representation</u>.   The proposed Class representative, Plaintiff BXI, will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in matters involving first part insurance coverage as well as class actions.   Plaintiff has no interests which conflict with the Class.   Plaintiff and its

counsel will vigorously prosecute this action, and the interests of the Class will be fairly and adequately protected.

85.     Fed.R.Civ.P. 23(b)(3)- Superiority.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Upon information and belief, Defendants have issued in excess of 1,000 commercial property policies in New York and it is undisputed that the Virus, CV-19, and/or the CA Orders have impacted every business in New York, including every policyholder in the proposed Class.

86.     The damages suffered by individual class members will vary and may be relatively small in comparison to the costs of litigation.  As such, the expense and burden of individual litigation could make it impossible for Class members to individually redress the wrongs done to them. There will be no unusual difficulty in the management of this action as a class action.

87.     In the alternative, the Class may be certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because: (a) the prosecution of separate actions by the individual Class members would create a risk of varying results and incompatible/inconsistent standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

<u>FIRST CAUSE OF ACTION</u>
Breach of Contract and Declaratory Relief

88.     Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth and incorporated herein.

89.     Plaintiff brings this cause of action on behalf of itself and on behalf of the other Class members.

90.     Plaintiff sustained a physical loss of property, BI Losses, SL Losses, and damages as a result of a covered cause of loss under the Policy.

91.     Covered Causes of Loss under the policies issued by Defendants to Class members include physical loss of property resulting from the Virus, CV-19, and/or the CV Orders.

92.     Defendants had a duty under the Policy to provide coverage for BI Losses, SL Losses, and damages resulting from a covered cause of loss.

93.     Plaintiff duly notified Defendants of its claim under the Policy, including for business income coverage.

94.     Defendants have refused to pay Plaintiff's BI Losses, SL Losses, and damages.

95.     Defendants have refused to pay BI Losses, SL Losses, and damages arising from or relating to the Virus, CV-19, and/or the CA Orders.

96.     Defendants' failure and refusal to make payments to Plaintiff for the BI Losses, SL Losses, and other damages constitutes a breach of the Policy.

97.     Defendants' failure and refusal to make payments to Plaintiff and other Class members for BI Losses, SL Losses, and damages pursuant to the terms of the policies constitutes a breach of contract.

98.     Defendants' conduct has been unreasonable.

99.     Defendants have unreasonably obstructed and prevented Plaintiff and other Class members from receiving prompt payment for the insurance benefits they are entitled to under the Policy.

100.    Defendants breached their duty and obligations of good faith and fair dealing.

101.    Plaintiff and the other Class members have been damaged by Defendants' wrongful conduct, including without limitation suffering extra-contractual consequential damages as a result of Defendants' failure to act promptly and in good faith.

102.    It was reasonably foreseeable and contemplated by the parties, at the time the Policy was issued and/or renewed, that the failure to properly investigate a loss/occurrence and the failure to promptly provide coverage and pay insurance benefits under the Policy would negatively and adversely affect a policyholder's business operations, including causing delays thereto, thereby forcing Plaintiff and other Class members to incur additional business interruption losses, attorneys' fees, and litigation-related expenses.

103.    Plaintiff and members of the proposed Class have been damaged by Defendants' wrongful conduct, including that they have sustained foreseeable extra-contractual consequential damages, including business interruption losses, attorneys' fees, and litigation-related expenses.

104.    As a result of Defendants' breach and wrongful conduct, Plaintiff and Class members are entitled to judgment providing declaratory relief of their rights under the Policy, determining that Defendants are liable to Plaintiff and Class members for breach of contract, and that Plaintiff and Class members have been damaged and are entitled to judgment against Defendants in an amount to be determined at trial, but not less than, $7,500,000.00, plus interest.

## SECOND CAUSE OF ACTION
New York General Business Law § 349

105.    Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth and incorporated herein.

106.    Plaintiff brings this cause of action on behalf of itself and on behalf of the other Class members.

107.    Defendants' statements in the DFS Response sent to policyholders were inaccurate and misleading.

108.    Defendants' instructions to insurance agents and representatives that the coverages under its policies do not apply in the case of a virus were inaccurate and misleading.

109.    Defendants' inaccurate and misleading statements were relied on by policyholders and induced them to refrain from filing claims with Defendants.

110.    Defendants' failure to reasonably investigate the BI Losses and SL Losses and their refusal to pay insurance benefits through the present has, at the least, been in reckless and/or grossly negligent disregard of their obligations under each Policy issued to Plaintiff and other Class members.

111.    Defendants' actions are consumer oriented inasmuch as the Policy consists of standard policy forms created, maintained, and issued by Defendants as a group.

112.    Defendants' actions are consumer oriented inasmuch as the disclaimer letter issued to Plaintiff consisted of a generic, pre-determined analysis that all claims relating to the Virus, CV-19, and the CA Orders were denied.

