UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

| |
|---|
| BUFFALO XEROGRAPHIX INC., |
| SHATKIN F.I.R.S.T. LLC, and |
| TODD E. SHATKIN DDS PLLC |
| for themselves and on behalf of a class of |
| similarly situated policyholders, |

                              Plaintiffs,

- v -

THE HARTFORD INSURANCE GROUP a/k/a
THE HARTFORD FINANCIAL SERVICES
GROUP, INC.;

SENTINEL INSURANCE COMPANY, LTD;

HARTFORD CASUALTY INSURANCE
COMPANY; and

HARTFORD INSURANCE COMPANY
OF THE MIDWEST;

                              Defendants.

—————————————————————

**AMENDED COMPLAINT**

Civ. Action No.:

20-CV-00520

JURY TRIAL DEMANDED

Plaintiffs Buffalo Xerographix Inc. ("BXI"), Shatkin F.I.R.S.T. LLC ("First"), and Todd

E. Shatkin DDS PLLC ("TES") (collectively, "Plaintiffs" or the "Insureds"), for themselves itself

and as representatives of a proposed class and/or sub-classes of plaintiff policy holders, by and

through their attorneys, Duke Holzman Photiadis & Gresens LLP, as and for their Amended

Complaint against Defendants The Hartford Insurance Group a/k/a The Hartford Financial

Services Group, Inc. ("HIG"), Sentinel Insurance Company, Ltd. ("Sentinel"),  Hartford Casualty

Insurance Company ("Hartford Casualty"),   and Hartford Insurance Company of the Midwest

("Hartford Midwest") (each of the foregoing being a "Defendant," defendants Sentinel, Hartford

Casualty, and Hartford Midwest being the "Other Defendants," and HIG and the Other Defendants collectively being the "Defendants"), states and alleges as follows:

INTRODUCTION

1.    The instant matter arises from contracts of insurance, also known as policies, entered into between (a) Plaintiff BXI and other Class members, and defendants HIG and Sentinel, (b) Plaintiff First and other Class members, and defendants HIG and Hartford Casualty, and (c) Plaintiff TES and other Class members, and defendants HIG and Hartford Midwest.

2.    Defendant HIG owns, directs and controls the activities of various subsidiary "writing companies," including defendants Sentinel, Hartford Casualty, and Hartford Midwest.

3.    The policies issued by Defendants to Plaintiffs and the Class members are generally known as commercial property insurance, and include, without limitation: (a) policies identified by Defendants as "Spectrum Business Owner's Policy"; and/or (b) Special Property Coverage Form SS 00 07 07 05 (the "Policy").

4.    The Policy issued by Defendants to Plaintiffs and the other Class members is "all risk."

5.    The  Policy provides coverage for physical loss of or physical damage to property resulting from any cause unless the loss is "Excluded" or "Limited."

6.    Defendants have adopted Exclusions and Limitations from time to time to change the scope of coverage under the all risk Policy.

7.    Defendants are members of the Insurance Services Office ("ISO").

8.    ISO has developed policy forms, endorsements and exclusions, including coverage exclusions for losses relating to a virus or bacteria.

9.      Defendants are members of the insurance industry and subscribe to, have access to, rely on, and/or adopt ISO forms.

10.     Defendants are, and at all relevant times hereto were, aware of virus exclusions prevalent in the insurance industry.

11.     Defendants have issued commercial property policies, including the Policy, that have exclusions for losses relating to a virus or bacteria.

12.     The Policy issued by Defendants to Plaintiffs and Class members do not contain an exclusion or limitation for losses caused by or related to the presence of a virus.

13.     Defendants have stated that the Policy does not provide Plaintiff and other Class members with insurance coverage benefits for losses due to and/or relating to the novel coronavirus (the "Virus"), the disease caused by the Virus–COVID-19 ("CV-19"), and/or the actions of various civil authorities in response to the Virus and/or CV-19 that prohibit, limit or restrict access and/or use, directly or indirectly, of the premises ("CA Orders"), including that there is no coverage for business interruption, the loss of business income, extended business income, loss based on the actions of civil authorities to limit access to property, property loss, extra expense loss, and dependent property loss (collectively "BI Losses").

14.     The Special Property Coverage Form, under "Duties in the Event of Loss," directed and required:

> You [Plaintiff and other Class members] must see that the following are done in the event of loss of or damage to Covered Property:
> . . .
> **d.**    Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

Commonly referred to as a "Sue and Labor" provision, policyholders are entitled to coverage for reimbursement of costs and expenses incurred as a result of complying with such provision ("SL Losses").

15.     Defendants have denied coverage to Plaintiff and other Class members for BI Losses, SL Losses, and other damages arising from and related to the Virus, CV-19, and the CA Orders.

16.     Defendants breached their insurance contracts with Plaintiffs and other Class members by failing to provide the coverage and benefits as identified herein.

<u>PARTIES</u>

17.     Plaintiff BXI is a New York business corporation with its principal place of business located in the State of New York, County of Erie, at 33 Peuquet Parkway, Tonawanda, New York 14150 (the "BXI Property").

18.     Plaintiff First is a New York limited liability company with its principal place of business located in the State of New York, County of Erie, at 2500 Kensington Ave., Buffalo, New York 14226 (the "First Property").

19.     Plaintiff TES is a New York professional limited liability company with its principal place of business located in the State of New York, County of Erie, at 2495 Kensington Ave., Buffalo, New York 14226 ("TES Property") (collectively, the BXI Property, First Property, and TES Property are the "Premises").

20.     Upon information and belief, defendant HIG is a corporation organized under the laws of the State of Delaware and registered and duly authorized to transact insurance business in the State of New York.

