## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUFFALO XEROGRAPHIX, INC., <br><br> SHATKIN F.I.R.S.T. LLC, AND <br><br> TODD E. SHATKIN DDS PLLC, for themselves and on behalf of a class of similarly situated policyholders, <br><br><div align="right">Plaintiff,</div><br><br> —*against*— <br><br> THE HARTFORD INSURANCE GROUP a/k/a THE HARTFORD FINANCIAL SERVICES GROUP, INC.; <br><br> SENTINEL INSURANCE COMPANY, LTD.; <br><br> HARTFORD CASUALTY INSURANCE COMPANY; <br><br> HARTFORD INSURANCE COMPANY OF THE MIDWEST, <br><br><div align="right">Defendants.</div> | 20 Civ. 520 (GWC) |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE HARTFORD FINANCIAL SERVICES GROUP, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    The Insurance Contracts ............................................................................... 2

    HFSG and Its Relationship to the Other Defendants ................................... 4

    The COVID-19 Pandemic and Plaintiffs' Insurance Claims ....................... 5

    The Original Complaint and Original Motion to Dismiss ........................... 6

    The Amended Complaint ............................................................................. 7

GOVERNING LEGAL STANDARDS .............................................................................. 8

DISCUSSION .................................................................................................................... 9

    I.     Plaintiffs Have Not Plausibly Alleged that HFSG
          Is a Party to Plaintiffs' Insurance Contracts ....................................... 9

          A.     Plaintiffs Have Not Alleged Facts to Pierce the Corporate Veil ............. 10

          B.     Plaintiffs Have Not Plausibly Alleged
                 "Apparent Authority" to Bind HFSG ....................................... 14

    II.    Plaintiffs Lacks Standing to Sue HFSG ................................................ 18

    III.   The Court Lacks Personal Jurisdiction Over HFSG ............................. 21

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 9

*Atelier Constantin Popescu, LLC v. JC Corp.*,
    49 A.3d 1003 (Conn. App. 2012) ................................................................................ 12

*Bacewicz v. NGM Insurance Company*,
    No. 3:08-CV-1530, 2010 WL 3023882 (D. Conn. Aug. 2, 2010) ............................ 15, 16

*Batoh v. McNeil-PPC, Inc.*,
    167 F. Supp. 3d 296 (D. Conn. 2016) .......................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 9

*Berkshire Life Insurance Co. of America v. Hagerman*,
    No. 09–CV–2037, 2010 WL 2771839 (E.D.N.Y. July 13, 2010) .................................. 18

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ........................................................................................ 26

*Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ........................................................................................ 10

*Bridge v. New Holland Logansport, Inc.*,
    No. 3:12 CV 360, 2015 WL 1455203 (N.D. Ind. Mar. 30, 2015) .................................. 13

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ........................................................................................ 27

*CBR Event Decorators, Inc. v. Gates*,
    962 N.E.2d 1276 (Ind. App. 2012) ...................................................................... 12, 13, 14

*Chaichian v. Hartford Financial Services Group, Inc.*,
    No. 1:16-CV-01026, 2016 WL 4480038 (W.D. Ark. Aug. 3, 2016) .............................. 22

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ........................................................................................ 9

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ........................................................................................ 26

*City of Long Beach v. Total Gas & Power North America, Inc.,*
2020 WL 3057796 (S.D.N.Y. June 8, 2020) ................................................................ 27

*Commissioner of Environmentall Protection v. State Five Industrial Park, Inc.,*
37 A.3d 724 (Conn. 2012) ........................................................................................ 12

*Crab Boat Owners Association v. Hartford Insurance Company of the Midwest,*
325 F. Supp. 2d 1057 (N.D. Cal. 2004) .................................................................... 23

*Crosskey Architects, LLC v. Poko Partners, LLC,*
218 A.3d 133 (Conn. App. 2019) .............................................................................. 13

*CSX Transp., Inc. v. Blakeslee,*
No. 3:11-cv-533, 2012 WL 3985169 (D. Conn.  Sept. 11, 2012)................................. 13

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014) ........................................................................................ 25, 26

*Dinaco, Inc. v. Time Warner, Inc.,*
346 F.3d 64 (2d Cir. 2003)............................................................................. 17, 19, 20

*Endemann v. Liberty Insurance Corp.,*
390 F. Supp. 3d 362 (N.D.N.Y. 2019) ....................................................................... 10

*Engel v. Hartford Insurance Company of the Midwest,*
No. 2:11-CV-01103-RCJ, 2012 WL 275200 (D. Nev. Jan. 31, 2012) ........................... 23

*First Capital Asset Management, Inc. v. Brickellbush, Inc.,*
218 F. Supp. 2d 369 (S.D.N.Y. 2002)........................................................................ 21

*Fischer v. Chubb Insurance,*
Civ. No.16-8220, 2016 WL 7177608 (D.N.J. Dec. 19, 2016) ........................................ 16

*Fletcher v. Atex, Inc.,*
68 F.3d 1451 (2d Cir. 1995)...................................................................................... 18

*Hersey v. Lonrho, Inc.,*
807 A.2d 1009 (Conn. App. 2002) ............................................................................ 13

*Hidalgo v. Johnson & Johnson Consumer Cos.,*
148 F. Supp. 3d 285 (S.D.N.Y. 2015)........................................................................ 25

*Hill v. Napoli,* No. 6:09-CV-6546,
2014 WL 1322476 (W.D.N.Y. Mar. 31, 2014).............................................................. 10

*Horowitz v. Stryker Corp.,*
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ........................................................................ 24

*In re Alper Holdings USA*,
    386 B.R. 441 (Bankr. S.D.N.Y. 2008) ............................................................. 19

*Kamen v. American Telephone & Telegraph Co.*,
    791 F.2d 1006 (2d Cir. 1986) ............................................................................ 8

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ............................................................................ 10

