**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| |
|---|
| BUFFALO XEROGRAPHIX, INC., SHATKIN F.I.R.S.T. LLC, and TODD E. SHATKIN DDS PLLC, for themselves and on behalf of a class of similarly situated policyholders, |
| Plaintiff, |
| —*against*— |
| THE HARTFORD INSURANCE GROUP a/k/a THE HARTFORD FINANCIAL SERVICES GROUP, INC.; SENTINEL INSURANCE COMPANY, LTD.; HARTFORD CASUALTY INSURANCE COMPANY; HARTFORD INSURANCE COMPANY OF THE MIDWEST, |
| Defendants. |

20 Civ. 520 (GWC)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO CONSOLDIATE**

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

STANDARD FOR CONSOLIDATION ............................................................................... 4

DISCUSSION ........................................................................................................................ 5

      I.      Consolidation Will Create Needless Delay and Expense, Not Efficiency .............. 5

      II.     The Possibility of Diverging Legal Views Is Not Grounds to Consolidate ........... 8

      III.   Allowing Each Case to Proceed On Its Own
            Does Not Prejudice Buffalo Xerographix ........................................................... 10

CONCLUSION...................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*10E, LLC v. Travelers Indemnity Co.*,
No. 2:20-cv-04418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) .................................. 2

*Brian Handel D.M.D., P.C. v. Allstate Insurance Co.*,
No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) ...................................... A-5, 12

*Buffalo Xerographix, Inc., et al. v. The Hartford Insurance Group, et al.*,
1:20-cv-00520-GWC (W.D.N.Y.) ..................................................................................... 2

*Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Ass'n*,
293 F. Supp.1400 (S.D.N.Y. 1968)................................................................................... 9

*Commercial Union Insurance Co. v. Flagship Marine Services, Inc.*,
190 F.3d 26 (2d Cir. 1999).............................................................................................. 11

*DAB Dental PLLC v. Main Street America Protection Insurance Co.*,
No. 20-CA-5504 (Cir. Ct. Fla. Nov. 10, 2020)............................................................. A-5

*Dime Fitness, LLC v. Markell Insurance Co.*,
No. 20-CA-5467 (Cir. Ct. Fla. Nov. 10, 2020)............................................................. A-5

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 n.10 (1996)................................................................................................ 10

*Gavrilides Management Co. v. Michigan Insurance Co.*,
Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) .......................................... A-1

*Goodwill Industries v. Philadelphia Insurance Co.*,
No. 5:20-cv-00511-R (W.D. Okla. Nov. 9, 2020) ......................................................... A-5

*Henry's Louisiana Grill, Inc. v. Allied Insurance Company of America*,
No. 20-CV-2939, 2020 WL 5938755 (N.D. Ga. Oct. 6 2020) ...................................... A-3

*Hillcrest Optical, Inc. v. Continental Casualty. Co.*,
No. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) ........................ A-4

*Hutch & Assocs., Inc. et al. v. Erie Insurance Co. of New York et al.*,
1:20-cv-00896-GWC (W.D.N.Y.) ..................................................................................... 2

*In re COVID-19 Business Interruption Protection Insurance Litigation*,
MDL No. 2942, 2020 WL 4670700 (J.P.M.L. Aug. 12, 2020) ........................................ 6

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*,
No: 8:20-cv-1605, 2020 WL  5791583 (M.D. Fla. Sept. 28, 2020) .............................. A-3

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)............................................................................ 4

*Johnson v. U.S. R.R. Retirement Bd.*,
  969 F.2d 1082 (D.C. Cir. 1992) ........................................................................ 9

*Kim-Chee LLC. v. Philadelphia Indemnity Insurance Co. et al.*,
  1:20-cv-01136-CCR (W.D.N.Y.)...................................................................... 2

*Malaube, LLC v. Greenwich Insurance Co.*,
  No. 20-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ...................... A-2

*Malcolm v. Natl' Gypsum Co.*,
  995 F2d 346 (2d Cir 1993)................................................................................ 5

*Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Company of Connecticut, et al.*,
  20 Civ. 4423, No. 20-cv-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020).............. A-3

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
  225 F.3d 270 (2d Cir. 2000)............................................................................ 12

*Mudpie, Inc. v. Travelers Casualty Insurance Co.*,
  20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020)....................... A-2

*Nahmad v. Hartford Casualty Insurance Co.*, Case No.
  1:20-cv-22833, 2020 WL 6392841 (S.D. Fl. Nov. 2, 2020)......................... A-4

*New Kayak Pool Corp. v. Gerspach*,
  No. 93-CV-0784E(M), 1995 WL 13257 (W.D.N.Y. Jan. 11, 1995) ................ 4

*New York v. Pruitt*,
  18-CV-1030, 2018 WL 2411595 (S.D.N.Y. May 29, 2018) ............................ 8

