UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

BUFFALO XEROGRAPHIX, INC.,           )
SHATKIN F.I.R.S.T. LLC, and          )
TODD E. SHATKIN DDS PLLC, for        )
themselves and on behalf of a class of )
similarly situated policyholders,    )
                                     )
            Plaintiffs,              )
                                     )
    v.                               )        Case No. 1:20-cv-520
                                     )
THE HARTFORD INSURANCE GROUP         )
d/b/a THE HARTFORD FINANCIAL         )
SERVICES GROUP, INC, SENTINEL        )
INSURANCE COMPANY, LTD.,             )
HARTFORD CASUALTY INSURANCE          )
COMPANY, and HARTFORD                )
INSURANCE COMPANY OF THE             )
MIDWEST,                             )
                                     )
            Defendants.              )

**ORDER ON THE HARTFORD INSURANCE GROUP'S MOTION TO DISMISS**
**(Doc. 61)**

Plaintiffs Buffalo Xerographix, Inc. ("BXI"), Shatkin F.I.R.S.T. LLC ("First LLC"), and

Todd E. Shatkin DDS PLLC ("TES") have filed a putative class action against defendant

insurance companies, Sentinel Insurance Company, Ltd. ("Sentinel"), Hartford Casualty

Insurance Co. ("Hartford Casualty"), and Hartford Insurance Company of the Midwest

("Midwest") (collectively, "Insuring Defendants" or "Subsidiary Defendants"), and defendant

The Hartford Insurance Group ("HIG") for breach of contract and violations of New York

General Business Law § 349 relating to contracts for insurance between Plaintiffs and

Defendants. (Doc. 60.) Defendant HIG has filed a motion to dismiss, arguing that Plaintiffs do

not plausibly allege HIG's liability under the contracts; that Plaintiffs lack standing for their

claims against HIG; and that the court lacks personal jurisdiction over HIG. (Doc. 61.)

### Facts

The Amended Complaint alleges the following facts. Plaintiff BXI entered into a contract for insurance with Sentinel, Plaintiff First LLC with Hartford Casualty, and Plaintiff TES with Midwest. (Doc. 60 ¶ 1.) Plaintiffs seek to represent a class of similarly situated individuals who purchased contracts from Subsidiary Defendants and HIG. (*Id.* ¶ 165.) The Amended Complaint alleges that HIG was also a party to each of these contracts (*id.* ¶ 1), and that HIG "owns, directs and controls the activities" of the Subsidiary Defendants (*id.* ¶ 2).

The insurance contracts at the heart of this litigation are commercial property insurance contracts. (*Id.* ¶ 3.) The contracts include "(a) policies identified by Defendants as 'Spectrum Business Owner's Policy'; and/or (b) Special Property Coverage Form SS 00 07 07 05 (the 'Policy')." (*Id.*) The Policy is "all risk" and provides coverage for physical loss or damage to property unless the loss is "excluded" or "limited." (*Id.* ¶¶ 4–5.) Defendants have stated that the Policy does not provide benefits for losses due or relating to the novel coronavirus, the disease it causes (COVID-19), or the actions taken by civil authorities in response to the virus and COVID-19. (*Id.* ¶ 13.) Defendants denied coverage to Plaintiffs for damages arising from the virus, COVID-19, and orders issued by civil authorities (*id.* ¶ 15).

### A.    Relationship Between Defendant HIG and Subsidiary Defendants

Defendant HIG is a Delaware corporation registered and authorized to transact insurance business in New York. (*Id.* ¶ 20.) Sentinel, Hartford Casualty, and Midwest are each stock insurance companies "owned, controlled and directed by HIG." (*Id.* ¶ 21.) HIG

> a) develops policy forms, endorsements, and exclusions which it issues directly and in conjunction with its Affiliates, (b) controls, directs and/or performs the underwriting activities for all insurance policies issued under the tradename "The Hartford," including the policies issued to plaintiffs BXI, [First LLC], and TES, (c) controls, directs, and/[or] performs the underwriting activities for all insurance policies of which any of the Affiliates are referenced as a "writing company;"

(d) controls, directs, and/or performs claims investigation through common claims representatives for the policies issued by it and/or any Affiliate, including the policies issued to plaintiffs BXI, [First LLC], and TES, and (e) controls, directs, and performs coverage determinations for policies issued under the tradename The Hartford and/or by any of the Affiliates, including the policies issued to plaintiffs BXI, [First LLC] and TES.

