UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUFFALO XEROGRAPHIX, INC., SHATKIN F.I.R.S.T. LLC, and TODD E. SHATKIN DDS PLLC, for themselves and on behalf of a class of similarly situated policyholders,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SENTINEL INSURANCE COMPANY, LTD., HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD INSURANCE COMPANY OF THE MIDWEST,<br><br>　　　　Defendants. | Case No. 1:20-cv-520 |

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFFS' MOTION TO CONSOLIDATE CASES**
**(Docs. 70, 75)**

In April 2020, Plaintiffs Buffalo Xerographix, Inc., Shatkin F.I.R.S.T. LLC, and Todd E. Shatkin DDS PLLC sued Sentinel Insurance Company, Ltd., Hartford Casualty Insurance Co., Hartford Insurance Company of the Midwest (collectively, "Insuring Defendants"), and The Hartford Insurance Group ("HIG") for breach of contract and violations of New York General Business Law § 349. (*See* Docs. 1, 60.) Plaintiffs' claims arise from Insuring Defendants' denial of coverage for Plaintiffs' business losses related to the COVID-19 pandemic. In a May 2021 order, the court granted HIG's motion to dismiss Plaintiffs' claims against it. (Doc. 76.) Insuring Defendants have now filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Doc. 75.) Plaintiffs filed a brief in opposition (Docs. 77, 78), to which Insuring Defendants replied (Doc. 79).

## Factual Background

Plaintiffs are businesses located in Erie County, New York. The Amended Complaint alleges that each Plaintiff contracted with one of Insuring Defendants for commercial property insurance. (Doc. 60 ¶¶ 1, 3.)

### A.     Insurance Policies

Copies of Plaintiffs' insurance policies are attached to the Amended Complaint. (*See* Docs. 60-1, 60-2, 60-3.) Each insurance policy includes "(a) policies identified by Defendants as 'Spectrum Business Owner's Policy'; and/or (b) Special Property Coverage Form SS 00 07 07 05 (the 'Policy')." (Doc. 60 ¶ 3.) The Policy provides that Insuring Defendants "will pay for *direct physical loss of or physical damage to* Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." (Doc. 60-1 at 36 (emphasis added).[1]) The Policy defines "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is a. Excluded in Section B., EXCLUSIONS; or b. Limited in Paragraph A.4. Limitations . . . ." (*Id.* at 37.)

The Policy includes coverage for loss of business income arising from a covered loss. Specifically, Insuring Defendants promise to

> pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises," . . . caused by or resulting from a Covered Cause of Loss.

(Doc. 60-1 at 45.) The Policy also includes Civil Authority coverage, which applies "to the actual loss of Business Income you sustain when access to your 'scheduled premises' is

---

[1] Each contract includes an identical Special Coverage Form. The court refers to docket entry 60-1 (Buffalo Xerographix's policy) for pinpoint citations.

specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'schedule premises.'" (*Id.* at 46.)

Plaintiffs' policies do not contain the so-called "Virus Exclusion" developed by the Insurance Service Office ("ISO"). (Doc. 60 ¶ 75.) This standard form policy endorsement eliminates certain virus- and bacteria-related losses from coverage under insurance policies. (*Id.* ¶ 72.) Insuring Defendants have issued commercial property insurance policies that contain the Virus Exclusion. (*Id.* ¶ 73.)

**B.   Plaintiffs' Claims**

In spring 2020, Plaintiffs closed their businesses due to the COVID-19 pandemic and suffered business losses arising from those closures. Plaintiffs submitted claims to their insurers, alleging the following "covered losses":

- Plaintiffs' employees, customers, and vendors were exposed to the coronavirus or contracted COVID-19. (Doc. 60 ¶ 81.)

- The covered premises were exposed to the coronavirus or people suffering COVID-19 were present at their premises. Plaintiffs could not use their premises because of the presence of the virus or due to orders issued by the civil authority. (*Id.* ¶ 82.)

- Property in the immediate vicinity of Plaintiffs' premises was exposed to the coronavirus or people with COVID-19 were present in the vicinity. (*Id.* ¶ 83.)

- Plaintiffs ceased business operations to comply with "government orders arising from the physical loss and damage caused by the Virus to their Premises and to property in the vicinity of their Premises." (*Id.* ¶ 96.)