113.    Defendants pre-determined that as a general rule that their standard form policies of insurance issued to insureds in New York State simply do not afford coverage for losses stemming from the Virus, CV-19, and the CA Orders, irrespective of the fact that the policies do

not contain a Virus Exclusion.

114.    Illustrating the pre-determined nature of Defendants' coverage decisions, neither the denial letter nor the enclosed "Coverage Decision Details" enclosure reference or contain an analysis of the facts of Plaintiff's loss.

115.    Further illustrating the pre-determined nature of Defendants' coverage decisions is the fact that Defendants created a generic policy language enclosure (the so-called Coverage Decision Details) which is a boilerplate analysis of the policy so that the disclaimer letters could be generated in a mass-produced, streamlined manner.

116.    Upon information and belief, each of the Defendants has received claims arising from or related to the Virus, CV-19, and the CA Orders from other insureds with policies that are the same as substantially similar to the BXI Policy.

117.    Upon information and belief, each of the Defendants has issued disclaimer letters that are the same as, or substantially similar to, the disclaimer letter that was issued to Plaintiff in this case.

118.    Defendants' conduct in pre-deciding their coverage position for all, or substantially all, claims from insureds in New York State stemming from the Virus, CV-19, and the CA Orders was materially misleading.

119.    Defendants, by their agents and employees, have perpetuated and continued perpetuating a scheme by which its insureds are deprived of the full benefit of their policies, regardless of the fact that the Class's policies do not contain the Virus Exclusion or any exclusions referencing virus-related losses.

120.    Upon information and belief, Defendants have instituted a practice, policy, or procedure by which Defendants intend to deny all, or substantially all, claims stemming from the

Virus, CV-19, and the CA Orders.

121.     Defendants' practice, policy, or procedure was surreptitiously and purposefully made without notice or disclosure to Defendants' customers, potential customers, or the public at large.

122.     Defendants' practice, policy, or procedure of not covering claims stemming from viruses is not disclosed within the subject insurance policies, because the policies do not contain the Virus Exclusion or a similar exclusion for viruses, despite the fact that Defendants are familiar with the Virus Exclusion.  Therefore, Plaintiff and the public at large have been misled in a material respect.

123.     Defendants' practice of denying all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders was not disclosed to its policyholders until after they had submitted a claim under a policy.  Therefore, Plaintiff and the public at large who have obtained such policies from the Defendants have been misled in a material respect.

124.     The aforementioned public-oriented conduct exercised by Defendants is a regular business practice, policy, or procedure.

125.     Defendants' aforesaid practice, policy, or procedure is willful, intentional, and malicious with the ultimate intent and effect of depriving its insureds of the scope and amount of coverage which they paid and bargained for.

126.     The aforesaid actions of the Defendants constitute a violation of § 349 of the New York General Business Law for which Plaintiff and the Class are entitled to treble damages up to the sum of $1,000.00 per violation, plus reasonable attorneys' fees.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court:

a.      Enter an Order certifying the proposed Class, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Class;

b.      Entering judgment on the First Cause of Action in favor of Plaintiff and the Class members as follows:

      1.      Determining and declaring that losses sustained by Plaintiff and Class members arising from and relating to the Virus, CV-19 and/or the CA Orders are insured losses covered under the Policies issued by Defendants;

      2.      Determining and declaring that Defendants are, jointly and severally, obligated to pay the full amount of BI Losses, SL Losses, and other coverage benefits provided for under the Policies issued to Plaintiff and the Class members with respect to losses arising from or relating to the Virus, CV-19, and/or the CA Orders; and

      3.      Determining liability in favor of Plaintiff and Class members against Defendants, jointly and severally, for breach of contract and awarding damages for losses covered under the Policies in an amount to be determined at trial, but not less than, $7,500,000.00, plus interest.

c.      Entering judgment on the Second Cause of Action in favor of Plaintiff and Class members against all Defendants, jointly and severally, in an amount to be determined at trial but not less than treble damages up to the sum of $1,000.00 per violation, plus interest and reasonable attorneys' fees;

d.      Ordering Defendants to pay the legal fees of attorneys' fees and costs of suit;

e.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

f.      Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff, for itself and on behalf of all members of the proposed Class, hereby demands a trial by jury on all issues of fact and damages claimed in the foregoing complaint.

Dated:    Buffalo, New York
          April 29, 2020

                    DUKE HOLZMAN PHOTIADIS & GRESENS LLP

                    By:                                  
                          Charles C. Ritter, Jr.
                          Christopher M. Berloth
                          Thomas D. Lyons
                          *Attorneys for Plaintiff*
                          *Buffalo Xerographix Inc.*
                          701 Seneca Street, Suite 750
                          Buffalo, New York 14210
                          Tel: (716) 855-1111
                          critter@dhpglaw.com
                          cberloth@dhpglaw.com
                          tlyons@dhpglaw.com