21.     Upon information and belief, each of the following entities are a stock insurance

company owned, controlled and directed by HIG:

    a.    Hartford Fire Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    b.    Hartford Accident and Indemnity Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    c.    Defendant Hartford Casualty, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York;

    d.    Hartford Insurance Company of Illinois, an insurance company organized under the laws of the State of Illinois and registered and duly authorized to transact insurance business in the State of New York;

    e.    Defendant Hartford Midwest, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York;

    f.    Hartford Underwriters Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    g.    New England Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    h.    New England Reinsurance Corporation, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    i.    Pacific Insurance Company, Limited, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

    j.    Property and Casualty Insurance Company of Hartford, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the

State of New York;

k.     Defendant Sentinel, an insurance company organized u organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York;

l.     Trumbull Insurance Company, an insurance company organized under the laws of the State of Connecticut and registered and duly authorized to transact insurance business in the State of New York; and

m.    Twin City Fire Insurance Company, an insurance company organized under the laws of the State of Indiana and registered and duly authorized to transact insurance business in the State of New York.

The foregoing affiliated stock insurance companies of HIG are hereinafter the "Affiliates."

22.    Defendant HIG (a) develops policy forms, endorsements, and exclusions which it issues directly and in conjunction with its Affiliates, (b) controls, directs and/or performs the underwriting activities for all insurance policies issued under the tradename "The Hartford," including the policies issued to plaintiffs BXI, FIRST, and TES, (c) controls, directs, and/performs the underwriting activities for all insurance policies of which any of the Affiliates are referenced as a "writing company;" (d) controls, directs, and/or performs claims investigation through common claims representatives for the policies issued by it and/or any Affiliate, including the policies issued to plaintiffs BXI, FIRST, and TES, and (e) controls, directs, and performs coverage determinations for policies issued under the tradename The Hartford and/or by any of the Affiliates, including the policies issued to plaintiffs BXI, FIRST and TES.

23.    Defendant HIG (a) created and operates a common website (https//business.theharford.com) where holders of policies of any Defendant or Affiliate can download their policy and policy related documents, request a certificate of insurance, or pay their insurance premiums; (b) created and operates a common website (www.thehartford.com/servicecenter) for bill paying by policy holders of any policy of any

Defendant or Affiliate; (c) operates a common toll free phone number (e.g. 866-467-8730) for billing and policy questions for policies of Defendants and any Affiliate; and (d) operates a common toll free phone numbers (e.g. 800-467-8730) for the reporting of claims by policy holders of any policy of Defendants or any Affiliate.

24.     HIG operates, controls and directs a "CAT Claim office," "Commercial Property Center," the "Western Property Office," and the "Eastern Property Office" to receive, investigate, and administer claims submitted under policies written by it, the other Defendants, and the Affiliates ("Claims Offices").

25.     All of the Claims Offices are located in and/or have P.O. Box mailing addresses in Lexington, Kentucky.

26.     HIG controls and directs Claims Representatives, Inside Claims Representatives, Senior Claims Representatives, and staff in various other positions at the Claims Offices to perform intake, investigation, coverage determination, and coverage payouts for claims under policies sold by HIG and its "writing companies", including defendants Sentinel, Hartford Casualty, and Hartford Midwest as well as the other Affiliates.

27.     The Claims Representatives under the control and direction of HIG include Aaron Swartz AIC, Kasi Orr, Francine Olugbode, Kimberly Wiegert, Nicholos Lundeen, and Ashley Pearson all of whom administered claims made under policies issued by HIG and the other Defendants.

28.     HIG controlled and directed the preparation and distribution of standard "form" policy interpretations and claim denials for itself and the Affiliates for claims related to the Virus.

29.     In March 2020, HIG controlled and directed the preparation and distribution of a standard "form" letter to all holders of policies written by Defendants and the Affiliates in New

York "to help you and other commercial property policyholders understand how coverages in your policy relate to COVID-19."

30.     Defendant   HIG   created   and   operates   a   specialized   web   page (www.thehartford.com/businessincomeclaim)   for   the   reporting   of   Virus   related   business interruption claims common to all policy holders of Defendants and Affiliates.  Policyholders of Defendants and the Affiliates that called the 800 claim reporting phone number regarding Virus related matters were directed to the automated web page controlled and operated by defendant HIG.

31.     Defendant HIG controlled and directed the creation of information links about business   insurance   issued   by   it   and/or   the   Affiliates   related   to   the   Virus   at   its   webpage www.thehartford.com, including:  (a) https://www.thehartford.com/coronavirus/businesses, and (b) https://www.thehartford/resoures/covid-19.

32.     Defendant HIG directed that it and its Affiliates adopt the following position regarding Business Interruption Coverage provided for under the Policy:

> This is generally designed to cover losses that result from direct physical loss or damage to property caused by hurricanes, fires, wind damage or theft and is not designed to apply in the case of a virus.

33.     All risk insurance policies, such as those issued by Defendants herein, provide coverage for damages, including business interruption arising from "natural disasters" such as hurricanes, fires, and wind unless specifically excluded or limited.

34.     A common characteristic of the natural disasters is they cause or involve substantial damage to property, hardship, suffering, and possible loss of life.

35.     The COVID-19 pandemic is a natural disaster of the same general nature as hurricanes, tornadoes, storms and high wind.

36.     Each of the policies issued to plaintiffs, and upon information and belief all policies issued by Defendants and the other Affiliates, contain the electronic signature of Lisa Levin, Secretary, and Douglas Elliott, President, who are officers of defendant HIG a/k/a "The Hartford" with the following statement: "Our President and Secretary have signed this Policy."

37.     Christopher Swift is the Chief Executive Officer of defendant HIG and, as such, controls, directs oversees, and/or administers the preparation, underwriting, issuance, claims administration, and interpretation of all policies issued by HIG, the Other Defendants, and the Affiliates.

38.     As Chief Executive Officer of defendant HIG, Mr. Swift made public statements that the policies issued by it and its Affiliates do not cover business interruption and other damages resulting from the Virus.

39.     In the early days of the pandemic, Mr. Swift explained that the reason HIG and its Affiliates were denying policy holder claims for business interruption losses was that "[t]he vast, vast majority of our contracts do have a virus exclusion."

40.     The policies issued by HIG and the other Defendants to Plaintiffs and the proposed Class Members do not contain any type of virus exclusion for the BI Losses.

<u>JURISDICTION AND VENUE</u>

41.     Court has jurisdiction pursuant to 28 U.S.C. § 1332.

42.     Venue is proper in this district under 28 U.S.C. §1391.

43.     A substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiff's purchase of the insurance policy, Plaintiff's business operations, the property that is the subject of insurance policy is in the State of New York, County of Erie, and

the loss events impacting Plaintiff's business and property for which coverage was denied took place in the district.