*Litchfield Asset Management v. Howell*,
    799 A.2d 298 (Conn. App. 2002) ..................................................................... 12

*LV Diagnostics, LLC v. Hartford Financial Services Group, Inc.*,
    No. 217CV 1371JCMPAL, 2018 WL 651327 (D. Nev. Jan. 31, 2018) .......... 22

*Matter of Tax Indebtedness of Coppola*,
    91 Civ. 919, 1994 WL 159525 (E.D.N.Y. Jan. 10, 1994) ............................... 14

*Metropolitan Business Management, Inc. v. Allstate Ins. Co.*,
    No. CV 05-8306, 2009 WL 2424291 (C.D. Cal. Aug. 6, 2009) ........................ 5

*Miami Products & Chemical Co. v. Olin Corp.*,
    No. 1:19-CV-00385, 2020 WL 1482139 (W.D.N.Y. Mar. 27 2020) ............... 11

*Mt. Hebron District Missionary Baptist Association of Alabama, Inc. v. Hartford Company*,
    3:16-cv-00658, 2017 WL 2486092 (M.D. Ala. Mar. 16, 2017) ................. 20, 21

*Nat'l Union Fire Insurance Co. v. Universal Fabricators, Inc.*,
    713 F. Supp. 2d 206 (S.D.N.Y. 2010) .............................................................. 19

*NBL Flooring, Inc. v. Trumbull Insurance Co.*,
    No. CIV.A. 10-4398, 2014 WL 317880 (E.D. Pa. Jan. 28, 2014) ................... 22

*Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*,
    875 F.3d 107 (2d Cir. 2017) ............................................................................ 23

*Palm Beach Strategic Income, LP v. Salzman*,
    457 F. App'x 40 (2d Cir. 2012) ....................................................................... 22

*Rajamin v. Deutsche Bank National Trust Co.*,
    757 F.3d 79 (2d Cir. 2014) .............................................................................. 21

*Ramos v. Patrician Equities Corp.*,
    765 F. Supp. 1196 (S.D.N.Y. 1991) ................................................................ 24

*Raytheon Constructors, Inc. v. Asarco Inc.*,
    368 F.3d 1214 (10th Cir. 2003) ....................................................................... 19

*Rent Stabilization Association of City of New York v. Dinkins*,
  5 F.3d 591 (2d Cir. 1993) ........................................................................ 21

*Secon Service System, Inc. v. St. Joseph Bank & Trust Co.*,
  855 F.2d 406 (7th Cir. 1988) .................................................................. 14

*Simon v. Eastern Kentucky Welfare Rights Organization*,
  426 U.S. 26 (1976) .................................................................................. 24

*SM Kids, LLC v. Google LLC*,
  963 F.3d 206 (2d. Cir. 2020) .................................................................... 8

*Sunward Electronics, Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ..................................................................... 26

*Toma & Petros, DDS, Inc. v. Hartford*,
  No.: 17cv1029, 2017 WL 3393668 (S.D. Cal. Aug. 8, 2017) ...................... 5

*U.S. for use of Tower Masonry, Inc. v. J. Kokolakis Contracting, Inc.*,
  93 Civ. 6369, 1995 WL 539742 (S.D.N.Y. Sept. 8, 1995) ......................... 14

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .................................................................................. 18

*Whitaker v. American Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001) ...................................................................... 9

*Winkler v. V.G. Reed & Sons, Inc.*,
  638 N.E.2d 1228 (Ind. 1994) ............................................................ 12, 16

*Zigabarra v. Falk*,
  533 N.Y.S.2d 536 (2d Dep't 1988) ........................................................... 20

## STATUTES

Gen. Bus. L. § 349 ....................................................................................... 7

N.Y. CPLR 302 ............................................................................................ 26

## RULES

Fed. R. Civ. P. 12 ..................................................................................... 8, 9

Fed. R. Civ. P. 8 ........................................................................................... 9

## TREATISES

1 Fletcher Cyclopedia of the Law of Corporations § 41.85 (2019) ............. 13

14 N.Y. Jur. 2d Business Relationships § 35 (2019) ..................................................................... 11

## INTRODUCTION

This is an insurance coverage dispute arising from the COVID-19 pandemic. Plaintiffs are three businesses that each purchased a property insurance policy from one of three different insurance companies (collectively, the "Insuring Defendants"). The Insuring Defendants are accused of wrongly denying Plaintiffs' business interruption claims.

This motion to dismiss is not brought by the three Insuring Defendants, but is brought only by the fourth Defendant, The Hartford Financial Services Group, Inc. ("HFSG"). The basis for the motion is simple: HFSG is not a party to the insurance contracts.

HFSG is the parent company of the Insuring Defendants and Plaintiffs have not alleged facts to justify holding HFSG responsible under the contracts Plaintiffs entered into with HFSG's subsidiaries. Plaintiffs refer to HFSG's alleged "control" over the Insuring Defendants (apparently in an effort to pierce the corporate veil), and to the Insuring Defendants' alleged "apparent authority" to bind HFSG. Among the problems with these theories is the indisputable fact that the insurance contracts make clear on their face that the Plaintiffs were contracting with the Insuring Defendants alone. This Court cannot rewrite the contracts to add HFSG.

Because Plaintiffs are attempting to enforce contracts against an entity that is not a party to those contracts, Plaintiffs lack standing. The Court should therefore dismiss HFSG both because Plaintiffs have failed to state a claim (Rule 12(b)(6)) and because Plaintiffs have not alleged an Article III "case" or "controversy," as required to trigger this Court's subject matter jurisdiction (Rule 12(b)(1)). A related but independent ground to dismiss HFSG is that the Court lacks personal jurisdiction over HFSG.  HFSG is incorporated and located outside New York, and did not engage in any conduct within New York giving rise to the claims here. Only the Insuring Defendants could deny claims under their own insurance contracts. Here, too, the Court

should reject Plaintiffs' attempt to flout basic corporate law principles by collapsing four separate legal entities into one.