*North State Deli, LLC et al. v. Cincinnati Insurance Co.*,
  No. 20-CVS-02569 (N.C. Super. Ct. Oct. 7, 2020) ..................................... A-6

*Oral Surgeons, P.C. v. The Cincinnati Insurance Co.*,
  No. 4-30-CV-222, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020).............. A-3

*Pan American World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
  505 F.2d 989 (2d Cir. 1974)....................................................................... 11,12

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
  No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020).................... A-2

*Raymond Corp. v National Union Fire Insurance Co.*,
  833 N.E.2d 232 (N.Y. 2004)....................................................................... 10,12

*Real Hospitality, LLC v. Travelers Casualty Insurance Co.*,
No 20-cv-00087-KS-MTP, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020)................... A-5

*Richardson v. Michelin North America, Inc.*,
No. 95-CV-0760, 1998 WL 329387 (W.D.N.Y. June 3, 1998)......................................... 9

*Rose's 1 LLC v. Eerie Insurance Exchange*,
No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020)..................... A-1

*Roundabout Theatre Co. v. Continental Casualty Co.*,
751 N.Y.S.2d 4 (1st Dep't 2002) .................................................................................... A-6

*Salvatore's Italian Gardens Inc. et al. v. Hartford Fire Insurance Co.*,
1:20-cv-00659-LJV (W.D.N.Y.)....................................................................................... 2

*Sandy Point Dental PC v. The Cincinnati Insurance Co.*,
20 CV 2150, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020).......................................... A-3

*Seaboard Surety Co. v. Gillette Co.*,
476 N.E.2d 272 (1984).................................................................................................... 12

*Seifert v. IMT Insurance Company*,
Civil No. 20-1102, 2020 WL 6120002 (D. Minn. Oct. 16, 2020) ................................ A-4

*Social Life Magazine, Inc. v. Sentinel Insurance Co.*,
No. 20 Civ. 3311(VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020) ...................... A-1

*SR International Business Insurance Co., Ltd. v. World Trade Center Properties*
LLC, No. 01 Civ. 9291, 2006 WL 3073220 (S.D.N.Y. Oct. 31, 2006).......................... 11

*Studio 417, Inc. v. Cincinnati Insurance Co.*,
No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ............................... A-6

*Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London, et al.*,
No. 00375 (Penn. Ct. Common Pleas Oct. 26, 2020) .................................................... A-6

*The Inns by the Sea v. California Mutual Insurance Co.*,
No. 20CV001274 (Super. Ct. Cal. Aug. 4, 2020).......................................................... A-1

*Thompson v. City of St. Peters*,
No. 4:15CV404 RLW, 2016 WL 1625373 (E.D. Mo. Apr. 21, 2016) ............................. 7

*Travelers Casualty Insurance Company of America v. Geragos & Geragos*,
No. CV 20-3619 PSG (EX), 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020).................. A-4

*Turek Enterprises, Inc.  v. State Farm Mutual Automobile Insurance Co.*,
Case No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)............................. A-2

*Uncork & Create, LLC v. Cincinnati Insurance Co.*,
    No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov. 2, 2020)............................ A-4

*Water Sports Kauai, Inc. v. Fireman's Fund Insurance Co.*,
    No: 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) ........................ A-5

*West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Cos.*,
    No. 2:20-cv-05663, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) ................................ A-4

## INTRODUCTION

The plaintiffs in this case (collectively, "Buffalo Xerographix") seek to consolidate four cases pending in this District which involve claims, brought by different plaintiffs against different insurers, for business interruption insurance coverage arising from the COVID-19 pandemic. The proposed consolidation would be for the limited purpose of answering in isolation a legal question that will allegedly impact the outcome of the four cases: "whether the presence of COVID-19 is, or could cause, 'direct physical loss of or damage to' property to trigger coverage under the subject insurance policies."

The motion should be denied.

First, consolidation will only add delay and expense. There are (or shortly will be) fully-briefed motions to dismiss in three of the four cases concerning the underlying coverage. Rather than shuttling the cases back-and-forth to have an isolated legal question answered and then applied to each separate case, the far more efficient and faster course is to simply allow the pending motions to be decided.

Second, Buffalo Xerographix's concern that different judges may answer a similar legal question differently is not grounds to consolidate. It is a feature, not a bug, of the federal judicial system that different District Court judges can analyze and rule upon similar legal questions before those questions are resolved on appeal. This benefits the development of the law.

Third, Buffalo Xerographix's argument about being prejudiced if the cases proceed on their own is convoluted and nonsensical. So far as we can understand the theory, Buffalo Xerographix believes it would be prejudicial if Judge Vilardo decides one of the cases (*Salvatore's*) first, because the insurance policy in that case (unlike the policy in the *Buffalo Xerographix*) has a specific exclusion for losses causes by viruses. It is difficult to make sense of this argument because issue of the virus exclusion is independent of the issue of whether the

coronavirus causes "direct physical loss." Regardless of how Judge Vilardo may decide the "direct physical loss" issue, Buffalo Xerographix will in all events be free to argue that that ruling is incorrect (or correct) or distinguishable (or not). The notion that a judge deciding a pending motion to dismiss will somehow cause prejudice to entirely different parties with a case before another judge is unprecedented and meritless.