(*Id.* ¶ 22.) HIG "controls and directs" the claims processing for policies sold by HIG and Subsidiary Defendants. (*Id.* ¶ 26.)

Plaintiffs allege that HIG and Subsidiary Defendants "share and use the same logo(s)" (*id.* ¶ 119), slogans (*id.* ¶ 120) and "marketing, including common use of the 'Stag' logo and 'The Hartford' as registered trademarks" (*id.* ¶ 127); "share and use the same forms, including the [Department of Financial Services] Response, [Insurance Service Office] forms, policy forms, reservation of rights letters, and denial letters" (*id.* ¶ 121); "share the same underwriting department, such that the underwriting department underwrites claims for each Affiliate indiscriminately and indistinguishably" (*id.* ¶ 122), and "the same adjusters and examiners, such that the same individuals investigate, adjust, examine, and make coverage determinations on claims for each Affiliate" (*id.* ¶ 123); and share the same office space, including One Hartford Plaza, Hartford, CT and 501 Pennsylvania Parkway, Indianapolis, IN (*id.* ¶¶ 124–25), telephone numbers (*id.* ¶ 126), websites (*id.* ¶ 128), and IT systems (*id.* ¶ 129). Furthermore, Plaintiffs allege that the business model and operations of Subsidiary Defendants "is designed to assist, support, and follow the directions of defendant HIG." (*Id.* ¶ 130.)

Corporate disclosure statements filed by Subsidiary Defendants indicate that Sentinel is a wholly owned subsidiary of HIG (Doc. 35 at 1); Hartford Casualty is a wholly owned subsidiary of Hartford Accident & Indemnity Company, which is in turn a wholly owned subsidiary of Hartford Fire Insurance Company, which is itself a wholly owned subsidiary of HIG (Doc. 30); and Midwest is a wholly owned subsidiary of HIG (Doc. 31).

**B.     Plaintiffs' Insurance Contracts**

Plaintiffs' insurance contracts were attached as exhibits to the Amended Complaint. The

policies include numerous references to "The Hartford." (*See* Doc. 68 at 17 (citing examples).)

An "Important Notice to Policyholders" page near the beginning of each policy states: "You are

receiving this Notice because you purchased a business owner's policy from The Hartford, (your

Policy was issued by The Hartford writing company identified on your policy Declarations

page) . . . ." (Doc. 60-1 at 7; Doc 60-2 at 5; Doc. 60-3 at 5.) The phone number for claims

reporting, which is displayed on the same page, is the same across all three policies. Similarly, an

adjacent page titled "Insurance Policy Billing information" explains: "You are receiving this

Notice so you know what to expect as a valued customer of The Hartford. Should you have any

questions after reviewing this information, please contact us at 866-467-8730." (Doc. 60-1 at 6;

Doc 60-2 at 6; Doc. 60-3 at 6.) The phone number is the same in all three policies.

Form SS 00 01 03 14 of the policies indicates that it is a "Spectrum Business Owner's

Policy." (*Id.* ¶ 48.) Plaintiffs seek to a represent a class of policyholders whose policies included

the "Spectrum Business Owner's Policy" or "Special Property Coverage Form" SS 00 07 07 05.