Plaintiffs further allege that the coronavirus is a "highly contagious" "physical substance" that "survives on and is active on inert physical surfaces." (*Id.* ¶¶ 84–86.) Moreover,

"[i]nfectious airborne droplets and smaller aerosols that remain suspended in the air for hours after release are a major transmission source of the Virus." (*Id.* ¶ 90.) The risk of infection is higher indoors than in open-air environments. (*Id.* ¶ 93.) The Amended Complaint alleges that the presence of the coronavirus caused New York state civil authorities to issue orders suspending business and the use of commercial property, including Plaintiffs' covered property. (*Id.* ¶ 102.)

### C. Denial of Coverage to Plaintiffs

Insuring Defendants denied coverage for Plaintiffs' claimed losses. The Amended Complaint alleges that Defendants denied coverage to Plaintiffs pursuant to a predetermined policy, without regard to Plaintiffs' individual circumstances or the presence of the coronavirus at Plaintiffs' premises. (Doc. 60 ¶¶ 140, 149.)

Copies of the letters denying coverage are attached to the Amended Complaint. (*See* Docs. 60-10, 60-11, 60-12.) In the letters, Defendants state that the Policy does not cover the claimed loss because "the coronavirus did not cause property damage at [Plaintiffs'] place of business or in the immediate area" and that Plaintiffs incurred losses because they "had to close or limit [their] business to help prevent the spread of COVID-19." (Doc. 60-10 at 2; Doc. 60-11 at 2; *see also* Doc. 60-12 at 2.)

## Analysis

### I. Legal Standard

Courts review motions under Fed. R. Civ. P. 12(c) under "the same standard as that applicable to a motion under Rule 12(b)(6)." *Mantena v. Johnson*, 809 F.3d 721, 727–28 (2d Cir. 2015) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court construes factual allegations and draws all reasonable inferences in favor of the non-moving party, *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016), "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 570). The court will grant a Rule 12(c) motion only if it "is satisfied that the complaint cannot state any set of facts that would entitle [the non-moving party] to relief." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

## II. Governing Law

A federal court sitting in diversity applies the substantive law of the forum state, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including that jurisdiction's choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The New York Court of Appeals follows the "center of gravity" test in identifying the jurisdiction whose substantive law governs contract disputes. *Auten v. Auten*, 308 N.Y. 155 (1954). Under this approach, a contract of liability insurance is "governed by the law of the state which the parties understood to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties." *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S. 2d 30 (N.Y. App. Div. 2006) (cleaned up), *aff'd*, 876 N.E.2d 500 (N.Y. 2007); *see also Cunninghame v. Equitable Life Assur. Soc'y of U.S.*, 652 F.2d 306, 308 n.1 (2d Cir. 1981) (per curiam).

Plaintiffs are New York businesses who purchased commercial property insurance for their business premises in the State of New York. Consequently, New York law governs

Plaintiffs' breach-of-contract claim. In New York, a policyholder bears the initial burden of showing that its insurance contract covers the claimed loss. *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002); *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011). "Labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre*, 751 N.Y.S.2d at 7.

### III.  Breach-of-Contract Claim

Plaintiffs' policies provide coverage for business interruptions caused by "direct physical loss or damage" to their insured premises or due to orders of a civil authority issued in response to "direct physical loss or damage" to nearby property that restricted Plaintiffs' access to their premises. Plaintiffs argue that they suffered covered losses because the presence of the coronavirus at or near the insured premises constitutes "direct physical loss of or physical damage."

To make this argument, Plaintiffs point to the existence of the so-called "Virus Exclusion" and the "Virus Limitation": standard form endorsements developed by the ISO that exclude or limit an insured's otherwise available coverage when the conditions of the endorsement are met. (*See* Doc. 78 at 17–18.) The Virus Exclusion provides: "We will not pay for loss or damage caused by or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 60-4 at 2.) The terms of the Virus Limitation are similar.[2] Defendants have issued policies containing the Virus

---

[2] The "Virus Limitation" consists of two subparts: a coverage exclusion and a limited coverage. The exclusion component of the Virus Limitation provides: "We will not pay for loss or damage caused directly or indirectly by any of the following. . . . : (1) Presence, growth, proliferation, spread or any activity of . . . virus." (Doc. 60-5 at 2.) The limited coverage portion of the Virus Limitation provides: "We will pay for loss or damage by . . . virus. As used in this

6

Exclusion and the Virus Limitation, as well as policies containing neither limitation; Plaintiffs' policies contain neither. Plaintiffs argue that this omission constitutes an "express acknowledgement by [Defendants] that a virus is capable of causing 'direct physical loss of or damage to' property." (Doc. 78 at 18.) From this assertion, Plaintiffs jump to the conclusion that the presence of the coronavirus constitutes direct physical loss or damage.