FACTS

A.      The Policy

44.      Defendants HIG and Sentinel issued and delivered to Plaintiff BXI an insurance policy bearing the policy number 01 SBA RG9986 SB (the "BXI Policy").   A copy of the BXI Policy is attached hereto as *Exhibit A*.

45.      Defendants HIG and Hartford Casualty issued and delivered to Plaintiff First an insurance policy bearing the policy number 01 SBA BZ6994 SB (the "First Policy").   A copy of the First Policy is attached hereto as *Exhibit B*.

46.      Defendants HIG and Hartford Midwest issued and delivered to Plaintiff TES an insurance policy bearing the policy number 01 SBA RE1591 SB (the "TES Policy").   A copy of the TES Policy is attached hereto as *Exhibit C*.

47.      The BXI Policy, the First Policy, and the TES Policy are the same or substantially similar to one another, and are the same or substantially similar to each policy issued by Defendants to Class members, and include the Policy.

48.      Form SS 00 01 03 14 of the Policy provides "**Spectrum Business Owner's Policy**" issued by the "**THE HARTFORD**."

49.      Each Policy, including the Policy, was issued in consideration of a premium which was paid to, received, and retained by Defendants.

50.      The Policy, and any renewals of same, covered losses occurring at the identified Premises at relevant times in 2020, including the months of March, April and May.

- 10 -

51.     The Policy states:

This **Spectrum Policy** consists of Declaration, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of the Hartford Insurance Group shown below.

**INSURER**:     [Sentinel, Hartford Casualty Hartford Midwest or other Affiliate]
                 One Hartford Plaza, Hartford, CT 06155

52.     Each Plaintiff is identified in its respective Policy as the "Named Insured."

53.     Each Policy, including the BXI Policy, the First Policy and the TES Policy, provides coverage on an "all risk" rather than specified peril basis.

54.     "All risk" insurance policies cover all risks of loss except for risks that are expressly and specifically excluded.

55.     Under paragraph "A. Coverage" at subparagraph 3 "Covered Causes of Loss" of the Special Property Coverage Form, the Policy provides coverage for all "RISKS OF DIRECT PHYSICAL LOSS unless the loss is:  **a.** Excluded in Section **B., EXCLUSIONS**, or **b.** Limited in Paragraph **A.4**. Limitations . . . ." (emphasis in original).

56.     Under paragraph "**A. COVERAGE**" at subparagraph "**5.  Additional Coverages**" of the Special Property Coverage Form, the Policy provides coverage for, among other things: "o. Business Income"; "p. Extra Expense"; "q. Civil Authority"; "r. Extended Business Income"; and "s. Business Income from Dependent Properties."

57.     Plaintiff and other Class members have suffered BI Losses that are expressly covered under **"5. Additional Coverages**" and other provisions of the Policy.

58.     Under paragraph "**E. PROPERTY LOSS CONDITIONS**" at subparagraph "**3. Duties in the Event of Loss or Damage**" of the Special Property Coverage Form, the Policy provides "in the event of loss of or damage to Covered Property" insureds must "[t]ake all

reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

59.     Plaintiffs, and upon information and belief Class members, complied with the insureds' obligations under Duties in Event of Loss or Damage and incurred SL Losses.

60.     The "Exclusions" do not reference, restrict, limit, or preclude coverage for losses resulting directly or indirectly from a virus.

61.     The "Limitations" do not restrict, limit or preclude coverage for losses resulting directly or indirectly from a virus.

B.     <u>Absence of "Exclusion of Loss due to Virus or Bacteria" Endorsement</u>

62.     Since in or before 2006, the insurance industry, including Defendants, have been aware of the risks of damage to property, physical loss of property, and damage to business operations associated with viruses and bacteria.

63.     In or about 2006, the insurance industry adopted a standard form policy endorsement for commercial property policies commonly known as "Exclusion of Loss Due to Virus or Bacteria." This has otherwise been referred to as Multistate Form Filing CF-2006-OVBEF and/or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06 (collectively, the "Virus Exclusion").

64.     The Virus Exclusion was developed by the Insurance Service Office ("ISO").

65.     Defendants are members of the insurance industry and ISO and have at all relevant times had  access to and actual knowledge of ISO forms, including the Virus Exclusion.

66.     Defendants have issued all risk commercial property policies that include the Virus Exclusion.

67.     Defendants have issued all risk commercial property policies that include an exclusion for losses resulting from a virus in a form other than the Virus Exclusion.

68.     Attached hereto as *Exhibit D* is an HIG form for the Virus Exclusion that was prepared by, adopted and incorporated in, and made a part of policies issued by HIG and one or more Affiliates (the "Hartford ISO Virus Exclusion").

69.     The Hartford ISO Virus Exclusion demonstrates that HIG and the Affiliates were at all relevant times (a) aware of and the ISO Virus Exclusion and, in their discretion, selectively incorporated it into some of the all risk policies they issued, and (b) aware virus coverage was provided under the all risk policy.

70.     Attached as *Exhibit E* is an HIG form of Virus exclusion that was prepared by, adopted and incorporated in, and made a part of policies issued by HIG and one or more Affiliates, including Hartford Midwest (the "Hartford Fungi, Bacteria or Virus Exclusion"). This form excludes coverage for virus damage and then provides for additional limited coverage.

71.     The Hartford Fungi, Bacteria or Virus Exclusion form demonstrates that HIG and the Affiliates were at all relevant times aware virus coverage was provided under the all risk policy.

72.     The intended purpose of the Virus Exclusion is to eliminate virus and bacteria related losses from coverage under all risk insurance policies.

73.     Defendants issued insurance policies in New York without the Virus Exclusion, the Hartford ISO Virus Exclusion, or the Hartford Fungi, Bacteria or Virus Exclusion.

74.     The Policy does not contain the Virus Exclusion.

75.     The BXI Policy, the First Policy, and the TES Policy do not contain the Virus Exclusion, The Hartford ISO Virus Exclusion or the Hartford Fungi, Bacteria or Virus Exclusion.