HFSG should be dismissed from this case entirely.

## BACKGROUND

**The Insurance Contracts**

The three Plaintiffs in this case each purchased a separate property insurance policy from one of three different (albeit affiliated) insurance companies:

- Plaintiff Buffalo Xerographix Inc. ("BXI"), a distributor of office equipment and supplies located in Tonawanda, New York, purchased property insurance from defendant Sentinel Insurance Company Ltd. ("Sentinel"). (ECF 60 ("Am. Compl.") ¶¶ 17, 44; ECF 60-1 ("BXI Policy") at 15-16.[1])

- Plaintiff Shatkin F.I.R.S.T. LLC ("First LLC"), a dental laboratory located in Buffalo, New York, purchased property insurance from defendant Hartford Casualty Insurance Company ("Hartford Casualty"). (Am. Compl. ¶¶ 18, 45; ECF 60-2 ("First LLC Policy") at 12-13.)

- Plaintiff Todd E. Shatkin DDS PLLC ("TES"), a dental practice located in Buffalo, New York, purchased property insurance from defendant Hartford Insurance Company of the Midwest ("Hartford Midwest"). (Am. Comp. ¶¶ 19, 46; ECF 60-3 ("TES Policy") at 12-13.)

---

[1] For ease of reference, page numbers for the exhibits to Amended Complaint refer to the ECF-stamped page numbers at the top of the cited filing.

Defendant HFSG is the parent company of the Insuring Defendants (Am. Compl. ¶ 2.) Although Plaintiffs allege that HFSG "issued" each of the Policies, and is "a party to the insurance contracts" (*id*. ¶¶ 17-19, 109), those allegations are demonstrably false.

The insurance contracts do not contain the name "The Hartford Financial Services Group, Inc." anywhere (nor "Hartford Financial" or "HFSG"). Each policy makes clear the "insurance is provided" by a specific company "shown below," where the specific entity is identified next to the bolded term "**INSURER**," as follows:

15
RE
SBA
other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**   HARTFORD INSURANCE COMPANY OF THE MIDWEST
              ONE HARTFORD PLAZA, HARTFORD, CT 06155
COMPANY CODE: G

**Policy Number:** 01 SBA RE1591 SB

**SPECTRUM POLICY DECLARATIONS**

**Named Insured and Mailing Address:**   TODD E. SHATKIN DDS PLLC
(No., Street, Town, State, Zip Code)

                                          2495 KENSINGTON AVE
                                          AMHERST        NY  14226

THE HARTFORD

(BXI Policy at 15; First LLC Policy at 12; TES Policy at 12; Am. Compl. ¶ 51.)

In addition, the Special Property Coverage Form cited throughout the Amended Complaint is clear on the first page that there is only *one* company providing the insurance in each case: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we,' 'us' and 'our' refer to *the Company* providing this insurance."  (BXI Policy at 36; First LLC Policy at 31; TES Policy at 29 (emphasis added).)

While the Policies include the "'Stag' logo and 'The Hartford'" (depicted above) (Am. Comp. ¶ 27), that is merely a federally-registered "service mark." (Ex. A.)[2] Plaintiffs do not allege there is any company with the name "The Hartford," or that this nonexistent company issued their policies.

**HFSG and Its Relationship to the Other Defendants**

As disclosed in its public filings with the SEC, HFSG does not itself issue insurance, but is instead a holding company for subsidiary insurance companies like the Insuring Defendants:

---

[2] Citations in the form "Ex. __" refer to the exhibits to the accompanying Declaration of Charles Michael, dated September 17, 2020.

> The Hartford Financial Services Group, Inc. . . . is a holding company for a group of subsidiaries that provide property and casualty ('P&C') insurance…. As a holding company, The Hartford Financial Services Group, Inc. is separate and distinct from its subsidiaries and has no significant business operations of its own.

(Ex. B at 6.) New York's regulator of insurance companies, the Department of Financial Services, publishes online a list of insurance companies authorized to do business in New York, and that list includes the Insuring Defendants, but not HFSG. (Ex. C at 6, 11.)

In addition, the National Association of Insurance Commissioners aggregates public filings with detailed financial information on regulated insurance companies, and those filings show that the Insuring Defendants each have their own, separate balance sheets with hundreds of millions of dollars in capital and assets in excess of their liabilities in each case. (Ex. D.)[3]

**The COVID-19 Pandemic and Plaintiffs' Insurance Claims**

According to the Amended Complaint, in March 2020, the COVID-19 pandemic caused "civil authorities throughout New York to issue orders requiring the suspension of business," including Plaintiffs' businesses. (Am. Compl. ¶¶ 102-04.)

In response to the closure of their businesses, Plaintiffs sought property insurance coverage from the Insuring Defendants, which denied the claims. (*Id*. ¶¶ 152-58.) The denial letters from Sentinel and Hartford Midwest (for BXI and TES, respectively), quoted the pertinent coverage language stating that "We will pay for direct physical loss of or physical damage to Covered Property at the premises," and explained why this was not triggered:

---

[3] The Court may take judicial notice of the public documents discussed above. *Toma & Petros, DDS, Inc. v. Hartford*, No.: 17cv1029, 2017 WL 3393668, at *2 (S.D. Cal. Aug. 8, 2017) (taking judicial notice of HFSG Form 10-K and of service mark registration for "The Hartford"); *Metropolitan Business Management, Inc. v. Allstate Ins. Co*., No. CV 05-8306, 2009 WL 2424291, at *3 (C.D. Cal. Aug. 6, 2009) (taking judicial notice of a "financial statement . . . filed with the NAIC").

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered.
>
> As we understand the facts, you are suffering from a loss of business income because you, or a business you depend on, have had to close or limit your business to help prevent the spread of COVID-19, the disease caused by the novel coronavirus.