## BACKGROUND

Buffalo Xerographix seeks to consolidate, for a limited purpose, the following four cases, which seek business interruption insurance coverage arising from the COVID-19 pandemic:

| Caption | Plaintiff(s) | Judge |
| --- | --- | --- |
| *Buffalo Xerographix, Inc., et al. v. The Hartford Ins. Gp., et al.*, 1:20-cv-00520-GWC (W.D.N.Y.) ("*Buffalo Xerographix*") | • Distributor of office equipment<br>• Dental laboratory; and<br>• Dentist office | Hon. Geoffrey Crawford |
| *Hutch & Assocs., Inc. et al. v. Erie Ins. Co. of N.Y. et al.*, 1:20-cv-00896-GWC (W.D.N.Y.) ("*Hutch*") | • Restaurant; and<br>• Tavern | Hon. Geoffrey Crawford |
| *Kim-Chee LLC. v. Phil. Indem. Ins. Co. et al.*, 1:20-cv-01136-CCR (W.D.N.Y.) ("*Kim-Chee*") | • Tae-Kwon-Do Studio | Hon. Christina Reiss |
| *Salvatore's Italian Gardens Inc. et al. v. Hartford Fire Ins. Co.*, 1:20-cv-00659-LJV (W.D.N.Y.) ("*Salvatore's*") | • Restaurant; and<br>• Two hotels | Hon. Lawrence J. Vilardo |

The plaintiffs and defendants in each case are different, and so are the claims. For example, the complaint in *Salvatore's* seeks only declaratory relief (Ex. D ¶¶ 48-54), whereas the complaints in *Buffalo Xerographix* and *Hutch* assert breach of contract and consumer fraud claims. (Ex. A ¶¶ 174-221; Ex. B ¶¶ 144-88.) The complaint in *Kim-Chee* seeks what are

referred as "Sue and Labor" losses; the others do not. (*Compare* Ex. C ¶¶ 8, 122-24 *with* Ex. A,

B, D.) *Salvatore's* is the only one of the group with a virus exclusion in the policy. (*Compare* Ex.

D ¶ 50(c) *with* Exs. A, B, C, .)

Buffalo Xerographix's motion focuses on the allegedly common contract language

concerning "direct physical loss." It is true that there is similar phrasing in the underlying

insurance contracts, but the language is not identical:

| Case | "Direct Physical Loss" Coverage Language |
|------|------------------------------------------|
| *Buffalo Xerographix* | "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused **by direct physical loss of or physical damage to property at the 'scheduled premises**.'" (Ex. E[1] at pg. 45 of 170 § 5.o.(1); Ex. F at pg. 40 of 185 § 5.o.(1); Ex. G at pg. 38 of 185 § 5.o.(1) (emphasis added)). |
| *Hutch* | "Income Protection means loss of income and/or rental income you sustain due to partial or total interruption of business **resulting directly from loss or damage to property on the premises** described in the Declarations from a peril insured against." (Ex. H at pg. of 12 of 80; Ex. I at pg. of 18 of 124 (emphasis added)). |
| *Kim-Chee* | "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused **by direct physical loss of or damage to property at the described premises**." (Ex. J at pg. 24 of 81 (emphasis added)). |
| *Salvatore's* | "We will pay up to the Special Business Income Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration **due to direct physical loss of or direct physical damage to propert**y caused by or resulting from a Covered Cause of Loss at 'Scheduled Premises.'" (Ex. K at pg. 69 of 115.) |

---

[1] Citations in the form "Ex. ___" refer to the exhibits to the accompanying declaration of Charles Michael, dated November 19, 2020.

In three of the four cases (all but *Buffalo Xerographix*) the defendants have moved to dismiss on the ground that the policies provide no coverage. (Exs. L, M, N, O (dockets).) Briefing on the *Kim-Chee* and *Hutch* motions is complete (Ex. M, at 9 (ECF 31); Ex. N, at 5 (ECF 20)), and briefing in *Salvatore's* will be complete by November 24 (before this motion is fully briefed). (Ex. O, at 9 (ECF 33).)

On November 5, 2020, the plaintiffs in *Buffalo Xerographix* and *Hutch*, represented by the same law firm, filed in those two actions the present motion to consolidate. While the motion seeks to consolidate all four cases, the motion was not filed in *Kim-Chee* or *Salvatore's*. (*Compare* Ex. L, at 15 (ECF 70) *and* Ex. M (ECF 33) *with* Exs., N, O.)[2]

### STANDARD FOR CONSOLIDATION

Rule 42(a) authorizes District Courts to consolidate cases (or parts of cases) where the cases "involve a common question of law or fact." Fed. R. Civ. P. 42(a). District Court have "broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp*., 899 F.2d 1281, 1284 (2d Cir. 1990).