(Doc. 60 ¶ 165.) The declarations page of the Spectrum Business Owner's Policy states:

> This **Spectrum Policy** consists of Declaration, Coverage Forms, Common Policy
> Conditions and any other Forms and Endorsements issued to be a part of the
> Policy. This insurance is provided by the stock insurance company of The
> Hartford Insurance Group shown below.
>
> **INSURER**: [Sentinel, Hartford Casualty, or Hartford Midwest]
>
> One Hartford Plaza, Hartford, CT 06155

(Doc. 60-1 at 15; Doc. 60-2 at 12; Doc. 60-3 at 12.) A logo featuring a stag above the words

"The Hartford" appears on the opposite side of the declaration page. (Doc. 60-1 at 15; Doc. 60-2

at 12; Doc. 60-3 at 12.) The bottom of each declaration page displays a signature, accompanied

by the note "Countersigned by [Signature]" and "Authorized Representative." (Doc. 60-1 at 15;

Doc. 60-2 at 12; Doc. 60-3 at 12.)  The signature is the same across the three policies. Some

pages later, each policy contains the statement, "Our President and Secretary have signed this

policy. Where required by law, the Declarations page has also been countersigned by our duly

authorized representative." (Doc. 60-1 at 33; Doc. 60-2 at 28; Doc. 60-3 at 28.) The electronic

signatures of Lisa Levin and Douglass Elliott, who are the Secretary and President, respectively,

of Defendant HIG, accompany this statement. (Doc. 60-1 at 33; Doc. 60-2 at 28; Doc. 60-3 at 28;

Doc. 60 ¶ 36.)

The Amended Complaint includes numerous allegations regarding the effects of

COVID-19 on Plaintiffs' businesses, which are not directly relevant to the resolution of the

pending motion. (*See* Doc. 60 ¶¶ 81–107.) In brief, Plaintiffs allege that they have suffered

"direct physical loss of or physical damage to Covered Property" as a result of COVID-19 and

actions taken by civil authorities, and contend that their policies (as provided for in Special

Property Coverage Form SS 00 07 07 05) entitle them to recover for these losses. (*Id.* ¶¶ 105–

107.) Of note, Plaintiffs' policies do not contain the "Virus Exclusion" developed by the

Insurance Service Office ("ISO"). (*Id.* ¶ 40.)[1] The Virus Exclusion provides, in relevant part,

"We will not pay for loss or damage caused by or resulting from any virus, bacterium or other

microorganism that induces or is capable of inducing physical distress, illness or disease."

(Doc. 60-4 at 2.) Plaintiffs allege that Defendants issued commercial property policies containing

---

[1] In or about 2006, the Insurance Service Office ("ISO") developed a standard form
policy endorsement for commercial property policies known as "Exclusion of Loss Due to Virus
or Bacteria." (Doc. 60 ¶¶ 63–64.) This exclusion has also been referred to as Multistate Form
Filing CF-2006-OVBEF or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06
(collectively, the "Virus Exclusion"). (*Id.* ¶ 63.) The CEO of HIG, Christopher Swift, stated that
"[t]he vast majority of our contracts do have a virus exclusion." (*Id.* ¶ 39.)

the Virus Exclusion (Doc. 60 ¶ 66), and the putative class excludes such policyholders (*id.* ¶ 165).

### C.      Denial of Coverage to Plaintiffs

In response to claims related to the coronavirus and COVID-19, Defendants developed and operated a website for reporting business interruption ("BI") claims related to the virus. (Doc. 60 ¶ 133.)[2] To submit a claim, holders of policies issued by HIG subsidiaries "answer multiple-choice questions about COVID-19." (*Id.* ¶ 134.) Plaintiffs allege that HIG "controlled and directed the preparation and distribution of standard 'form' policy interpretations and claim denials for itself and the [Subsidiary Defendants] for claims related to the Virus." (*Id.* ¶¶ 28, 117.) HIG also directed that Subsidiary Defendants adopt a uniform position regarding the subject policies' business interruption coverage: that BI coverage "is generally designed to cover losses that result from direct physical loss or damage to property caused by hurricanes, fires, wind damage or theft and is not designed to apply in the case of a virus." (*Id.* ¶ 32