However, Plaintiffs' reliance on the Virus Exclusion and Virus Limitation is misplaced. Regardless of whether *a* virus *could* cause direct physical loss of or damage to property, Plaintiffs do not plausibly allege that *the coronavirus* caused direct physical loss or damage to *their* premises or property in the vicinity of their premises. The Virus Exclusion and Virus Limitation operate by limiting or excluding coverage that would otherwise be available under an insured's policy; that is, they limit rather than expand coverage. Consequently, the endorsement becomes relevant only if an insured experiences an otherwise "covered loss." In that case, the Virus Exclusion or the Virus Limitation would limit the insured's recovery for the otherwise covered loss. In Plaintiffs' case, however, the omission of the Virus Exclusion and the Virus Limitation from Plaintiffs' policies is irrelevant because Plaintiffs have not plausibly alleged that they suffered "direct physical loss or damage" to their property.

Many courts applying New York law, including this one, have already concluded that business closures due to the presence of the coronavirus or due to New York State executive orders do not constitute "direct physical loss of or damage to" property. *See Kim-Chee LLC v. Phil. Indem. Ins. Co.*, No. 1:20-cv-1136, 2021 WL 1600831, at *5 (W.D.N.Y. April 23, 2021); *id.* at *3 (citing cases applying New York law). Relying on longstanding New York precedent,

---

Limited Coverage, the term loss or damage means: (1) Direct physical loss or direct physical damage to Covered Property caused by . . . virus, including the cost of removal of the . . . virus." (*Id.* at 3.)

7

these courts have ruled that the phrase "direct physical loss or damage" is unambiguous and requires physical alteration of property. *Kim-Chee*, 2021 WL 1600831, at *4 (applying *Roundabout Theatre Co.*, 751 N.Y.S.2d at 8).

The *presence* of the coronavirus does not physically alter property in a permanent manner. In this respect, the virus is different from other physical or chemical contaminants that have been found to cause "direct physical loss or damage" to property. *Id.* at *5 (citing gasoline seepage, lead contamination, exposed asbestos, pervasive odor, and chemical or bacterial contamination as examples of "[c]ontamination of a structure that seriously impairs or destroys its function," thereby "qualify[ing] as direct physical loss"). Instead, the coronavirus poses a temporary health hazard to the occupants of a building, whose threat to human health dissipates with the passage of time. Many courts, including this one, have determined that merely temporary contamination does not qualify as "direct physical loss or damage." *Id.* (citing dust from road construction, mold or bacteria that could be eliminated by cleaning, and the controlled presence of asbestos as examples of such "short-lived" contamination).

The cases cited by Plaintiffs do not change this analysis. *Pepsico, Inc. v. Winterthur Int'l America Ins. Co.*, 806 N.Y.S.2d 709 (N.Y. App. Div. 2005), concerned the merchantability of beverage products. The Appellate Division held that a plaintiff need not demonstrate "physical damage" to insured property where the plaintiff could demonstrate "that the product's function and value have been seriously impaired, such that the product cannot be sold." *Id.* at 744. That is not the case here; Plaintiffs experienced business losses because executive orders mandated the temporary closure of their businesses, and not because the virus fundamentally altered the function or value of their property.

8

Plaintiffs' situation is equally unlike that of the law firm in *Schlamm Stone & Dolan, LLP v. Seneca Insurance Co.*, 800 N.Y.S.2d 356 (N.Y. Sup. Ct. 2005), whose office filled with noxious particles due to the events of September 11, 2001. The *Schlamm* court held that the presence of such particles in the carpets and on the surfaces of the law firm's office constituted "property damage" because they "impair[ed] plaintiff's ability to make use of them." *Id.* The court then reasoned that the presence of noxious particles in the air also constituted property damage, because it would be "impossible" to "demonstrate[e] what portion of the losses were caused by particles suspended in the air that had never settled, and what portion were caused by particles that had been stirred up." *Id. Schlamm* is thus distinguishable from Plaintiffs' situation because it addressed a permanent, physical alteration of property accompanied by an indistinguishable transient, physical alteration. In contrast, Plaintiffs do not allege that the coronavirus caused a permanent, physical alteration of their insured property; instead, Plaintiffs contend that the coronavirus was present at or near their premises.