76.     The Policy does not contain an exclusion substantially the same or similar to the Virus Exclusion, The Hartford ISO Virus Exclusion, or the Hartford Custom Virus Exclusion.

77.     The BXI Policy, the First Policy and the TES Policy do not contain an exclusion substantially the same or similar to the Virus Exclusion, the Hartford ISO Virus Exclusion or the Hartford Fungi, Bacteria or Virus Exclusion.

78.     The Policy does not contain any virus exclusion or any applicable exclusionary language.

79.     The Policy does not exclude or limit coverage for losses experienced by Plaintiffs directly or indirectly from the Virus, CV-19, or the CA Orders.

80.     HIG and the Other Defendants issued policies to the proposed Class Members that do not contain the Virus Exclusion, The Hartford ISO Virus Exclusion, the Hartford Fungi, Bacteria or Virus Exclusion, or any applicable or enforceable exclusionary language that would preclude coverage for the Virus, CV-19, or the CA Orders.

C.      Plaintiffs' Covered Losses related to the Virus

81.     Plaintiffs' employees, customers, vendors, and/or other visitors to the Presmises: (a) were exposed to the Virus, (b) tested positive for the Virus and/or CV-19, (c) were otherwise diagnosed as infected with the Virus and/or having CV-19, (d) exhibited symptoms consistent with infection by the Virus and/or having CV-19, and/or (e) were instructed by civil authorities and/or their medical providers to self-isolate, quarantine, and/or suspend normal business operations.

82.     Plaintiffs' Premises, personal property, and dependent property:  (a) were exposed to the Virus, (b) had the Virus and persons with CV-19 present at their respective locations, (c) could no longer be used or operated due to the presence of the Virus and its resulting direct physical

loss of or damage to property, and/or (d) could no longer be used or operated due to orders of civil authorities in response to the Virus and CV-19.

83.     Property in the immediate area of the Premises: (a) were exposed to the Virus, (b) had the Virus and persons with CV-19 present at their respective locations, (c) could no longer be used or operated due to the presence of the Virus and its resulting direct physical loss of or damage to property, and/or (d) could no longer be used or operated due to orders of civil authorities in response to the Virus and CV-19.

84.     The Virus is a highly contagious.

85.     The Virus is physical substance.

86.     The Virus survives on and is active on inert physical surfaces.

87.     The Virus may be emitted into the air.

88.     The Virus may survive in the in air.

89.     Scientific evidence shows that the Virus is spread from exposure to air and surfaces in buildings.

90.     Scientific evidence shows the Virus can remain viable and infectious on surfaces for days, including walls, elevator buttons, railings, furniture, countertops, and door handles.

91.     Infectious airborne droplets and smaller aerosols that remain suspended in the air for hours after release are a major transmission source of the Virus.  In addition to talking, coughing, or sneezing, such infections aerosols have been found to release simply by exhaling.

92.     Airborne, the Virus can travel many meters through air current, and it may spread through air ducts and pipes.

93.     The risk of infection inside a building is substantially and materially greater than open-air environments.

94.     The presence of the Virus caused civil authorities in New York to issue Executive Orders declaring a disaster emergency and requiring the suspension of access to and use of commercial property.

95.     The New York City Emergency Executive Orders state that "the virus physically is causing property loss and damage."

96.     Plaintiffs ceased business operations in compliance with the government orders arising from the physical loss and damage caused by the Virus to their Premises and to property in the vicinity of their Premises.

97.     In New York, the Virus became ubiquitous, such that it existed and/or exists throughout the State, including, without limitation, Plaintiffs' Premises and property in the immediate area of Plaintiffs' Premises.

98.     The Virus was present at, in, throughout, and on Plaintiffs' Premises and property within one mile of Plaintiffs' property.

99.     The Virus causes physical loss of and/or damage to property.

100.    The presence of the Virus constitutes direct physical loss of and/or damage to property.

101.    The presence of the Virus and persons with CV-19 caused direct physical loss of or damage to the covered property under the Policy and the policies of other Class members, as well as to property in the immediate area of such covered property.

102.    The presence of the Virus, the damage it causes, and persons with CV-19 caused civil authorities throughout New York to issue orders requiring the suspension of business and/or use of commercial property, including the property of Plaintiff and other class members as well as property in the immediate area of such covered property.

103.    The CA Orders include, but are not limited to, the following Executive Orders of

New York State Governor Cuomo:

      a.     On March 7, 2020, by Executive Order 202, Governor Cuomo declared a Disaster Emergency for all of New York State because of CV-19;

      b.     On March 18, 2020, by Executive Order 202.6, Governor Cuomo reduced all non-essential businesses' on-site workers by 50%, effective at 8:00 p.m. on March 20, 2020;

      c.     On March 19, 2020, by Executive Order 202.7, Governor Cuomo reduced all non-essential businesses' on-site workers by 75%, effective at 8:00 p.m. on March 21, 2020; and

      d.     On March 20, 2020, by Executive Order 202.8, Governor Cuomo reduced all non-essential businesses' on-site workers by 100%, effective at 8:00 p.m. on March 22, 2020.

104.    Plaintiffs substantially ceased business operations on or about March 20, 2020, as a result of the Virus, CV-19, and the CA Orders.

105.    Plaintiffs have suffered a direct physical loss of or physical damage to Covered Property, including the BI Losses, as a result of the Virus, CV-19, and the CA Orders ("Loss").

106.    The Loss constitutes an occurrence under the Policy.

107.    Plaintiff is entitled to be covered and indemnified under the Policy for the Loss.

D.    Loss Reporting to BI Losses to Defendants

108.    Defendant HIG controlled and directed the other Defendants and the Affiliates in the preparation of the Policy, the underwriting relating to the issuance of the Policy, and the claims intake, investigation, and administration under the Policy, including handling of claims arising out of or related to the Virus.

109.    HIG is a party to the insurance contracts entered into with Plaintiffs and the Class members.

110.    For instance, HIG's President and Secretary signed each Policy entered into with Plaintiffs and the Class members.