(ECF 60-10 at 2, and Attachment (pg. 1); ECF 60-11 at 2, and Attachment (pg. 1).)

The denial letter from Hartford Casualty (for First LLC) similarly quoted the pertinent coverage language about "direct physical loss," and explained why it was not triggered:

> As we understand the facts, you are suffering a loss of business income because you are unable to operate your dental practice due to closing, as well as the State of Emergency. No direct physical loss or damage has occurred to property at the scheduled premises listed in your policy or at any location that may be a dependent property. Additionally, no business personal property owned by you suffered any direct physical loss or damage from this event.

(ECF 60-12 at 2, and Attachment (pg. 1).)

Although Plaintiffs allege that the denial letters were issued by the Insuring Defendants *and* HFSG (Am. Compl. ¶¶ 153, 156, 157), this, too, is demonstrably untrue. Each denial letter states plainly that the "writing company" is the insuring entity *only* (Sentinel, Hartford Casualty and Hartford Midwest for, respectively, BXI, First LLC, and TES), with no reference to HFSG. (ECF 60-10 at 3, ECF 60-10 at 3, ECF 60-11 at 3.)

**The Original Complaint and Original Motion to Dismiss**

On April 29, 2020, BXI (not the other Plaintiffs) filed the original complaint in this case, alleging that it was due insurance coverage for its business suspension, and seeking to represent a nationwide class of similarly situated policyholders. (ECF 1.) BXI sued not only its insurer (Sentinel), but HFSG and 12 of its subsidiary insurance companies.  (*Id*. ¶ 12.)

On July 1, 2020, all Defendants except Sentinel moved to dismiss, on the ground that they did not issue insurance to BXI. (ECF 50.)

**<u>The Amended Complaint</u>**

Rather than opposing the motion on the merits, BXI filed an Amended Complaint, joining two other Plaintiffs, First LLC and TES. (Am. Compl.)

Plaintiffs still seek to represent a nationwide class of policyholders, but have reduced the number of Defendants from 14 to 4: the Insuring Defendants, plus HFSG. (*Id.* ¶¶ 44-47, 165-73.)

The Amended Complaint attempts to justify including HFSG by alleging that HFSG "owns, directs and controls the activities of various subsidiary 'writing companies,' including" the Insuring Defendants. (*Id.* ¶ 2.)  Plaintiffs also allege that the Insuring Defendants "have and had actual and apparent authority to act on behalf of" HFSG. (*Id.* ¶ 113.)

Plaintiffs brings two claims: (1) breach of contract and declaratory relief, and (2) alleged violations of New York's consumer fraud statute, Gen. Bus. L. § 349. (*Id.* ¶¶ 174-221.)

For the contract and declaratory relief claim, Plaintiffs allege that Defendants breached their respective insurance contracts by their "failure and refusal to make payments" due "pursuant to the terms of the policies." (*Id.* ¶ 184.)

For the claim under Gen. Bus. L. § 349, Plaintiffs allege that "Defendants expressly misrepresented to their policyholders that coverage decisions would be made on a case-by-case basis," when, in fact, Defendants allegedly "made the uniform decision to deny all claims" arising from the COVID-19 pandemic. (*Id.* ¶¶ 201-02.)

Plaintiffs do not specify who made the "case-by-case" representation, when it was made, or exactly what was said. The harm allegedly flowing from this unspecified misrepresentation is that policyholders were "induced . . . to refrain from filing claims with Defendants" (notwithstanding that each Plaintiff *did* file a claim). (*Id.* ¶ 204.)

### GOVERNING LEGAL STANDARDS

This motion raises three grounds under Rule 12 for dismissing HFSG.

First, Rule 12(b)(1) authorizes motions to dismiss for "lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d. Cir. 2020). Accordingly, a "motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court." *Id*.  To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citation omitted). Where "subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986).

Second, Rule 12(b)(2) authorizes motions to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The "burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss" falls to the plaintiff. *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001). This requires the plaintiff to plead facts or introduce affidavits that jurisdiction is consistent with the long-arm statute of the forum state and with due process limitations. *Id*.

Third, Rule 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, the claims against HFSG in the Amended Complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

For purposes of a motion to dismiss under Rule 12(b)(6), the Court may consider not only the complaint itself, but also "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The Court may also take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) (quoting Fed. R. Evid. 201(b)(2)), such as "public records." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004).

The Amended Complaint's allegations must generally be assumed to be true, but when other documents properly considered on a motion to dismiss "contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." *Endemann v. Liberty Ins. Corp*., 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019); *see also*, *e.g*., *Hill v. Napoli*, No. 6:09-CV-6546, 2014 WL 1322476 at *8 (W.D.N.Y. Mar. 31, 2014) ("Because the documents incorporated into Plaintiff's Complaint contradict his allegations, the Court need not accept them as true.").

## DISCUSSION

### I. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT HFSG IS A PARTY TO PLAINTIFFS' INSURANCE CONTRACTS

Plaintiffs' claims against HFSG hinge on the assertion that HFSG is "a party to the insurance contracts entered into with Plaintiffs," (Am. Compl. ¶ 109), despite the contracts

themselves clearly providing otherwise. (BXI Policy at 15; First LLC Policy at 12; TES Policy at 12; Am. Compl. ¶ 51). The Amended Complaint appears to advance two theories for treating HFSG as if it were a party to the insurance contracts: (1) that HFSG supposedly "controls" the Insuring Defendant (an apparent attempt to plead a theory of piercing the corporate veil, or "alter ego" claim), and (2) a theory of "apparent authority." Both are meritless.