"The moving party has the burden of persuading the court that consolidation is desirable, and the fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'" *New Kayak Pool Corp. v. Gerspach*, No. 93-CV-0784E(M), 1995 WL 13257, at *1 (W.D.N.Y. Jan. 11, 1995) (citation omitted).

---

[2] This District's local rules do not specify who decides motions to consolidate cases before different judges, but in the similar context of related cases, the Clerk of Court provides "notification to the Judges to whom the cases have been assigned." W.D.N.Y. Loc. Civ. R. 5.1(e).) In the spirit of that Rule, Defendants here will provide a copy of this opposition to all three judges whose cases are implicated by the proposed consolidation.

While "considerations of judicial economy favor consolidation," *Johnson*, 899 F.2d at 1285, the "benefits of efficiency can never be purchased at the cost of fairness." *Malcolm v. Natl' Gypsum Co*., 995 F2d 346, 350 (2d Cir 1993).

## DISCUSSION

### I. CONSOLIDATION WILL CREATE NEEDLESS DELAY AND EXPENSE, NOT EFFICIENCY

The proposed consolidation here will create only delay, not efficiency, because the process of briefing and deciding the isolated legal issue, and then, separately, having the cases return to their original judges to determine the impact of that decision on each particular case, will take far longer than each judge simply ruling on the pending motions.

By the time this motion for consolidation is fully briefed, three of the four actions sought to be consolidated will already have motions to dismiss that are fully briefed. (There is no motion to dismiss regarding coverage pending in the fourth action, *Buffalo Xerographix*.)

Under Buffalo Xerographix's proposal, the four actions would be "consolidated for the limited purpose of jointly considering whether the presence of COVID-19 is, or could cause, 'direct physical loss of or damage to' property to trigger coverage under the subject insurance policies." (20-cv-00520, ECF 70-1 ("BXI Br.") 6.) Buffalo Xerographix does not explain exactly how that question would be answered on its own, or exactly what the Court is supposed to do after the cases are consolidated. Should the Court offer an analysis as to what the phrase "direct physical loss" means, without referring to the particular policies or facts of any case?  That would be an improper advisory opinion. Should the Court apply the somewhat different contract language in each policy to the facts of each case? That undermines the ostensible efficiency rationale of consolidation.

Whatever the exact procedure, it would surely involve a separate round of briefing. At a minimum, because the defendants in *Buffalo Xerographix* case have not had an opportunity to brief anything relating to "direct physical loss," they would need the opportunity to do so.

Following the Court's ruling on the consolidated legal question, each case would presumably then be returned to each judge to apply the ruling to the particular case at hand. Thus, for example, if the Court ruled that the coronavirus "*could* cause, 'direct physical loss of or damage to' property" (BXI Br. 6 (emphasis added)), then each judge would have to determine if the complaint before the court alleged facts showing that the coronavirus *did*, in fact, cause direct physical loss or damage.

While the precise contours of the contemplated procedure are unclear, it is quite clear that the process of sorting that out, and then implementing the procedure, will only add expense and delay. The simpler, and more efficient, way to proceed is for the each judge to decide the pending motions, based on the facts and policy language of each case.

This dynamic is (in part) why the Judicial Panel on Multidistrict Litigation refused to centralize COVID-19 business interruption cases either on an industry-wide basis or against the Hartford-affiliated insurers.

The Panel denied industry-wide centralization because (among other reasons) "seemingly minor differences in policy language [across insurers] could have significant impact on the scope of coverage." *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, 2020 WL 4670700, at *2 (J.P.M.L. Aug. 12, 2020). Here, too, each judge ought to examine the particular policy language of each case.

The Panel later denied centralization with respect to the Hartford-affiliated insurers, despite "common policy language," because allowing the originating courts to decide the pending and forthcoming dispositive motions would be "quicker and more efficient":

> Efficiency here is best obtained outside the MDL context. If these actions were centralized, the transferee court would have to establish a pretrial structure to manage numerous plaintiffs . . . In the meantime, dispositive motions addressing these policy interpretation questions are pending in 37 of the 143 actions, at least ten of which are fully briefed. Rather than have one judge attempt to organize and resolve the core policy interpretation issues, it strikes us that allowing the various transferor courts to decide these questions will result in quicker and more efficient resolution of this litigation.

*In re Hartford COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2963, 2020 WL 5884782, at *2 (J.P.M.L. Oct. 2, 2020).