In March 2020, the New York State Department of Financial Services ("DFS") directed New York commercial property insurers to inform their policyholders of the details of business interruption coverage. In response, Defendants prepared a template response (the "DFS Response") that they intended to distribute to a class of policyholders that includes Plaintiffs. (*Id.* ¶¶ 141–144; *see* Doc. 60-8.) The DFS Response said: "Generally, the presence of a virus does not constitute direct physical loss or damage to property. By way of example, closing or limiting a business to prevent the spread of the virus is not physical loss or damage to property." (Doc. 60 ¶ 146.) HIG circulated a memorandum, titled "The Hartford: Our Response to COVID-19,"

---

[2] The website is www.thehartford.com/businessincomeclaim.

among its insurance agents and representatives, which reiterated this point. (*Id.* ¶¶ 147–148; *see* Doc. 60-9.)

In March and April 2020, Defendants denied Plaintiffs' claims under their commercial property insurance policies. (*See* Doc. 60 ¶¶ 153–157; Docs. 60-10, 60-11, 60-12.) Plaintiffs allege that Defendants "made the uniform decision to deny all claims arising from the Virus, [COVID-19], and/or the [Civil Authority] Orders irrespective of the factual circumstances or policy provisions of individual policyholders." (Doc. 60 ¶ 200.) Plaintiffs contend that Defendants uniformly denied coverage to all class members for losses caused by COVID-19 and Civil Authority orders based on Defendants' erroneous interpretation of the terms of the Spectrum Business Owner's Policies or Special Property Coverage Form SS 00 07 07 05. (*Id.* ¶¶ 154, 160, 168.)

Plaintiffs attached the coverage denial letters to the Amended Complaint. The letterhead of the coverage denial letters includes a logo featuring a stag above the words "The Hartford." (*See* Docs. 60-10, 60-11, 60-12.) The mail-from address of the BXI letter is: The Hartford, CAT Claim Office, P.O. Box 14271, Lexington, KY 40512. (Doc. 60-10.) The mail-from address for the letters sent to TES and First LLC is: The Hartford, Commercial Property Center, P.O. Box 14261, Lexington, KY 40512. (Doc. 60-11.) Below each of the letter-writers' signatures is the phrase "Writing Company Name: [name of insuring company]." (Docs. 60-10, 60-11, 60-12.) The email domain in each of the email addresses listed in the signatures is "thehartford.com." (*Id.*)

## Analysis

HIG seeks to dismiss Plaintiffs' claim for breach of contract due to failure to state a claim or lack of standing. (*See* Doc. 61-1 at 16–24.) HIG also moves to dismiss Plaintiffs' claim under

N.Y. Gen. Bus. Law § 349 due to lack of standing. (*Id.* at 25–28.) Finally, HIG argues that the court lacks personal jurisdiction to adjudicate any of Plaintiffs claims. (*Id.* at 28–29.) The court addresses the breach of contract claim first, and then evaluates Plaintiffs' claim under § 349. Different standards of review apply to each of Defendant's theories for dismissal, which the court addresses in the relevant sections below.

## I.    Breach of Contract Claim

Under New York law, "[g]enerally, a breach of contract claim cannot be asserted against a non-signatory to the contract, unless a plaintiff pleads liability on veil piercing or alter ego theories." *Array BioPharma, Inc. v. AstraZeneca AB*, 184 A.D.3d 463, 464, 126 N.Y.S.3d 91, 92–93 (N.Y. App. Div. 2020) (citations omitted). HIG argues that it cannot be liable for breach of contract because Subsidiary Defendants, and not HIG, are the parties to the insurance contracts with Plaintiffs. HIG further argues that Plaintiffs have not pled facts to warrant imposing liability against HIG under either corporate veil-piercing theory or agency theories of liability.  (*See* Doc. 61-1 at 17–24.)