Plaintiffs also cite two recent court decisions that denied an insurer's motion to dismiss in a COVID-19 business interruption case: *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), and *In re: Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021). The court acknowledges that other courts in some COVID-19 cases have concluded that the presence of the coronavirus might cause physical loss or damage to property. As discussed by the court in *Kim-Chee*, however, all New York cases applying New York law to the question of whether the coronavirus constitutes "direct physical loss or damage" have reached the opposite conclusion of *Studio 417* and *Society Insurance*. *See Kim-Chee*, 2021 WL

9

1600831, at *6–7; *see also* Judicial Rulings on the Merits in the Business Interruption Cases, U. Pa. Covid Coverage Litigation Tracker, available at https://cclt.law.upenn.edu/judicial-rulings/.[3]

In this case, the alleged presence of the coronavirus has not caused a permanent change to Plaintiffs' properties or decreased the value and function of those properties. Instead, New York State executive orders issued in response to the coronavirus temporarily deprived Plaintiffs of the ability to use their properties for their intended purpose. Because Plaintiffs have not plausibly alleged that the presence of the coronavirus caused "direct physical loss of or damage to" their insured premises or nearby property, Plaintiffs cannot state a claim for breach of contract under either their business interruption coverage or civil authority coverage. Insuring Defendants are therefore entitled to judgment on the pleadings on Plaintiffs' breach of contract claim.

---

[3] In addition to *Kim-Chee*, several federal courts in the State of New York have reached this conclusion. *See Deer Mountain Inn LLC v. Union Ins. Co.*, No. 1:20-cv-0984, 2021 WL 2076218 (N.D.N.Y. May 24, 2021); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, No. 20 Civ. 7132, 2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, No. 8:20-cv-701, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGC) (RWL), 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, No. 20-cv-3418 (JGK), 2021 WL 860345 (S.D.N.Y Mar. 6, 2021); *Demoura v. Continental Cas. Co.*, No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, No. 20 Civ. 5818 (PAE), 2021 WL 276655 (S.D.N.Y. Jan. 27, 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, No. 20 Civ. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(Sr), 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020). Some New York state courts have also reached this conclusion. *See Mangia Rest. Corp. v. Utica First Ins. Co.*, No. 713847/ 2020, 2021 WL 1705760 (N.Y. Sup. Ct. Mar. 30, 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 142 N.Y.S.3d 724, 735 (N.Y. Sup. Ct. 2021); and *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021). One New York court denied an insurer's Rule 12(c) motion where the insurance policy at issue provided coverage for "loss of use," which the court distinguished from "direct physical loss"—the relevant provision in the instant case. *See Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 20 CIV. 3380 (AT), 2021 WL 1226983, at *5, n.2 (S.D.N.Y. Mar. 31, 2021).

### IV.     Claim Under New York General Business Law § 349

The Amended Complaint asserts an additional claim against Insuring Defendants under N.Y. Gen. Bus. Law § 349. This statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To prevail on a claim under § 349, a plaintiff must establish "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Insuring Defendants argue that Plaintiffs establish neither the first nor the third required elements of their § 349 claim.

Plaintiffs devote most of their opposition to arguing that Insuring Defendants' behavior constitutes "consumer-oriented" conduct. With respect to the third element, they simply argue that Insuring Defendants "charged Plaintiffs and other insureds premiums for insurance policies that did not contain a virus exclusion, while also charging other policyholders differing premiums for policies that did contain a virus exclusion. Nevertheless, Defendant universally denied coverage for any claim arising from the Virus." (Doc. 78 at 31.)

This court considered and rejected a similar argument in *Kim-Chee*, 2021 WL 1600831, at *8, which featured similar factual allegations. In that case as well as this one, the plaintiffs could not establish that they "suffered injury as a result of" the defendants' conduct—as required to state a claim under N.Y. Gen. Bus. Law § 349—because they did not plausibly allege "direct physical loss of or damage to" their insured property. In the absence of plausible allegations of covered losses, it is irrelevant whether Insuring Defendants uniformly processed Plaintiffs' claims alongside the claims of policyholders' whose policies contained the Virus Exclusion or Virus Limitation. Plaintiffs have not demonstrated their entitlement to coverage under the terms

11

of their policy and cannot demonstrate that Insuring Defendants' processing of their claims caused them injuries. Consequently, Defendants are entitled to judgment on the pleadings on Plaintiffs' claim under § 349.

## Conclusion

Insuring Defendants' motion for judgment on the pleadings (Doc. 75) is GRANTED. Plaintiffs' motion to consolidate cases (Doc. 70) is DENIED AS MOOT.

Dated this 16th day of June, 2021.

Geoffrey W. Crawford, Judge
United States District Court