111.    The Other Defendants and Affiliates all acted uniformly in their handling of Virus claims pursuant to and in accordance with the control and/or direction of defendant HIG.

112.    Defendant HIG commissioned and manifested a desire for the Affiliates to act on its behalf subject to HIG's control and/or direction when writing and issuing policies, adjusting and investigating claims, and making coverage determinations.

113.    The Other Defendants and Affiliates have and had actual and apparent authority to act on behalf of defendant HIG.

114.    The Other Defendants and the Affiliates acted on behalf of HIG and in HIG's name with HIG's express, implied, and apparent authority.

115.    The Other Defendants and Affiliates consented to so act on behalf of HIG.

116.    Defendant HIG's statements, representations, and conduct communicated to Plaintiffs and Class members provided a reasonable belief and appearance that the Other Defendants and the Affiliates possessed the authority to, and were, acting on behalf of HIG with regard to the insurance policies at issue.

117.    Defendant HIG exercised control over the Other Defendants and the Affiliates by determining and issuing direction as to how policies, claims, investigations, and coverage determinations relating to the Virus, CV-19, and/or the CA Orders were to be handled.

118.    The Other Defendants' and the Affiliates' acts (including issuing the DFS Response, making coverage determinations, and issuing denial letters) were, in both form and substance, those of defendant HIG.

119.    Defendant HIG, the Other Defendants and the Affiliates share and use the same logo(s).

120.    Defendant HIG, the Other Defendants and the Affiliates share and use the same slogan(s).

121.    Defendant HIG, the Other Defendants and the Affiliates share and use the same forms, including the DFS Response, ISO forms, policy forms, reservation of rights letters, and denial letters.

122.    Defendant HIG, the Other Defendants and the Affiliates share the same underwriting department, such that the underwriting department underwrites claims for each Affiliate indiscriminately and indistinguishably.

123.    Defendant HIG, the Other Defendants and the Affiliates share the same adjusters and examiners, such that the same individuals investigate, adjust, examine, and make coverage determinations on claims for each Affiliate.

124.    Defendant HIG, the Other Defendants and the Affiliates, and their employees, share the same office space.

125.    Defendants share common offices and/or addresses at One Hartford Plaza, Hartford Connecticut and/or 501 Pennsylvania Parkway, Indianapolis, Indiana.

126.    Defendant HIG, the Other Defendants and the Affiliates share and use the same telephone numbers.

127.    Defendant HIG, the Other Defendants and the Affiliates share and use the same marketing, including common use of the "Stag" logo and "The Hartford" as registered trademarks.

128.    Defendant HIG, the Other Defendants, and the Affiliates share and use the same website(s).

129.    Defendant HIG, the Other Defendants and the Affiliates share and use the same internal systems, including information technology ("IT") systems, phone systems, case management systems, and underwriting systems.

130.    The business model and operations of the Other Defendants and the Affiliates is designed to assist, support, and follow the directions of defendant HIG.

131.    Defendant HIG operates an (800) phone line, including 1-800-327-3636, to report claims and/or losses under the Policy (the "800 Number").

132.    The Affiliates participate with defendant HIG in the operation of the 800 Number for the reporting of claims and/or losses with respect to Spectrum Business Owner's Policies and similar commercial property insurance.

133.    Defendant HIG, together with the other Defendants and the Affiliates, developed and operated a website for reporting business income related claims related to the Virus: www.thehartford.com/businessincomeclaim (the "HIG Website").

134.    The HIG Website requires policyholders to answer multiple-choice questions about COVID-19 rather than provide an opportunity for a narrative explanation of their claim.

135.    Beginning in or around March 2020, policyholders that called the 800 Number were instructed to report business interruption losses related to the Virus via the HIG Website.

136.    Plaintiffs reported their losses to Defendants in a timely manner.

137.    Plaintiff BXI reported the Loss to Defendant via the HIG Website.  A copy of the "The Hartford Report of Commercial Property Business Interruption Claim" submitted by Plaintiff BXI to Defendants via the HIG Website is attached hereto as *Exhibit F*.

E.    Uniform Practice to Deny Coverage for Losses related to the Virus

138.    Defendants arbitrarily and wrongfully disclaimed coverage for Plaintiffs' Loss.

139.    Defendants contend that the commercial property policies issued by HIG, the Other Defendants and/or the Affiliates in New York do not provide coverage for losses resulting from or related to the Virus, CV-19, or the CA Orders.

140.    Defendants' denial of coverage for losses related to or arising out of the Virus, CV-19, and the CA Orders was pre-determined and without regard to the individual circumstances of Plaintiff or other insureds, including the presence of the Virus at the insured premises or property in the immediate area thereof.

141.    By letter dated March 10, 2020, the New York State Department of Financial Services directed all insurers that had issued commercial property insurance in New York to provide details on the business interruption coverage provided under such policies ("DFS Directive").  A copy of the DFS Directive is attached hereto as *Exhibit G*.

142.    The DFS Directive explained that the purpose of this requirement was to ensure that insurance companies "explain to policyholders the benefits under their policies and the protections provided in connection with COVID-19" and required "each Insurer examine the policies it has issued and explain the coverage each policy offers in regard to COVID-19."

143.    Defendants HIG, the Other Defendants, and/or the Affiliates collectively prepared a template response to the DFS Directive  ("DFS Response").  A copy of the DFS Response is attached hereto as *Exhibit H*.

- 21 -

144.   Plaintiffs, and upon information and belief other members of the proposed class of policyholders, were the intended recipients of the DFS Response letter.

145.   In the DFS Response, Defendants state the position that the Policy, and other similar commercial property policies they have issued in New York, including Spectrum Business Owner's Policies, do not cover losses arising from or relating to the Virus, CV-19, or the CA Orders.

146.   The DFS Response states: "Generally, <u>the presence of a virus does not constitute direct physical loss or damage to property</u>.  By way of example, closing or limiting a business to prevent the spread of the virus is not physical loss or damage to property." (Emphasis added).