### A.  Plaintiffs Have Not Alleged Facts to Pierce the Corporate Veil

Under New York's choice-of-law rules, whether to pierce the corporate veil of a subsidiary to reach its parent corporation is governed by the law of the "subsidiary's state of incorporation." *Miami Products & Chemical Co. v. Olin Corp.*, No. 1:19-CV-00385, 2020 WL 1482139 at *18 n.7 (W.D.N.Y. Mar. 27 2020); *see also* 14 N.Y. Jur. 2d Business Relationships § 35 (2019). Here, Sentinel is incorporated in Connecticut, and Hartford Casualty and Hartford Midwest are incorporated in Indiana. (Am. Compl. ¶¶ 21(c), (d), (k).)  Hence, Connecticut and Indiana law govern the issue. The laws of both states impose exacting standards that are not met by the Amended Complaint's conclusory allegations.

At the outset, the corporate veil should be "pierced only reluctantly and cautiously" because "law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities." *Comm'r of Env'l Protection v. State Five Indus. Park, Inc.*, 37 A.3d 724, 732 (Conn. 2012) (citation omitted); *see also Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994) (explaining that "Indiana courts are reluctant to disregard a corporate entity" because "since the earliest days of our corporate law" corporations have been treated "separate and distinct" from their shareholders).

The party seeking to pierce the corporate veil must "establish that the corporate form has been misused and the result of that misuse is fraud or injustice." *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1281 (Ind. App. 2012); *see also Atelier Constantin Popescu, LLC v. JC*

*Corp.*, 49 A.3d 1003, 1020 (Conn. App. 2012) ("The improper use of the corporate form is the key to the inquiry."). This is usually shown through various factors such as undercapitalization of the subsidiary, paying personal expenses via corporate funds, or ignoring corporate formalities. *Litchfield Asset Mgmt v. Howell*, 799 A.2d 298, 313 (Conn. App. 2002) (citation omitted); *CBR*, 962 N.E.2d at 1282.

To be sure, the above factors are relevant only insofar as they reveal the corporate abuse or wrongdoing. The ordinary features of corporate ownerships do not amount to abuse or misuse of the corporate form. For example, there is "nothing insidious in stockholder control, interlocking directorates or identity of officers," *Crosskey Architects, LLC v. Poko Partners, LLC*, 218 A.3d 133, 144 (Conn. App. 2019); those are the "normal consequence[s] of controlling share ownership." *Hersey v. Lonrho, Inc.*, 807 A.2d 1009, 1013 (Conn. App. 2002) (citation omitted); *see also Bridge v. New Holland Logansport, Inc.*, No. 3:12 CV 360, 2015 WL 1455203, at *6 (N.D. Ind. Mar. 30, 2015) (considering only whether there was a "significant departure from the ordinary relationship between a parent and its subsidiary," such that the "corporate form was used abusively").

Even if the plaintiff can show abuse of the corporate form, there must be a "causal connection between misuse of the corporate form and fraud or injustice" leading to the plaintiff's losses. *Id.* at 1281; *CSX Transp., Inc. v. Blakeslee*, No. 3:11-cv-533, 2012 WL 3985169, at *6 (D. Conn.  Sept. 11, 2012) (explaining that "a piercing claim does not lie unless [the] abuse proximately caused [the plaintiff's] losses").

Finally, courts impose "more stringent standards to piercing the corporate veil in contract cases than they do in tort cases." 1 Fletcher Cyclopedia of the Law of Corporations § 41.85 (2019).  The court in *Secon Service System, Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406,

416 (7th Cir. 1988), applying Indiana law, explained the "excellent reason" for this rule: "unless the corporation engaged in some practice that might have misled its contract creditors into thinking they were dealing with another entity," allowing contract plaintiffs "access to shareholders or parent corporations . . . is to give them more than the benefit of their bargain." *Id.*; *see also CBR*, 962 N.E.2d at 1282 (refusing to pierce the corporate veil where plaintiff was "informed during the negotiation stage that [a particular corporate entity] was being formed for the sole purpose of" entering the contract at issue).[4]

Here, Plaintiffs have not alleged facts fitting the stringent standards above. There is no allegation that HFSG somehow used the Insuring Defendants as a tool for fraud, or otherwise abused the corporate form. As discussed, the insurance contracts at issue clearly disclosed the insurance company with whom Plaintiffs were dealing, and easily accessible public records would even show the finances of the Insuring Defendants, eliminating any doubt about undercapitalization. (Ex. D.) Public filings also make clear that HFSG is merely a holding company that does not itself write insurance. (Ex. B at 6.) Nor are there allegations of how any alleged abuse of the corporate form caused Plaintiffs' harm. Defendants allegedly made a coverage decision with which they disagree, but that has nothing to do with the corporate form.

Courts have refused to piece the corporate veil in similar circumstances. In *Bacewicz v. NGM Insurance Company*, No. 3:08-CV-1530, 2010 WL 3023882 (D. Conn. Aug. 2, 2010), for example, a couple sued the company that issued their homeowner's insurance, NGM Insurance

---

[4] *See also U.S. for use of Tower Masonry, Inc. v. J. Kokolakis Contracting, Inc.*, 93 Civ. 6369, 1995 WL 539742, at *7 (S.D.N.Y. Sept. 8, 1995) (dismissing alter ego claim where the plaintiff "was fully aware of the fact that it was contracting with another corporate entity sufficiently distinct from" the defendant); *Matter of Tax Indebtedness of Coppola*, 91 Civ. 919, 1994 WL 159525, at *4 (E.D.N.Y. Jan. 10, 1994) (noting "tendency not to pierce the corporate veil . . . in contract cases" because "the complaining party has chosen to deal with the protected party").

Company, for failing to cover damage to their basement, but also included NGM's parent company, The Main Street America Group, Inc. (referred to as "MSA") as a defendant.