While the number of cases here is fewer, the basic rationale of these rulings applies here just the same. The four cases are better analyzed on their own. And the more efficient course is to let the motions to be decided—rather that traveling back-and-forth between aggregated and individualized proceedings—particularly since the motions either are or will be very soon fully briefed. *See also*, *e.g.*, *Thompson v. City of St. Peters*, No. 4:15CV404 RLW, 2016 WL 1625373, at *2 (E.D. Mo. Apr. 21, 2016) ("Further, the Court finds that, in light of the pending motions for judgment on the pleadings and for summary judgment . . . judicial efficiency is best served by deciding the pending motions prior to any consolidation.").

Various plaintiffs sought similar relief in the Eastern District of Pennsylvania, attempting to have all the COVID-19 business interruption cases assigned to one judge. But, earlier this month, the court there refused to do so, citing the Judicial Panel on Multidistrict Litigation's ruling against centralization. (Ex. P (Order); Ex. Q (letter brief from The Hartford Financial

Services Group, Inc. and affiliates).) This was the correct result. There, as here, placing multiple COVID-19 cases before a single judge creates a needless layer of complexity, expense and delay.

Buffalo Xerographix's motion should therefore be denied.

## II.    THE POSSIBILITY OF DIVERGING LEGAL VIEWS IS NOT GROUNDS TO CONSOLIDATE

Buffalo Xerographix's next ground for consolidation, that it will supposedly avoid "potential for conflicting decisions on the same legal question in same district court." (BXI Br. 6), is likewise meritless.

At the outset, courts across the country have overwhelmingly concluded that business interruption from the COVID-19 pandemic, and associated government responses, does not trigger coverage under "direct physical loss or damage" clauses. By our count, *twenty-seven* courts have rejected these types of claims via early, dispositive motions, with only three going the other way. (*See* Appendix 1.) It is therefore unlikely the decisions will conflict.

But there would be no problem even if they do. Letting legal "questions percolate among the lower federal courts, even at the cost of short-term disuniformity" is a "bedrock principle of our federal court system" and has the virtue of fostering "inter-court dialogue." *New York v. Pruitt*, 18-CV-1030, 2018 WL 2411595, at *4 (S.D.N.Y. May 29, 2018). Sooner or later the Second Circuit, the Appellate Division, or both, will likely address questions about the meaning of the phrase "direct physical loss or damage to property" (or similar phrases) in the context of the COVID-pandemic, and having a wide range of District Court opinions on the issue is a benefit, not something to be avoided.

As then-Chief Judge Preska of the Southern District of New York told the *New York Times*, there is a "larger benefit to having lawsuits that raise similar issues decided by more than one judge'"—namely, "'[d]evelopment of the law is better served by having different judges decide those cases, so that the court of appeals has the benefit of different judges' thinking about

the issue." Benjamin Weiser & Joseph Goldstein, *Federal Court Alters Rules on Judge Assignments*, N.Y. Times (Dec. 23, 2013) (copy attached as Ex. R). *See also Johnson v. U.S. R.R. Retirement Bd*., 969 F.2d 1082, 1093 (D.C. Cir. 1992) (explaining that there is "value to letting important legal issues 'percolate' throughout the judicial system," before they are definitively resolved on appeal).

Where cases are consolidated to avoid inconsistent results, it is more commonly in the scenario where parties in multiple proceedings could face divergent commands or divergent factual findings relating to the same event.

For example, in *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Ass'n*, 293 F. Supp.1400, 1401 (S.D.N.Y. 1968), the television network CBS faced two arbitrations, one from a union representing recording engineers, and another from a union representing broadcast technicians, each claiming a contractual right for their respective members to exclusively perform the *same* work assignments. *Id*. at 1401. The court consolidated the arbitrations to avoid "conflicting awards." *Id*. at 1403. As a further example, in *Richardson v. Michelin North America, Inc*., No. 95-CV-0760, 1998 WL 329387, at *1 (W.D.N.Y. June 3, 1998), the court consolidated four actions arising from the same truck accident, to avoid the risk that different juries would "produce inconsistent verdicts on liability and the extent of responsibility." *Id*. at * 2 (citation omitted).

These sorts of risks are not present here. The plaintiffs and defendants in each case are different, and each will receive an individualized determination, under the insurance contracts in each case, as to the coverage claim. To the extent the District Courts read similar contract language differently, all the cases may be appealed to the Second Circuit.

III.   **ALLOWING EACH CASE TO PROCEED ON ITS OWN
       DOES NOT PREJUDICE BUFFALO XEROGRAPHIX**

Buffalo Xerographix's final argument is that it "will be prejudiced" if the court in the

*Salvatore's* action decides its pending motion to dismiss first, because in *Salvatore's* the

insurance contract contains a virus exclusion that does not exist in the contacts in the *Buffalo*

*Xerographix* action and that is supposedly "highly material" to the "direct physical loss" issue.