In their opposition memorandum, Plaintiffs argue that HIG is directly liable to Plaintiffs because HIG is a party to the insurance contracts. (Doc. 68 at 17–19.) In the alternative, Plaintiffs contend that Subsidiary Defendants acted as HIG's agents when they entered the contracts, and that traditional principles of agency bind HIG as the principal on whose behalf the agents entered the contracts. (*Id.* at 20–27.) Plaintiffs do not respond to HIG's argument against veil-piercing—and distinguish their agency arguments from a veil-piercing theory of corporate parent liability (*see* Doc. 68 at 20). Consequently, the court deems Plaintiffs' veil-piercing theory abandoned, and evaluates whether Plaintiffs have adequately pleaded a theory of HIG's liability, either directly or under principles of agency.

A.    **Standard of Review**

HIG moves to dismiss Plaintiffs' breach of contract claim under Fed. R. Civ. P. 12(b)(6),

arguing that Plaintiffs have not plausibly alleged that HIG is a party to the insurance contracts.

To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire

Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal*,

556 U.S. at 678). The court accepts all plausible allegations in the complaint as true and draws

all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150

(2d Cir. 2016). The court will grant a motion to dismiss only where "it is clear from the face of

the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims

are barred as a matter of law." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763

F.3d 198, 208–09 (2d Cir. 2014) (per curiam) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82,

86 (2d Cir. 2000)).

HIG also argues that Plaintiffs lack standing for their claims against HIG because it is not

a party to the contracts. Although a motion under Rule 12(b)(1) is the proper mechanism to

challenge Article III standing, the Second Circuit has made clear that a challenge to contractual

standing—a party's right to relief for breach of contract—implicates the merits of the claim

rather than a court's subject-matter jurisdiction. *SM Kids, LLC v. Google LLC*, 963 F.3d 206,

210–12 (2d Cir. 2020). Because HIG's argument against Plaintiffs' standing relates to Plaintiffs'

rights to enforce their contracts against HIG, HIG's motion to dismiss for lack of standing is

properly reviewed as a motion under Rule 12(b)(6), which applies to motions to dismiss for lack

of contractual standing. *See id.* at 212 ("[A] party that alleges harm due to another's breach of contract has a justiciable controversy with the other party and [] the courts have jurisdiction to resolve the controversy.").

## B.     HIG's Direct Liability for the Contracts

New York Insurance Law § 1101 defines an "insurance contract" as

> any agreement or other transaction whereby one party, the 'insurer,' is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary,' dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event.

N.Y. Ins. Law § 1101(a)(1). Insurance contracts are "to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the intent of the parties as expressed in the language employed in the policy." *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York*, 241 A.D.2d 66, 69, 671 N.Y.S.2d 66, 68 (N.Y. App. Div. 1998). "The proper interpretation of an unambiguous contract is a question of law for the court . . . ." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002).

Whether a contract is ambiguous is itself a question of law for the court. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992). The Second Circuit has defined ambiguous language as "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 428 (quoting *Walk-In Medical Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)). Ambiguous contractual language "must be resolved—as well as all inferences drawn—against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute." *Id.*

Plaintiffs and HIG argue that the contracts manifest diametrically opposite positions. HIG contends that the contracts document only the Subsidiary Defendants' intent to be bound, whereas Plaintiffs argue that the contracts manifest the intent of both HIG and Subsidiary Defendants to be bound. Plaintiffs filed copies of the contracts along with the Amended Complaint, so the court may properly consider their contracts in ruling on HIG's motion to dismiss.