147.   Defendant HIG prepared a written memorandum "The Hartford:  Our Resposne to COVID-19" that was sent to its insurance agents and representatives on or before March 23, 2020, (the "CV-19 Memo").  A copy of the CV-19 Memo is attached as *Exhibit I.*

148.   In the CV-19 Memo, HIG reiterated to is agents and representatives that its commercial property policies do not provide business interruption, civil authority, dependent property, or other coverage for losses related to the Virus:  "This coverage is generally designed to cover losses that result from direct physical loss or damage to property and is not designed to apply in the case of a virus."

149.   Before Plaintiffs and other members of the proposed class of policyholders submitted notice of and information about their claims related to the Virus, CV-19, and the CA Orders, Defendants had determined not to afford coverage for any such claims.

150.   When circulating the DFS Response and/or the CV-19 Memo to insurance agents and adjusters, Defendants had actual knowledge that they had thousands of impacted policyholders in New York.

151.    Defendants intended to mail the DFS Response letters in batches due to the large number of policyholders, but failed to do so in compliance the DFS Directive.

F.      Coverage Denial for Losses related to Virus, CV-19 and CA Orders

152.    Consistent with the statements in the DFS Response and the CV-19 Memo, Defendants have denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders.

153.    By letter dated April 22, 2020 (received via email on April 28, 2020), Defendants HIG and Sentinel issued a written coverage denial to Plaintiff BXI, noting: "We have completed a review of your loss and determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, the loss is not covered" ("BXI Coverage Denial"). A copy of the Coverage Denial is attached hereto as *Exhibit J*.

154.    The BXI Coverage Denial received by Plaintiff BXI includes an attachment "Coverage Decision Details" which sets forth Defendants' analysis of why the Spectrum Business Owner's Policies and/or Special Property Coverage Form (SS 00 07 07 05) issued in New York do not afford coverage for losses related to the Virus, CV-19, or the CA Orders.

155.    The BXI Coverage Denial does not reference any of the facts of Plaintiff's loss.

156.    By letter dated April 1, 2020, defendants HIG and Hartford Midwest issued a written coverage denial to Plaintiff TES, noting: "We have completed a review of your loss and determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, the loss is not covered" ("TES Coverage Denial").  A copy of the TES Coverage Denial is attached hereto as *Exhibit K*.

157.    By letter dated March 23, 2020, defendants HIG and Sentinel issued a written coverage denial to Plaintiff BXI, noting the denial was based on a finding that "[n]o direct physical

loss or damage has occurred to the property . . ." ("First Coverage Denial").  A copy of the First Coverage Denial is attached hereto as *Exhibit L*.

158.    The BXI Coverage Denial, TES Coverage Denial, and First Coverage Denial were prepared under the control and direction of defendant HIG (hereinafter collectively the "Coverage Denial Letters").

159.    Defendant HIG and the Other Defendants have refused to make payment to Plaintiffs for damages resulting from the Loss which constitutes a breach of the Policy.

160.    Defendants' refusal to cover the Loss is erroneous and unsupported by the plain language of the Policy.

161.    As such, Defendants owe Plaintiffs insurance coverage and benefits under the Policy for the Loss, and there is no valid basis for its refusal to issue the same.

162.    Plaintiffs continue to be damaged by Defendants' refusal to issue the full amounts due and owing under the Policy.

163.    Defendants have denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders based on their policy interpretation as set forth in the DFS Response, CV-19 Memo, and the Coverage Denial Letters, and the coverage decision details.

164.    Upon information and belief, Defendants made coverage decisions concerning policyholder claims related to the Virus, CV-19, and the CA Orders without consideration of the unique facts or circumstances of each loss and, rather, adopted a pattern and/or practice to deny such claims.

## CLASS ACTION ALLEGATIONS

165.    Plaintiffs bring this action pursuant Federal Rules of Civil Procedure 23 on behalf

themselves and a class consisting of

> a.    all policyholders of all-risk commercial property insurance policies
> issued by any named Defendant, including policyholders of a
> Spectrum Business Owner's Policy or a policy that includes or is
> comprised of Special Property Coverage Form (SS 00 07 07 05);
>
> b.    whose policies were in effect for any period of time on or after
> February 15, 2020, and through the end of the (i) declared
> emergency period or (2) prohibits, limitations or restrictions of
> business property use under the CA Orders;
>
> c.    whose policies do not contain the Virus Exclusion or a substantially
> similar exclusion for a virus as an endorsement; and
>
> d.    who suffered BI Losses or SL Losses as a result of the Virus, CV-
> 19 or the CA Orders, including policyholders that suspended or
> reduced business operations at the premises covered by their policy
> (the "Class").

166.    Excluded from the Class are Defendants and their members, affiliates, parents,

subsidiaries, officers, directors, employees, successors, or assigns; governmental entities as well

as counsel and court staff assigned to this case and/or their immediate family members. Plaintiffs

reserve the right to amend or modify the Class definition.

167.    FRCP 23(a)(1)- Numerosity. The Class members are so numerous that joinder of

all members is impracticable.  Upon information and belief, Defendants have issued thousands of

commercial property insurance policies in New York that contain provisions for business

interruption and related coverage, including the Spectrum Business Owner's Policy and policies

that include Special Property Coverage Form (SS 00 07 07 05).

168.    FRCP 23(a)(2)- Commonality and Predominance.  Common questions of law and

fact exist as to all Class members and predominate over any questions solely affecting individual

Class members. Among the questions of law and fact common to the Class are:

a.    Defendants issued all risk policies to Class members in exchange for premiums paid and received;

b.    Plaintiff and members of Class had the use of/access to their property and/or the operation of their business impacted by the CA Orders;

c.    Defendants' position that the presence of a virus or the reduction of a business relating thereto does not constitute direct physical loss of or damage to property;

d.    Defendants' interpretation of coverage for losses related to the Virus, CV-19, and the CA Orders as set forth in the DFS Response;

e.    Defendants' "Coverage Decision Details" was uniformly adopted and applied to all policyholder Class members;

f.    Defendants' knowledge of and failure to adopt the Virus Exclusion in the policies issued to Class members;

g.    whether the policies issued by Defendants were ambiguous as to coverage for losses arising from the presence of a virus or the limiting or closing of a business to prevent the spread of a virus;

h.    whether the presence of a person infected with CV-19 at or in the immediate area of an insured premises constitutes a physical loss of or physical damage to property under the policies issued by Defendants;

i.    whether the closing or limiting of a business to prevent the spread of a virus constitutes a physical loss of or physical damage to property under the policies issued by Defendants;

j.    Whether New York state laws were violated by the Defendants' acts and/or omissions as alleged herein;