There was evidence that the companies were "intertwined" insofar as many employees "worked for both" companies. *Id*. at \*12. But the court found this did not amount to the type of "exceptional circumstance[s] that would permit the court to pierce the corporate veil." *Id*. For example, there was no allegation "that NGM is inadequately financed as a separate entity; or that NGM and MSA are not held out to the public as separate entities." *Id*. As the court explained, even assuming "MSA  . . . exercises control over NGM operations" this would amount to "no more than a normal consequence of controlling share ownership.'" *Id*. (internal citation omitted). These observations are equally true here.

Similarly, in *Fischer v. Chubb Insurance*, Civ. No.16-8220, 2016 WL 7177608 (D.N.J. Dec. 19, 2016), the court refused to pierce the corporate veil of one company among affiliated companies under the trade name, the Chubb Group of Insurance Companies. The court explained that an "entity's use of an umbrella trade or business name that differs from its legal name does not" indicate impropriety justifying veil piercing. *Id*. at \*3. Nor should the veil be pierced because "subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent." *Id*. (citation omitted). This, too, is an apt description of the facts here, and the result should be the same.[5]

---

[5] *See also*, *e.g*., *Batoh v. McNeil-PPC, Inc*., 167 F. Supp. 3d 296 (D. Conn. 2016) (in failure-to-warn case against manufacturer of Motrin, refusing to hold parent responsible despite allegation that parent "controls what Motrin products were placed on and removed from store shelves . . . and all communications to consumers related to Motrin," because there was no allegation that the subsidiary manufacturer was a "mere shell, serving no legitimate purpose") (quotations omitted); *Winkler v. V.G. Reed & Sons, Inc*., 638 N.E.2d 1228, 1232 (Ind. 1994) (refusing to pierce the corporate veil despite allegation that the shareholder was the "sole decision-maker" because contract was not with shareholder).

Put simply, Plaintiffs' allegations cannot justify departing from basic corporate law principles to hold HFSG liable under its subsidiaries' insurance contracts.

**B.**     **Plaintiffs Have Not Plausibly Alleged "Apparent Authority" to Bind HFSG**

Plaintiffs next attempt to hold HFSG responsible under a theory of "apparent authority," (Am. Compl. ¶¶ 113-14), but, again, the factual allegations fall far short.

Under the doctrine of apparent authority, when the "written or spoken words or any other conduct of the principal," as "reasonably interpreted," causes a "third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him," the principal is held responsible. *Dinaco, Inc. v. Time Warner, Inc*., 346 F.3d 64, 69 (2d Cir. 2003) (alteration removed). Accordingly, to prevail here Plaintiffs must allege facts showing that they reasonably interpreted specific acts of HFSG to cloak the Insuring Defendants with authority to acts as HFSG's agents, so that the insurance contracts were really with HFSG.

Nothing like that is pleaded. Plaintiffs do not specify anything that any particular HFSG person said or did to suggest that the insurance contracts were intended to be contracts with HFSG. Instead, Plaintiffs resort to the lamentable but all-too-common practice of pleading boilerplate legal conclusions: "Defendant [HFSG's] statements, representations, and conduct communicated to Plaintiffs and Class members provided a reasonable belief and appearance that the Other Defendants and the Affiliates possessed the authority to, and were, acting on behalf of [HFSG's] with regard to the insurance policies at issue." (Am. Compl. ¶ 116.)

The closest Plaintiffs come to alleging actual facts on this subject is when they allege that (1) HFGS and the other Defendants both use "the 'Stag' logo and 'The Hartford' as registered trademarks" (*id*. ¶ 127), and that (2) the Policies were allegedly countersigned by "officers of" HFSG under the statement "Our President and Secretary have signed this Policy." (*Id*. ¶ 36.)

Neither allegation suffices. Plaintiffs' concession that the Stag logo and "The Hartford" label are "trademarks" demonstrates the obvious point that "The Hartford" is not itself a company. Plaintiffs do not allege there is any company with the name "The Hartford," or that this nonexistent company issued their policies. The Second Circuit has squarely held that the "presence of a parent's logo on documents created and distributed by a subsidiary, standing alone, does not confer authority upon the subsidiary to act as an agent." *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1461–62 (2d Cir. 1995); *see also Berkshire Life Ins. Co. of America v. Hagerman*, No. 09–CV–2037, 2010 WL 2771839, at *4 (E.D.N.Y. July 13, 2010) (concluding that the "the use of the Guardian logo on Berkshire insurance documents is insufficient" to hold the Guardian, as the parent of Berkshire, responsible under its subsidiary's insurance contract).

As for the alleged signature of HFSG officers, the Policies themselves prove the allegation false. Nothing in the Policies states that the the signatories are officers of HFSG— again, HFSG's name is *nowhere mentioned* in the Policies. Instead, where the policies refer to the signatures of "Our President and Secretary," the term "Our" is specifically defined to refer to the "the Company providing this insurance." (BXI Policy at 36; First LLC Policy at 31; TES Policy at 29.) As discussed, each policy specifies which company is issuing the insurance. No reasonable reading of the Policies can justify treating HFSG as a party.

That the same individuals who signed the Policies may have multiple roles at affiliated companies is perfectly ordinary. As the Supreme Court has held, individuals with multiple roles in a corporate family "can and do 'change hats' to represent . . . two corporations separately,"

and, in those circumstances, "courts generally presume" the person is acting on behalf of the

company to which his or her actions relate. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).[6]

Plaintiffs also allege various actions occurring *after* the insurance contracts were written

(such as the allegation that HFSG personnel "investigate, adjust, examine, and make coverage

determinations" for the Insuring Defendants (Am. Compl. ¶ 123)), but those are irrelevant to the

issue. Apparent authority is focused on the principal's actions at the time of contracting; conduct

after-the-fact cannot reach back in time to change which entities are deemed to have agreed to

the contract. *Dinaco*, 346 F.3d at 79 ("Apparent authority for an agency relationship depends

upon reasonable reliance at the time of a contract—not after . . . ."); *Nat'l Union Fire Ins. Co. v.*

*Universal Fabricators, Inc*., 713 F. Supp. 2d 206, 213 (S.D.N.Y. 2010) (concluding that

"representations [that] occurred after the First Agreement was executed" were "irrelevant to

whether [an alleged agent] had apparent authority to execute the agreement").