(BXI Br. 6.)

To start, the idea of "prejudice" from the hypothetical future *Salvatore's* ruling is quite

peculiar, because a decision by one judge in this judicial district is "not binding on the others."

*Gasperini v. Center for Humanities, Inc*., 518 U.S. 415, 431 n.10 (1996). Regardless of how the

*Salvatore's* court rules on the pending motion to dismiss, the plaintiffs in the *Buffalo*

*Xerographix* action are free to later argue that the decision was incorrect, or distinguishable. We

have found no case that was consolidated based on the supposed "prejudice" that would arise

from the fear of a non-binding legal ruling by another judge.

Even beyond that problem, Buffalo Xerographix's theory of prejudice is based on a

mistaken view of insurance law. According to Buffalo Xerographix, the presence or absence of a

virus exclusion is "highly material" to the question of what constitutes "direct physical loss,"

which is apparently why it wants the Court to consider its own case (which does not involve a

virus exclusion) alongside *Salvatore's* (which does). (BXI Br. 4) The premise here is simply

wrong: the virus exclusion issue is *independent* of the question of "direct physical loss."

As the New York Court of Appeals has held, exclusions only "*subtract* from coverage"

and "cannot create coverage" by "negative inferences." *Raymond Corp. v National Union Fire*

*Ins. Co*., 833 N.E.2d 232, 235 (N.Y. 2004) (emphasis in original; citation omitted); *see also*

*Comm'l Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 33 (2d Cir. 1999) (the "absence of an exclusion cannot create coverage") (citation omitted).

Thus, for example, *SR International Business Insurance Co., Ltd. v. World Trade Center Properties* LLC, No. 01 Civ. 9291, 2006 WL 3073220, at *10 (S.D.N.Y. Oct. 31, 2006), the owners of the World Trade Center sought insurance coverage to cover not only the costs of rebuilding the buildings as they were before the September 11, 2001, but also the additional cost to make them "safe, modern, and politically palatable." *Id*. at *1.

The owners pointed to an exclusion for the "increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property" as evidence that "replacement cost coverage extends well beyond the expenses associated with rebuilding the covered property as it stood before the loss." *Id*. at *10. In their view, this exclusion would be "unnecessary unless the excluded event would otherwise fall within the coverage provisions." *Id*. at *10 n.37. The court squarely rejected this argument because New York law does not "define the coverage by the nature of the exclusion," or otherwise allow for the sort of "negative inference" the owners were advancing. *Id*.

Buffalo Xerographix cites *Pan American World Airways, Inc. v. Aetna Cas. & Sur. Co*., 505 F.2d 989 (2d Cir. 1974) (BXI Br. 7) to support its contrary view, but in that case the Second Circuit was interpreting only the scope of an *exclusion*, not the scope of coverage. The question on appeal was whether an exclusion relating to "war" and "insurrection" covered an airplane hijacking that certain insurers claimed was part a broader plot (an insurrection) to overthrow the King of Jordan. *Id*. at 995-96. The Second Circuit took into account that specific exclusions for hijackings were in common use but had not been adopted by the insurers in that case. *Id*. at 1001.

The question here is fundamentally different because it is a question of *coverage*, where burden of proof falls to the insured to show facts within the scope of the contract. *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). Where an exclusion is at issue (as in *Pan American*) the insurer has the burden to show "specific and clear" language removing coverage. *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984). The *Pan American* case did not address coverage; there was no dispute that the policies "if not for the exclusions, would cover the loss." 505 F.2d at 993. Thus, regardless of what *Pan American* may mean for interpreting exclusions, subsequent binding authority from the New York Court of Appeals in *Raymond Corp.* makes clear that, when interpreting the scope of coverage, drawing "negative inferences" from exclusions is impermissible.

Buffalo Xerographix's theory of prejudice is premised entirely on its misunderstanding of the above principles of New York insurance law, and, on this independent basis, the Court should deny its motion to consolidate.[3]

---

[3] Buffalo Xerographix is also incorrect, as a factual matter, to suggest that the form virus exclusion from the Insurance Services Office ("ISO") reflected any understanding that viruses would otherwise fall within the direct physical loss language. (BXI Br. 4-5.) The ISO circular accompanying the proposal makes plain that coverage for viruses falls outside the intent of property insurance coverage: "While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, *contrary to policy intent*." (Ex. S, Amendatory Endorsement, pg. 2 (emphasis added).) *See also Brian Handel D.M.D., P.C. v. Allstate Insurance Co.*, No. 20-3198, 2020 WL 6545893, at *5 (E.D. Pa. Nov. 6, 2020) (noting that ISO "made clear that property policies have not been and were not intended to be a source of recovery for damage from disease-causing agents such as a virus"). This makes perfect sense. As the National Association of Insurance Commissioners has explained, the very nature of insurance as a means to spread risk is incompatible with providing coverage for a global pandemic: "Insurance works well and remains affordable when a relatively small number of claims are spread across a broader group, and therefore it is not typically well suited for a global pandemic where virtually every policyholder suffers significant losses at the same time for an extended period." (Ex. T, at 2.)