Plaintiffs point to the contracts' many references to "The Hartford" to argue that HIG is a party to the contracts. (Doc. 68 at 17 (citing examples).) Plaintiffs also cite a document—which they do not allege accompanied the contracts—that states "The Hartford is *The Hartford Financial Services Group, Inc. and its property and casualty subsidiaries*" to argue that "The Hartford" includes HIG. (Doc. 68 at 17–18 (citing Doc. 60-9 (emphasis Plaintiffs')).) However, using a parent company's logo on documents does not empower a subsidiary to act as the corporate parent's agent or provide a basis for parent liability under a veil-piercing theory. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461–62 (2d Cir. 1995); *Berkshire Life Ins. Co. of Am. v. Hagerman*, No. 09-CV-2037 (ILG), 2010 WL 2771839, at *4 (E.D.N.Y. July 13, 2010); *Xerox Corp. v. Litton Indus., Inc.*, 353 F. Supp. 412, 418 (S.D.N.Y. 1973). The reverse is also true. The use of the Hartford name and trademark by subsidiaries and parent alike does not make the parent a party to policies issued by the subsidiaries.

Defendant urges the court to examine the contracts' declarations page, "the one page most likely to be read and understood" in an insurance contract. (Doc. 71 at 7 (quoting *Frank v. Reassure Life Ins. Co.*, 548 F. App'x 706, 708 (2d Cir. 2013).) The declarations page of each of the contracts states that the policy "is provided by the stock insurance company of the Hartford Insurance Group shown below," and lists the corresponding Subsidiary Defendant as the

"Insurer." (Doc. 60-1 at 15; Doc. 60-2 at 12; Doc. 60-3 at 12.) The signature on the declarations page indicates that it is the signature of an "Authorized Representative" and is the same across the three contracts. (Doc. 60-1 at 15; Doc. 60-2 at 12; Doc. 60-3 at 12.) Pages later, two signatures appear, accompanied by the note "Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative." (Doc. 60-1 at 33; Doc. 60-2 at 28; Doc. 60-3 at 28.)

Although Plaintiffs contend that two of the signatures belong to the President and Secretary of HIG (Doc. 60 ¶¶ 36, 110), nothing in the text of the contracts supports this assertion. Instead, the contracts expressly define the words "we," "us," and "our" as referring to "the Company providing this insurance." (Doc. 60-1 36; Doc. 60-2 at 31; Doc. 60-3 at 29.) The declarations page clearly states that each policy "is provided by" one of the Subsidiary Defendants. (Doc. 60-1 at 15; Doc. 60-2 at 12; Doc. 60-3 at 12.) Furthermore, "courts generally presume that the directors [holding positions with a parent and a subsidiary] are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (internal citations and quotation marks omitted). To overcome this presumption, a plaintiff must show that the "the officers and directors were acting in their capacities as [parent company] officers and directors, and not as [subsidiary company] officers and directors, when they committed those [relevant] acts." *Id.* at 70. Because the contracts clearly define "our" in the phrase "Our President and Secretary" to refer to Subsidiary Defendants, the Complaint's allegation that the electronic signatures belong to "Lisa Levin, Secretary, and Douglas Elliott, President, who are officers of defendant HIG a/k/a 'The Hartford'" (Doc. 60 ¶¶ 36, 110), is insufficient to overcome the presumption that the signatures manifest Subsidiary Defendants', and not HIG's, intent to be bound under the contracts.

12

The court concludes that the text of the insurance contracts unambiguously establishes

that the contracts bind only the Subsidiary Defendants, and not HIG itself. Because a plaintiff

may only assert a breach of contract claim against a non-signatory under a veil-piercing theory—

which Plaintiffs have waived—or a theory of agency liability, the court next considers whether

Plaintiffs have plausibly alleged an agency theory to hold HIG liable under the contracts.