169.    FRCP 23(a)(3)- Typicality.  The claims of the proposed Class representatives, Plaintiffs BXI, FIRST, and TES, are typical of the claims of the Class members as all Class members were issued the same or substantially similar commercial property insurance policies by Defendants, including Spectrum Business Owner's Policy or a policy that includes or is comprised of Special Property Coverage Form (SS 00 07 07 05), and Plaintiffs and members of the proposed class have been similarly affected by Defendants' wrongful acts complained of herein, including

Defendants' position that the presence of a virus and/or the closing or limiting of a business to prevent the spread of a virus are "not physical loss or damage to property."

170.   <u>Fed.R.Civ.P 23(a)(4)- Adequacy of Representation</u>.   The proposed Class representatives, Plaintiffs BXI, FIRST, and TES, will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in matters involving first part insurance coverage as well as class actions.  Plaintiffs have no interests which conflict with the Class.  Plaintiffs and their counsel will vigorously prosecute this action, and the interests of the Class will be fairly and adequately protected.

171.   <u>Fed.R.Civ.P. 23(b)(3)- Superiority</u>.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Upon information and belief, Defendants have issued in excess of 1,000 commercial property policies in New York and it is undisputed that the Virus, CV-19, and/or the CA Orders have impacted every business in New York, including every policyholder in the proposed Class.

172.   The damages suffered by individual class members will vary and may be relatively small in comparison to the costs of litigation.  As such, the expense and burden of individual litigation could make it impossible for Class members to individually redress the wrongs done to them. There will be no unusual difficulty in the management of this action as a class action.

173.   In the alternative, the Class may be certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because: (a) the prosecution of separate actions by the individual Class members would create a risk of varying results and incompatible/inconsistent standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or

impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

<u>FIRST CAUSE OF ACTION</u>
Breach of Contract and Declaratory Relief

174.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

175.    Plaintiffs brings this cause of action on behalf of themselves and on behalf of the other Class members.

176.    For each policy issued to Plaintiffs and the Class members, the writing Defendant and Defendant HIG are parties to and bound by the Policy.

177.    Plaintiffs sustained a physical loss of property, BI Losses, SL Losses, and damages as a result of a covered cause of loss under the Policy.

178.    Covered Causes of Loss under the policies issued by Defendants to Class members include physical loss of and damage to property resulting from the Virus, CV-19, and/or the CV Orders.

179.    Defendants had a duty under the Policy to provide coverage for BI Losses, SL Losses, and damages resulting from a covered cause of loss.

180.    Plaintiffs duly notified Defendants of their claim under the Policy, including for business income coverage.

181.    Defendants have refused to pay Plaintiffs' BI Losses, SL Losses, and damages.

182.    Defendants have refused to pay BI Losses, SL Losses, and damages arising from or relating to the Virus, CV-19, and/or the CA Orders.

183.   Defendants' failure and refusal to make payments to Plaintiffs for the BI Losses, SL Losses, and other damages constitutes a breach of the Policy.

184.   Defendants' failure and refusal to make payments to Plaintiffs and other Class members for BI Losses, SL Losses, and damages pursuant to the terms of the policies constitutes a breach of contract.

185.   Defendants' conduct has been unreasonable.

186.   Defendants' wrongfully assert that, as a matter of law, the presence of the Virus does not constitute physical loss of or physical damage to property.

187.   Defendants have unreasonably obstructed and prevented Plaintiffs and other Class members from receiving prompt payment for the insurance benefits they are entitled to under the Policy.

188.   Defendants breached their duty and obligations of good faith and fair dealing.

189.   Plaintiffs and the other Class members have been damaged by Defendants' wrongful conduct, including without limitation suffering extra-contractual consequential damages as a result of Defendants' failure to act promptly and in good faith.

190.   It was reasonably foreseeable and contemplated by the parties, at the time the Policy was issued and/or renewed, that the failure to properly investigate a loss/occurrence and the failure to promptly provide coverage and pay insurance benefits under the Policy would negatively and adversely affect a policyholder's business operations, including causing delays thereto, thereby forcing Plaintiffs and other Class members to incur additional business interruption losses, attorneys' fees, and litigation-related expenses.

191.   Plaintiffs and members of the proposed Class have been damaged by Defendants' wrongful conduct, including that they have sustained foreseeable extra-contractual consequential

damages, including business interruption losses, attorneys' fees, and litigation-related expenses.

192.    As a result of Defendants' breach and wrongful conduct, Plaintiffs and the Class members are entitled to judgment providing declaratory relief of their rights under the Policy, including a declaration rejecting and invalidating Defendants' position that the presence of the Virus at their premises does not constitute physical loss of or physical damage to property under the Policy.

193.    Plaintiffs and the Class Members are entitled to declaratory relief under 28 U.S.C. §2201 to redress the wrongs of Defendants alleged herein.

194.    As a result of Defendants' breach and wrongful conduct, Plaintiffs and Class members are entitled to judgment providing declaratory relief of their rights under the Policy, determining that Defendants are liable to Plaintiff and Class members for breach of contract, and that Plaintiffs and Class members have been damaged and are entitled to judgment against Defendants in an amount to be determined at trial, but not less than, $7,500,000.00, plus interest.

SECOND CAUSE OF ACTION
New York General Business Law § 349

195.    Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

196.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the other Class members.

197.    Defendants' statements in the DFS Response sent to policyholders were inaccurate and misleading.

198.    Defendants DFS Response indicated that all claims would be assessed on the merits of their individual facts and circumstances.

199.    Defendants did not make coverage determinations based on the individual facts and circumstances of the claims presented.

200.    Defendants made a uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders.

201.    Upon information and belief, Defendants' made the uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders before issuing the DFS Response.

202.    Defendants expressly misrepresented to their policyholders that coverage decisions would be made on a case-by-case basis given the factual circumstances or policy provisions of individual policyholders.