In sum, Plaintiffs allege nothing that can undo the clear indication in each Policy as to

which company is writing the insurance.

Courts commonly reject apparent authority claims where, as here, the identity of the

contracting party is clear.

For example, in *Dinaco*, a manufacturer sold over $2 million worth of "display units" to a

company referred to as "PEMI", that was planning to partner with Time Warner and sell medical

educational videos. 346 F.3d at 66. When PEMI went bankrupt and could not pay, the

manufacture argued that, under the doctrine of apparent authority, its sales agreement was really

---

[6] *See also*, *e.g*., *Raytheon Constructors, Inc. v. Asarco Inc*., 368 F.3d 1214, 1219 (10th Cir. 2003) (holding that conduct of individual relating to one company "cannot be attributed" to another merely because the individual was an officer of both companies ); *In re Alper Holdings USA*, 386 B.R. 441, 449 (Bankr. S.D.N.Y. 2008) ("Courts generally presume overlapping directors are acting on behalf of the subsidiary and not the parent company when acting for the subsidiary absent extraordinary circumstances.").

with Time Warner. *Id.* The Second Circuit rejected that argument because the written

"agreement specifically and clearly articulated that PEMI was the contracting party." *Id*. at 70.

Accordingly, any alleged representations during the contract discussions suggesting that the

manufacturer was dealing with Time Warner were "unreasonable as a matter of law." *Id*.

Along the same lines, in *Zigabarra v. Falk*, 533 N.Y.S.2d 536 (2d Dep't 1988), the

plaintiffs visited a real estate agency and met an individual, Robert Falk, who ultimately agreed

to install a modular home for them.  *Id.* at 537. When the plaintiffs were dissatisfied with the

work, they sued not only Falk, but also the real estate agency where Falk worked and that

agency's parent company. *Id*.   The Second Department rejected the plaintiffs' apparent authority

argument as follows: "the contract clearly indicates that the plaintiffs were entering this

transaction solely with Falk and, accordingly, any reliance upon Falk's apparent authority was

unreasonable." *Id*. at 538.

The basic principles underlying these decisions explain why HFSG prevailed against

virtually identical arguments in *Mt. Hebron District Missionary Baptist Association of AL, Inc. v.

Hartford Company*, 3:16-cv-00658, 2017 WL 2486092 (M.D. Ala. Mar. 16, 2017).  In *Mt.

Hebron*, the plaintiff argued that the use of "The Hartford service mark and Hartford Stag logo"

created apparent authority to bind HFSG to an insurance contract, but the court disagreed: "Even

if Sentinel's use of that service mark led [the plaintiff] to believe it was directly corresponding

with HFSG, the record evidence shows that [the plaintiff] was mistaken." *Id*. at *5-6.

So too here. Whatever Plaintiffs may allege about the supposed "apparent authority" for

the insurance contracts to bind HFSG is unreasonable as a matter of law, and is clearly mistaken,

because each contract specifies exactly which insurance company is bound.

The Court should reject Plaintiffs' apparent authority arguments.

## II.   PLAINTIFFS LACKS STANDING TO SUE HFSG

Where a plaintiff lacks standing, the case may be dismissed under either Rule 12(b)(1) (lack of subject matter jurisdiction) or Rule 12(b)(6) (failure to state a claim). *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993). For these purposes, "the applicable standards under Rule 12(b)(1) and 12(b)(6) are not materially different." *First Capital Asset Mgmt, Inc. v. Brickellbush, Inc*., 218 F. Supp. 2d 369, 378 (S.D.N.Y. 2002).

In a contract case like this one, the standing question is straightforward: "the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajamin v. Deutsche Bank Nat. Trust Co*., 757 F.3d 79, 86 (2d Cir. 2014); *see also*, *e.g*., *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 44 (2d Cir. 2012) (holding that a complaint "was deficient because [the plaintiff] failed to allege facts to show that it had standing to sue for breach of an agreement to which it was not a party"). Here, Plaintiffs' insurance contracts are not with HFSG, and hence Plaintiffs lack standing to recover from HFSG for their contract claims.

Courts across the country have dismissed claims against HFSG or other affiliates that were wrongly lumped into lawsuits with the entity that issued the insurance policy. *See*, *e.g.*, *LV Diagnostics, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 217CV 1371JCMPAL, 2018 WL 651327 at *2 (D. Nev. Jan. 31, 2018) ("Further, as defendant is not plaintiff's insurer and is not in privity with plaintiff, dismissal of plaintiff's claims against defendant is appropriate."); *Chaichian v. Hartford Fin. Servs. Grp., Inc.*, No. 1:16-CV-01026, 2016 WL 4480038 at *2 (W.D. Ark. Aug. 3, 2016), *report and recommendation adopted*, No. 16-CV-1026, 2016 WL 4467910 (W.D. Ark. Aug. 23, 2016) (dismissing claims against HFSG and Hartford Fire Insurance Company because contract was with Sentinel only); *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. CIV.A. 10-4398, 2014 WL 317880 at *3 (E.D. Pa. Jan. 28, 2014) (dismissing

claims against HFSG where relevant policies were issued by subsidiary Trumbull Insurance Company); *see also Engel v. Hartford Ins. Co. of the Midwest*, No. 2:11-CV-01103-RCJ, 2012 WL 275200 at *2 (D. Nev. Jan. 31, 2012) (HFSG's alleged status as parent company of insurer not sufficient basis to state a claim against it).