## CONCLUSION

For the stated reasons and others appearing in the record, Buffalo Xerographix's motion

to consolidate should be denied.

Dated:  November 19, 2020                 Respectfully submitted,

By:   */s/ Eugene Welch*

Sarah D. Gordon*                     Eugene Welch
STEPTOE & JOHNSON LLP         TULLY RINCKEY, PLLC
1330 Connecticut Avenue, NW     400 Linden Oaks, Suite 110
Washington, D.C. 20036         Rochester, New York 14625
(202) 429-3000                  ewelch@tullylegal.com
sgordon@steptoe.com

*Admitted *pro hac vice*              Charles Michael*
Meghan Newcomer*
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com
mnewcomer@steptoe.com

*Counsel for Defendants*

-13-

## APPENDIX 1

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 1 | 5/14/20, S.D.N.Y. | Magazine | "New York law is clear that this kind of business interruption [claim] needs some damage to the property" before there is coverage." *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20 Civ. 3311(VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020) |
| 2 | 7/1/20, Michigan Circuit Ct. | Restaurant | "[T]here actually is no factual development that could change the fact that the complaint is complaining about the loss of access or use of the premised due to executive orders and the Covid-19 virus crisis. So, there's no factual development that could possibly change that or amendment to the complaint that could possibly change that those things do not constitute the direct physical damage or injury that's required under the policy." *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, 2020 WL 4561979 (Mich. Cir. Ct. July 1, 2020) |
| 3 | 8/4/20, Cal. Super. Ct. | Hotels | "[W]hen the Governor ordered us all to shelter in place and businesses to close, it wasn't necessarily because there was COVID at your hotels. It was because there was a fear that COVID might arrive at your hotels, and there was a fear by having people move around the state, that that would cause us all to infect each other." *The Inns by the Sea v. Cal. Mut. Ins. Co.*, No. 20CV001274 (Super. Ct. Cal. Aug. 4, 2020) |
| 4 | 8/6/20, D.C. Super. Ct | Restaurants | "[G]overnmental edicts that commanded individuals and businesses to take certain actions . . . did not effect any direct changes to the properties . . . [or] have any effect on the material or tangible structure of the insured properties." *Rose's 1 LLC v. Eerie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Aug. 6, 2020) |
| 5 | 8/13/20, W.D. Tex. | Barbershops | "[T]he Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable." *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|-----|-----------|----------------|------------------------------|
| 6 | 8/26/20, S.D. Fla. | Restaurant | "[Plaintiff's] loss must arise [from] actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses—not anything tangible, actual, or physical." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) |
| 7 | 8/28/20, C.D. Cal. | Restaurant | "[N]othing in the [complaint] plausibly supports an inference that the virus physically altered Plaintiff's property, however much the public health response to the virus may have affected business conditions for Plaintiff's restaurant." *10E, LLC v. Travelers Indem. Co.*, No. 2:20-cv-04418, 2020 WL 5095587, at *5 (C.D. Cal. Aug. 28, 2020) |
| 8 | 9/3/20, E.D. Mich. | Chiropractic practice | ""[A]ccidental direct physical loss to Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property." *Turek Enters., Inc. v. State Farm Mut. Automobile Ins. Co.*, Case No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) |
| 9 | 9/11/10, S.D. Cal. | Barbershop | "[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) |
| 10 | 9/14/20, N.D. Cal. | Retail store | "Because Mudpie's complaint contains no allegations of a physical force which 'induced a detrimental change in the property's capabilities,' the Court finds that Mudpie has failed to establish a 'direct physical loss of property' under its insurance policy." *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 20-cv-03213, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 11 | 9/21/20, N.D. Ill. | Dental practice | "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage." *Sandy Point Dental PC v. The Cincinnati Ins. Co.*, 20 CV 2150, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020) |
| 12 | 9/28/20, M.D. FL. | Display Fabricator | "[T]here is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage." *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, No: 8:20-cv-1605, 2020 WL  5791583 (M.D. Fla. Sept. 28, 2020) |
| 13 | 9/29/20, S.D. Iowa | Dental Practice | "OSPC does not allege any such 'physical' or 'accidental' loss, but instead contends its loss was caused by the COVID-19 coronavirus and the government actions to suspend temporarily non-emergency dental procedures." *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-30-CV-222, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) |
| 14 | 10/2/20, C.D. Cal. | Restaurant | "Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property—not that the restrictions caused direct physical loss or damage." *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Company of Connecticut, et al.*, 20 Civ. 4423, No. 20-cv-04423, 2020 WL 5938689, at*4 (C.D. Cal. Oct. 2, 2020) |