### C.    HIG's Agency Liability for the Contracts

Agency principles establish that a principal will be bound under an agreement entered

into by its agent on its behalf when the principal authorizes the agent to enter the agreement on

its behalf or where the agent acts with apparent authority in entering the agreement. *See Minskoff*

*v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996). Apparent authority

"arises from the 'written or spoken words or any other conduct of the principal which,

reasonably interpreted, causes [a] third person to believe that the principal consents to have [an]

act done on his behalf by the person purporting to act for him.'" *Id.* (quoting *Restatement*

*(Second) of Agency* § 27 (1958)). "Apparent authority for an agency relationship depends upon

reasonable reliance *at the time of a contract*." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 70

(2d Cir. 2003) (emphasis added). "The existence of apparent authority is normally a question of

fact." *Minskoff*, 98 F.3d at 708. To survive a motion to dismiss, a plaintiff must allege facts,

which, if proved, would show that the plaintiff "reasonably believed that [the agent] entered into

the agreement with [the plaintiff] on behalf of [the principal] and not on its own behalf."

*Dinaco*, 346 F.3d at 69.

Plaintiff argues that the following practices support a reasonable inference of an agency

relationship between Subsidiary Defendants and HIG:

(a) HIG requires use of its uniform standards, policies, procedures, processes,
methodologies, and forms for all aspects of the Subsidiary Defendants' business

operations; (b) all financial and business reporting is done on a combined basis; (c) HIG speaks on behalf of its subsidiaries in the media and public filings without distinction between any entities; (d) HIG and the Subsidiary Defendants have the same address and share offices, departments, staff, and technical and business management systems; (e) HIG portrays a single company to its customers; (f) all quotes and policies, payments, and claims processing and administration are done through HIG's centralized website and shared toll free numbers; (g) HIG and the Subsidiary Defendants use the "The Hartford" and "Stag" on all documents; (h) HIG's President signs the Subsidiary Defendants' policies; (i) the subject policies were issued on HIG's standardized coverage forms; (j) the policies' portray "The Hartford," which includes HIG, as being a party to the policies; (k) Plaintiffs' claims were submitted through the universal HIG-created web portal for submitting COVID-19 claims without regard to the name of the writing company; and (l) HIG controlled and directed the Subsidiary Defendants' response to COVID-19 insurance claims, including the denial of Plaintiffs' claims provided on standard HIG forms.

(Doc. 68 at 25.) However, only some of these allegations relate to the Subsidiary Defendants' apparent authority at the time they entered the contracts with Plaintiffs, and all are insufficient to state a plausible claim against HIG on a theory of apparent authority. As explained above, the use of a parent's logo or corporate documents is insufficient to establish the parent entity's intent to be bound under a contract—let alone a contract that expressly identifies the subsidiary entity as the contracting party. Similarly, the alleged signatures of HIG's president and secretary are insufficient, without more, to displace contractual language indicating that the officers signed the contracts on behalf of Subsidiary Defendants. Plaintiffs' other conclusory allegations relate to conduct that occurred *after* the contracts were entered, and consequently cannot provide a basis for a principal's contractual liability under a theory of apparent authority.

Because the Complaint fails to plausibly allege an agency theory of liability on which to hold HIG responsible under the contracts, and having found Plaintiffs' alternative theories for how to hold HIG liable without merit or waived, the court concludes that Plaintiffs have failed to state a cause of action for breach of contract against HIG.

## II.    Claim Under New York General Business Law § 349

Plaintiffs' remaining claim arises under N.Y. Gen. Bus. Law § 349. HIG argues that

Plaintiffs lack standing to bring this claim against HIG because it did not cause the injuries about

which Plaintiffs complain.[3] For the following reasons, the court agrees with HIG that Plaintiffs

have not plausibly alleged Article III standing for their § 349 claim against HIG.

N.Y. Gen. Bus. Law § 349(a) declares unlawful "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in in the furnishing of any service in this state."

The New York Court of Appeals has held that "a plaintiff under section 349 must prove three

elements: first, that the challenged act or practice was consumer-oriented; second, that it was

misleading in a material way; and third, that the plaintiff suffered injury as a result of the

deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Although "reliance is

not an element of a section 349 claim," *id.* at 612, a plaintiff must establish not only that the

defendant's act was deceptive, but also that the deception materially caused the plaintiff's injury,

*Small v. Lorillard Tobacco Co.*,720 N.E.2d 892, 898 (N.Y. 1999). This causation requirement

mirrors the traceability requirement of Article III standing,[4] which requires a plaintiff to

"demonstrate a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS*

*AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir.