203.    Defendants' instructions to insurance agents and policyholder representatives that the coverages under its policies do not apply in the case of a virus were inaccurate and misleading.

204.    Defendants' inaccurate and misleading statements were relied on by policyholders and induced them to refrain from filing claims with Defendants.

205.    Defendants' failure to reasonably investigate the BI Losses and SL Losses and their refusal to pay insurance benefits through the present has, at the least, been in reckless and/or grossly negligent disregard of their obligations under each Policy issued to Plaintiffs and other Class members.

206.    Defendants' actions are consumer oriented inasmuch as the Policy consists of standard policy forms created, maintained, and issued by Defendants as a group.

207.    Defendants' actions are consumer oriented inasmuch as the disclaimer letter issued to Plaintiff consisted of a generic, pre-determined analysis that all claims relating to the Virus, CV-

19, and the CA Orders were denied.

208.    Defendants pre-determined that as a general rule that their standard form policies of insurance issued to insureds in New York State simply do not afford coverage for losses stemming from the Virus, CV-19, and the CA Orders, irrespective of the fact that the policies do not contain a Virus Exclusion.

209.    Illustrating the pre-determined nature of Defendants' coverage decisions, neither the denial letter nor the enclosed "Coverage Decision Details" enclosure reference or contain an analysis of the facts of Plaintiffs' loss.

210.    Further illustrating the pre-determined nature of Defendants' coverage decisions is the fact that Defendants created a generic policy language enclosure (the so-called Coverage Decision Details) which is a boilerplate analysis of the policy so that the disclaimer letters could be generated in a mass-produced, streamlined manner.

211.    Upon information and belief, each of the Defendants has received claims arising from or related to the Virus, CV-19, and the CA Orders from other insureds with policies that are the same as substantially similar to the BXI Policy.

212.    Upon information and belief, each of the Defendants has issued disclaimer letters that are the same as, or substantially similar to, the disclaimer letter that was issued to Plaintiffs in this case.

213.    Defendants' conduct in pre-deciding their coverage position for all, or substantially all, claims from insureds in New York State stemming from the Virus, CV-19, and the CA Orders was materially misleading.

214.    Defendants, by their agents and employees, have perpetuated and continued perpetuating a scheme by which its insureds are deprived of the full benefit of their policies,

regardless of the fact that the Class's policies do not contain the Virus Exclusion or any exclusions referencing virus-related losses.

215.    Upon information and belief, Defendants have instituted a practice, policy, or procedure by which Defendants intend to deny all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders.

216.    Defendants' practice, policy, or procedure was surreptitiously and purposefully made without notice or disclosure to Defendants' customers, potential customers, or the public at large and contrary to express representations to the public

217.    Defendants' practice, policy, or procedure of not covering claims stemming from viruses is not disclosed within the subject insurance policies, because the policies do not contain the Virus Exclusion or a similar exclusion for viruses, despite the fact that Defendants are familiar with the Virus Exclusion.   Therefore, Plaintiffs and the public at large have been misled in a material respect.

218.    Defendants' practice of denying all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders was not disclosed to its policyholders until after they had submitted a claim under a policy.   Therefore, Plaintiffs and the public at large who have obtained such policies from the Defendants have been misled in a material respect.

219.     The aforementioned public-oriented conduct exercised by Defendants is a regular business practice, policy, or procedure.

220.    Defendants' aforesaid practice, policy, or procedure is willful, intentional, and malicious with the ultimate intent and effect of depriving its insureds of the scope and amount of coverage which they paid and bargained for.

221.    The aforesaid actions of the Defendants constitute a violation of § 349 of the New York General Business Law for which Plaintiff and the Class are entitled to treble damages up to the sum of $1,000.00 per violation, plus reasonable attorneys' fees.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court:

a.      Enter an Order certifying the proposed Class, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Class;

b.      Entering judgment on the First Cause of Action in favor of Plaintiffs and the Class members as follows:

1.      Determining and declaring that the presence of the Virus constitutes  direct physical loss of or damage to property;

2.      Determining and declaring that the presence of the Virus causes direct physical loss of or damage to property;

3.      Determining and declaring Defendants' position that, as a matter of law, the presence of the Virus does not constitute direct physical loss of or damage to property is wrong, invalid, and a breach of the Policy;

4.      Determining and declaring that losses sustained by Plaintiff and Class members arising from and relating to the Virus, CV-19 and/or the CA Orders are insured losses covered under the Policies issued by Defendants;

5.      Determining and declaring that Defendants are, jointly and severally, obligated to pay the full amount of BI Losses, SL Losses, and other coverage benefits provided for under the Policies issued to Plaintiff and the Class members with respect to losses arising from or relating to the Virus, CV-19, and/or the CA Orders; and

6.      Determining liability in favor of Plaintiffs and Class members against Defendants, jointly and severally, for breach of contract and awarding damages for losses covered under the Policies in an amount to be determined at trial, but not less than, $7,500,000.00, plus interest.

c.   Entering judgment on the Second Cause of Action in favor of Plaintiffs and Class members against all Defendants, jointly and severally, in an amount to be determined at trial but not less than treble damages up to the sum of $1,000.00 per violation, plus interest and reasonable attorneys' fees;

d.   Ordering Defendants to pay the legal fees of attorneys' fees and costs of suit;

e.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

f.   Ordering such other and further relief as may be just and proper.

<u>JURY DEMAND</u>

Plaintiffs, for themselves and on behalf of all members of the proposed Class, hereby demands a trial by jury on all issues of fact and damages claimed in the foregoing complaint.

Dated:   Buffalo, New York
         August 13, 2020

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

By:   *s/Charles C. Ritter, Jr.*
      Charles C. Ritter, Jr.
      Christopher M. Berloth
      Thomas D. Lyons
      *Attorneys for Plaintiff*
      *Buffalo Xerographix Inc.*
      701 Seneca Street, Suite 750
      Buffalo, New York 14210
      Tel: (716) 855-1111
      critter@dhpglaw.com
      cberloth@dhpglaw.com
      tlyons@dhpglaw.com