One court even found it "baff[ling]" to suggest any other result:

> The court disregards plaintiffs' assertion that Hartford Insurance Company of the Midwest (the issuer of plaintiffs' policy), Hartford Financial Services Group (its separately incorporated parent) and "The Hartford" (a registered service mark) are alter egos jointly liable for each others' acts. Plaintiffs' reason for attempting to bring in these unrelated parties, one of which is not even a legal entity, ***baffles the court and deserves no further indulgence***.

*Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*, 325 F. Supp. 2d 1057, 1063 (N.D. Cal. 2004) (emphasis added). Simply put, HFSG did not enter into the insurance contracts with Plaintiffs, and so Plaintiffs lack standing to sue HFSG under any contract theory.

Standing is likewise lacking with respect to Plaintiffs' claim against HFSG under Gen. Bus. L. § 349. To state a claim under Gen. Bus. L. § 349 "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Casualty Ins*. Co., 875 F.3d 107, 124 (2d Cir. 2017) (citation omitted). The final causation element requires that there be a "connection between the defendants' deceptive conduct and a specific injury that she suffered as a result of that activity." *Horowitz v. Stryker Corp*., 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009). This tracks the general requirement for Article III standing—that the plaintiff's alleged injury is "fairly traceable to the challenged conduct of the defendant," *SM Kids*, 963 F.3d at 211—and is exactly what is missing here.

Plaintiffs allege that Defendants made "inaccurate and misleading" statements that induced policyholders "to refrain from filing claims with Defendants." (Am. Compl. ¶ 204.) But

that cannot possibly be the cause of Plaintiffs' losses since each Plaintiff concededly *did* file a claim. (*Id*. ¶ 152.) While Plaintiffs have chosen to bring this case as a putative class action on behalf of other policyholders who may have refrained from filing claims, that does not solve the standing problem. As the Supreme Court has held: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (citation omitted).

In other words, a proposed class representative must "have individual standing to assert the claims in the complaint against each defendant being sued by him," *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991), and cannot acquire standing "through the back door of a class action." *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (citation omitted). Accordingly, Plaintiffs cannot pursue claims— against HFSG *or* the Insuring Defendants—premised on policyholders being wrongfully induced into "refrain[ing]" from filing claims when Plaintiffs themselves did not suffer that sort of injury.

The only other misrepresentation referenced for the Gen. Bus. L. § 349 claim is the alleged "practice of denying all, or substantially all, claims" relating to COVID-19. (Am. Compl. ¶ 218.) Setting aside the question of how the assertion of a legal position—that the virus generally does not cause "direct physical loss"—could be a "misrepresentation," the coverage denials here were issued by the Insuring Defendants only, not HFSG. (ECF 60-10 at 3, ECF 60-10 at 3, ECF 60-11 at 3.)  HFSG is not a party to the insurance contracts and cannot "deny" coverage under them. For the reasons above, Plaintiffs cannot conflate HFSG with its

subsidiaries.  Accordingly, without any factual allegations tracing Plaintiffs' alleged injuries to

HFSG, there is no standing, and HFSG must be dismissed under Rules 12(b)(1) and 12(b)(6).

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER HFSG

The Court should dismiss the claims against HFSG on the independent ground that the

Court lacks personal jurisdiction over it.

First, HFSG is not subject to general personal jurisdiction in New York. The U.S.

Constitution's Due Process Clause allows for general personal jurisdiction over a corporation

only where the "corporation's affiliations with the State are so continuous and systematic as to

render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761

(2014) (alterations and quotations omitted). The "paradigm forum" under this standard is either

the corporation's place of incorporation or its principal place of business. *Id*. at 760. Another

jurisdiction will qualify only in the "exceptional" case. *Id*. at 761 n.19.

Plaintiffs cannot satisfy that standard with respect to HFSG because they allege it is a

Delaware corporation with offices in Connecticut. (Am. Compl. ¶¶ 20, 125.) While Plaintiff

alleges that HFSG is "authorized to transact business" in New York (*id*. ¶ 29), this is insufficient

as a matter of law. *Chufen Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 499 (2d Cir. 2020)

(holding "that a foreign corporation does not consent to general personal jurisdiction in New

York by merely registering to do business in the state").

Second, HFSG is not subject to specific personal jurisdiction in New York based on the

claims in this action. New York's long-arm statute authorizes specific personal jurisdiction over

defendants who "transacts any business within the state." N.Y. CPLR 302(a)(1). Not all

"transactions" qualify; rather, the plaintiff must show that each "claim arises from [the] business

transactions" alleged. *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).

This standard "overlaps significantly with the constitutional 'minimum contacts'" standard under

the Due Process Clause, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007), which similarly requires that "the cause of action sued upon arises out of the defendant's activities in a state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

Here, Plaintiffs cannot demonstrate a basis for exercising specific personal jurisdiction over HFSG because they have not alleged contractual dealings with HFSG, much less contacts occurring in New York. Plaintiffs' claims arise from the fact that the Insuring Defendants declined coverage allegedly due under contracts with those Defendants alone. While a plaintiff can theoretically pierce the corporate veil to attribute the contacts of a foreign defendant's subsidiary to the parent corporation, *see City of Long Beach v. Total Gas & Power North America, Inc.*, 2020 WL 3057796, at *10 (S.D.N.Y. June 8, 2020), for the reasons discussed, Plaintiffs have come nowhere close to making the necessary allegations here.

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss all claims against HFSG with prejudice.

Dated:  September 17, 2020

Sarah D. Gordon*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-3000
sgordon@steptoe.com

* Admitted *pro hac vice*

Respectfully submitted,

By:   _/s/ Eugene Welch_____
Eugene Welch
TULLY RINCKEY, PLLC
400 Linden Oaks, Suite 110
Rochester, New York 14625
ewelch@tullylegal.com

Charles Michael*
Meghan Newcomer*
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com
mnewcomer@steptoe.com

*Counsel for Defendants*