| 15 | 10/6/20, N.D. Ga. | Restaurant | "[T]he Order merely recognized an existing threat. It did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change as a result of the Order." *Henry's Louisiana Grill, Inc. v. Allied Ins. Co.*, No. 20-CV-2939, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|-----|-----------|----------------|-------------------------------|
| 16 | 10/16/20, D. Minn. | Barbershop | "[G]overnmental action prohibiting the use of property, by itself, is not enough . . . to fall within the permissible realm of 'direct physical loss.'" *Seifert v. IMT Ins. Co.*, Civil No. 20-1102, 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) |
| 17 | 10/19/20, C.D. Cal | Law Firm | "An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619 PSG (EX), 2020 WL 6156584, at *1 (C.D. Cal. Oct. 19, 2020) |
| 18 | 10/21/20,S.D. Ala. | Optometrist | "Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property—the Order did not immediately cause some sort of tangible alteration to Plaintiff's office. Rather, Plaintiff was only temporarily precluded from performing routine medical procedures while the Order was in effect." *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) |
| 19 | 10/27/20, C.D. Cal. | Hotels | Dismissing Complaint and denying Plaintiffs leave to amend, rejecting Plaintiffs argument "that the loss of use of their properties is sufficient to trigger coverage under the Policy." *West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) |
| 20 | 11/2/20, S.D. W.Va. | Creative Events Company | "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant." *Uncork & Create, LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov. 2, 2020) |
| 21 | 11/2/20, S.D. Fl. | Dentist | Rejecting Plaintiffs' argument that "economic damages alone without any corresponding physical harms to the Covered Property is covered under the Policy." *Nahmad v. Hartford Cas. Ins. Co.*, Case No. 1:20-cv-22833, 2020 WL 6392841, at *8 (S.D. Fl. Nov. 2, 2020) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 22 | 11/4/20, S.D. Miss. | Restaurant | "Plaintiff's Complaint fails to state a claim because it does not allege that any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property. Consequently, Plaintiff's contention that 'loss of property' reasonably includes loss of usability is not sustainable." *Real Hospitality, LLC v. Travelers Cas. Ins. Co.*, No 20-cv-00087-KS-MTP, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) |
| 23 | 11/6/20 | Dentist | "[P]laintiff's property remained inhabitable and usable, albeit in limited ways. Plaintiff has failed to plead plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage." *Brian Handel DMD, PC v. Allstate Ins. Co.*, Civ. Action No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) |
| 24 | 11/9/20, N.D. Cal. | Retail Store | Plaintiff "has not alleged any direct physical anything that happened to or at its specific properties. Moreover, it has not been dispossessed or deprived of any specific property; its inventory and equipment remain." *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No: 20-cv-03750-WHO, 2020 WL 6562332, at *6 (N.D. Cal. Nov. 9, 2020) |
| 25 | 11/9/20, W.D. Okla. | Non-Profit | "Alleging a direct physical loss unambiguously requires a showing of tangible damage. Goodwill failed to allege it suffered any tangible damage, and therefore, its claim is subject to dismissal." *Goodwill Industries v. Philadelphia Insurance Co.*, No. 5:20-cv-00511-R (W.D. Okla. Nov. 9, 2020) |
| 26 | 11/10/20, Cir. Ct. Fla. | Dentist | "There is no allegation that COVID-19 physically altered or physically damaged any property. Nor is Plaintiff's lack of access to its own premises a direct physical loss or damage, as those terms are defined by Florida law." *DAB Dental PLLC v. Main Street America Protection Insurance Co.*, No. 20-CA-5504 (Cir. Ct. Fla. Nov. 10, 2020) |
| 27 | 11/10/20, Cir. Ct. Fla. | Fitness Center | "The damage asserted here is business income loss . . . . Therefore, this purely economic loss, as well as a lack of access, would not qualify as a covered cause of loss because no direct physical loss has been alleged." *Dime Fitness, LLC v. Markell Insurance Co.*, No. 20-CA-5467 (Cir. Ct. Fla. Nov. 10, 2020) |

The following three cases have come out the other way: *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London, et al.*, No. 00375 (Penn. Ct. Common Pleas Oct. 26, 2020); *North State Deli, LLC et al. v. Cincinnati Ins. Co.*, No. 20-CVS-02569 (N.C. Super. Ct. Oct. 7, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385, at *6 n.6 (W.D. Mo. Aug. 12, 2020). Two of the cases expressly equate "loss of use" with "direct physical loss," contrary to New York law, *Roundabout Theatre Co. v. Continental Casualty Co.*, 751 N.Y.S.2d 4, 6 (1st Dep't 2002) (holding that the phrase "direct physical loss or damage to the [insured's] property" does not encompass "loss of use" of the property), and the third, *Taps & Bourbon*, does not contain any reasoning.