1992)).

---

[3] HIG also contends that this court lacks personal jurisdiction over HIG because it did not purposefully avail itself has not taken any actions that render it subject to general or specific personal jurisdiction in the state of New York. (Doc. 61-1 at 28.)

[4] To establish Article III standing, a plaintiff must (1) have suffered an 'injury in fact' that is both (a) concrete and particularized and (b) actual or imminent; (2) fairly traceable to the defendant's action; and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

HIG raises two objections to Plaintiffs' standing. First, HIG questions whether the "practice of denying all, or substantially all, claims" relating to COVID-19 is a deceptive act within the meaning of § 349. (Doc. 61-1 at 27.)  Second, HIG argues that even if this practice was "deceptive" within the meaning of § 349, only Subsidiary Defendants are liable for injuries caused by those denials, because only Subsidiary Defendants are responsible for making coverage determinations under the contracts. (Doc. 61-1 at 27–28; Doc. 71 at 12–14.)

Construing the factual allegations in the Amended Complaint most favorably towards Plaintiffs, the court interprets their § 349 claim as essentially a claim that Defendants' marketing and sale of insurance policies to Plaintiffs was deceptive in light of how they actually treated Plaintiffs' claims under the policies. *See Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000) (selling insurance an insurer does not intend to provide may be deceptive under § 349). Specifically, the Amended Complaint asserts that "Defendants expressly misrepresented to their policyholders that coverage decisions would be made on a case-by-case basis, given the factual circumstances or policy provisions of individual policyholders." (Doc. 60 ¶ 202; *see also id.* ¶¶ 216–3218.) Instead, Plaintiffs allege that Defendants failed to reasonably investigate submitted claims and uniformly denied coverage according to a predetermined policy (*id.* ¶¶ 199–201, 208–211, 215), thereby depriving Plaintiffs of the full benefit of their policies (*id.* ¶ 214).[5]

---

[5] The Amended Complaint also alleges that Defendants engaged in misleading conduct while processing Plaintiffs' COVID-related insurance—that is, *after* Plaintiffs entered into insurance contracts with Subsidiary Defendants. (*See, e.g.*, Doc. 60 ¶¶ 197–198, 203–205, 213.) However, the injury Plaintiffs allege they suffered from this conduct is simply a breach of their contractual rights, which is insufficient to state a claim under § 349. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (interpreting § 349 to require an injury independent of contractual damages).

However, Subsidiary Defendants, and not HIG, are the parties to Plaintiffs' insurance contracts. The Amended Complaint does not plausibly allege that *HIG* engaged in misleading or deceptive behavior in the marketing or sale of those policies to Plaintiffs. The court has already determined that use of "The Hartford" logo and letterhead in insurance contracts issued by Subsidiary Defendants is insufficient to render HIG liable for breach of those contracts. Similarly, Subsidiary Defendants' use of marketing materials and contract forms featuring "The Hartford" logo cannot render HIG liable for allegedly deceptive marketing, absent other nonconclusory allegations of HIG's participation. Subsidiary Defendants, not HIG, entered into insurance contracts with Plaintiffs and are responsible for the representations within those contracts. Moreover, Subsidiary Defendants, not HIG, ultimately denied Plaintiffs' claims under the insurance contracts. Without facts alleging deceptive behavior in the marketing or sale of insurance to Plaintiffs by *HIG*, Plaintiffs cannot establish that HIG's actions deprived Plaintiffs of any expected benefits of their insurance policies.

### Conclusion

Defendant HIG's Motion to Dismiss (Doc. 61) is GRANTED.

Dated this ⎽18th⎽ day of May, 2021.

Geoffrey W. Crawford, Judge
United States District Court